# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YANGTZE MEMORY TECHNOLOGIES CO., LTD., et al.<br><br>        Plaintiffs,<br><br>v.<br><br>STRAND CONSULT ApS, et al.<br><br>        Defendants. | No. 25-CV-3554-CJN |

## DEFENDANTS STRAND CONSULT AND ROSLYN LAYTON'S
## MOTION TO DISMISS COMPLAINT

Defendants Strand Consult ApS and Dr. Roslyn Layton, through counsel, hereby move to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), as well as based upon the common law doctrine of *forum non conveniens*. The grounds for the motion are explained in the accompanying memorandum in support of this motion. A proposed order is also submitted herewith.

January 15, 2026                    Respectfully submitted,

                              */s/ Michael L. Resch*
                              Michael L. Resch (D.C. Bar #481402)
                              *mresch@kslaw.com*
                              KING & SPALDING LLP
                              50 California Street, Suite 3300
                              San Francisco, California 94111

Telephone: (415) 318-1200
Facsimile: (415) 318-1300

Dale Giali (D.C. Bar #436514)
*dgiali@kslaw.com*
Lena T. Colin (*pro hac vice forthcoming*)
*lcolin@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, California 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

Attorneys for Defendants
STRAND CONSULT APS
AND ROSYLN LAYTON

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| YANGTZE MEMORY TECHNOLOGIES CO., LTD., et al.<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>STRAND CONSULT ApS, et al.<br><br>　　　　　Defendants. | No. 25-CV-3554-CJN |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS**
**STRAND CONSULT AND ROSLYN LAYTON'S MOTION TO DISMISS COMPLAINT**

**TABLE OF CONTENTS**

I.      INTRODUCTION ...............................................................................................1

II.     STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY ...................3

    **A.**   The California Action ................................................................................3

    **B.**   The Parties ..................................................................................................6

    **C.**   YMTC's Claims..........................................................................................7

III.    ARGUMENT .....................................................................................................10

    **A.**   The Complaint Is Precluded by Judge Wise's Rulings in the California Action and Should Be Dismissed as a Result ...............................................................10

        1.    Judge Wise's Dismissal for *Forum Non Conveniens* and Finding That Denmark is a More Convenient Forum Preclude YMTC's Complaint .....10

        2.    The Complaint Should Be Dismissed under the Collateral Estoppel Doctrine for Lack of Personal Jurisdiction and Lack of Other Circumstances That Would Permit Bringing This Case in This District...15

        3.    The Complaint Should Be Dismissed for Judicial Estoppel.....................21

    **B.**   The Complaint Should Be Dismissed Under Rule 12(b)(2) For Lack of Personal Jurisdiction .............................................................................................22

        1.    The China Tech Threat Website's Terms of Use Do Not Confer Personal Jurisdiction Here .........................................................................................23

        2.    YMTC's Long-Arm Theory Fails..............................................................24

    **C.**   Dismissal Is Warranted Because YMTC Lacks Standing ...................................27

        1.    This Action Should Be Dismissed for Lack of Article III Standing..........27

        2.    This Action Should Be Dismissed for Failure to Plead Statutory Standing Under the Lanham Act...............................................................................30

    **D.**   YMTC Fails to State a Lanham Act Claim.........................................................33

        1.    The CTT Publications are Not Commercial Speech..................................34

        2.    The Challenged Statements Are Not Actionable Under the Lanham Act .43

IV.     REQUEST FOR JUDICIAL NOTICE ...............................................................45

V.     CONCLUSION...................................................................................................45

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases:**

*Aenergy, S.A. v. Republic of Angola,*
678 F. Supp. 3d 147 (D.D.C. 2023) *aff'd*, 123 F.4th 1351 (D.C. Cir. 2024).........10, 11, 12, 13, 14

*Alfasigma USA, Inc. v. First Databank, Inc.,*
525 F. Supp. 3d 1088 (N.D. Cal. 2021) ..................................................................................42

*Alkanani v. Aegis Def. Servs.,* LLC,
976 F. Supp. 2d 13 (D.D.C. 2014) ....................................................................................25, 26

*AMA Multimedia, LLC v. Madon,*
2020 WL 5096476 (D. Nev. Aug. 28, 2020) ..........................................................................21

*Animal Legal Def. Fund v. Vilsack,*
640 F. Supp. 3d 134 (D.D.C. 2022) ........................................................................................28

*Anthony v. Int'l Ass'n of Machinists & Aerospace Workers Dist. Lodge 1,*
296 F. Supp. 3d 92 (D.D.C. 2017) ....................................................................................29, 34

*Barrett v. Atl. Monthly Grp. LLC,*
2024 WL 4119400 (D.D.C. Sept. 9, 2024) ..............................................................................33

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..........................................................................................................29, 34

*Bilinski v. Keith Haring Found., Inc.,*
96 F. Supp. 3d 35 (S.D.N.Y.) ..................................................................................................41

*Bolger v. Youngs Drug Prods. Corp.,*
463 U.S. 60 (1983)....................................................................................................35, 37, 41

*BPA Int'l, Inc. v. Kingdom of Sweden,*
281 F. Supp. 2d 73 (D.D.C. 2003)....................................................................................14, 15

*Brightwell Dispensers Ltd. v. Dongguan ISCE Sanitary Ware Indus. Co.,*
2019 WL 7037493 (D.D.C. Dec. 20, 2019)............................................................................25

*Can v. Goodrich Pump & Engine Control Sys., Inc.,*
711 F. Supp. 2d 241 (D. Conn. 2010)......................................................................................11

*Canonsburg Gen. Hosp. v. Burwell,*
807 F.3d 295 (D.C. Cir. 2015)................................................................................................19

*Children's Health Def. v. Meta Platforms, Inc.*,
112 F.4th 742 (9th Cir. 2024) ...................................................................................42

*Ctr. for Democracy & Tech. v. Trump*,
507 F. Supp. 3d 213 (D.D.C. 2020) ...........................................................................27

*de Csepel v. Republic of Hungary*,
714 F.3d 591 (D.C. Cir. 2013) ...................................................................................14

*Dennis v. R.I. Hosp. Tr. Nat'l Bank*,
744 F.2d 893 (1st Cir. 1984) ......................................................................................20

*Devorah v. Royal Bank of Canada*,
115 F. Supp. 3d 35 (D.D.C. 2015) ........................................................................ 22-23

*Edward Lewis Tobinick, MD v. Novella*,
848 F.3d 935 (11th Cir. 2017) ............................................................................. 40-42

*Exeltis USA Inc. v. First Databank, Inc.*,
520 F. Supp. 3d 1225 (N.D. Cal. 2021) ....................................................................41

*\*Farah v. Esquire Mag., Inc.*,
736 F.3d 528 (D.C. Cir. 2013) .......................................................................34, 35, 42

*FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*,
97 F.4th 444 (6th Cir. 2024) .................................................................................43, 44

*\*Geomatrix LLC v. NSF International*,
629 F. Supp. 3d 691 (E.D. Mich. 2022), *aff'd*, 82 F.4th 466 (6th Cir. 2023).........................31, 32

*Gordon & Breach Sci. Publishers S.A.*,
859 F. Supp. 1521 (S.D.N.Y. 1994)...........................................................................41

*Hall v. Clinton*,
285 F.3d 74 (D.C. Cir. 2002) .....................................................................................18

*Hall v. McAleenan*,
2019 WL 4889275 (D.D.C. Oct. 3, 2019) *aff'd sub nom.*,
2020 WL 6038710 (D.C. Cir. Aug. 7, 2020) ..............................................................21

*Hampshire v. Maine*,
532 U.S. 742 (2001)...................................................................................................21

*Hayes v. FM Broad. Station WETT*,
930 F. Supp. 2d 145 (D.D.C. 2013) ...........................................................................25

*HomeLight, Inc. v. Shkipin*,
694 F. Supp. 3d 1242 (N.D. Cal. 2023) ........................................................32

*Joint Stock Soc'y v. UDV N. Am., Inc.*,
266 F.3d 164 (3d Cir. 2001) ..........................................................................28

*Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*,
909 F.3d 446 (D.C. Cir. 2018) ......................................................................45

*Kline v. Williams*,
2006 WL 758459 (D.D.C. Mar. 23, 2006) ................................................26, 27

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ......................................................................................30

*Lockman Found. v. Evangelical All. Mission*,
930 F.2d 764 (9th Cir. 1991) ........................................................................14

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ................................................................................28, 30

*Matosantos Com. Corp. v. Applebee's Int'l, Inc.*,
245 F.3d 1203 (10th Cir. 2001) ....................................................................19

*Meng v. Schwartz*,
305 F. Supp. 2d 49 (D.D.C. 2004) ................................................................20

*Moses v. Howard Univ. Hosp.*,
606 F.3d 789 (D.C. Cir. 2010) ......................................................................21

*\*Nat'l Ass'n of Home Builders v. EPA*,
786 F.3d 34 (D.C. Cir. 2015) ........................................................................18

*Neurotron, Inc. v. Am. Ass'n of Electrodiagnostic Med.*,
189 F. Supp. 2d 271 (D. Md. 2001), *aff'd*, 48 F. App'x 42 (4th Cir. 2002) ..........................34, 38

*Nichols v. Club for Growth Action*,
235 F. Supp. 3d 289 (D.D.C. 2017) ..............................................................42

*Otherson v. Dep't of Justice*,
711 F.2d 267 (D.C. Cir. 1983) ..........................................................11, 16, 19

*Oxycal Lab'ys, Inc. v. Jeffers*,
909 F. Supp. 719 (S.D. Cal. 1995) ................................................................39

*Paulo v. Holder*,
669 F.3d 911 (9th Cir. 2011) ............................................................................18

*\*Peak Health Center v. Dorfman,*
2019 WL 5893188 (N.D. Cal. Nov. 12, 2019) .............................................35, 40, 41

*Reed v. Allen*,
286 U.S. 191 (1932)..........................................................................................19

*Riley v. Nat'l Fed'n of the Blind*,
487 U.S. 781 (1988)..........................................................................................38

*Ross v. Dep't of Just.*,
2022 WL 1746684 (D.D.C. May 31, 2022)........................................................10, 21

*\*SCPS, LLC v. L.*,
770 F. Supp. 3d 11 (D.D.C. 2025) ...................................................................23, 24, 25

*Spence v. TRW, Inc.*,
92 F.3d 380 (6th Cir. 1996) ............................................................................20

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)..........................................................................................28

*Stahl L. Firm v. Judicate W.*,
2013 WL 6200245 (N.D. Cal. Sept 12, 2013) ...................................................28

*Strauss v. Angie's List, Inc.*,
951 F.3d 1263 (10th Cir. 2020) ......................................................................40

*The Monotype Corp. v. Simon & Schuster Inc.*,
2000 WL 1852907 (N.D. Ill. Sept. 8, 2000) ...................................................39

*\*United States ex rel. Univ. Loft Co. v. Avteq, Inc.*,
2015 WL 13548950 (W.D. Tex. Dec. 22, 2015) .............................................30, 32, 33

*United States v. Perea-Rey*,
680 F.3d 1179 (9th Cir. 2012) ........................................................................15

*United States v. Philip Morris USA Inc.*,
566 F.3d 1095 (D.C. Cir. 2009)......................................................................35, 39

*\*Wexler v. Dorsey & Whitney, LLP*,
2019 WL 5485265 (E.D.N.Y. Oct. 25, 2019), *aff'd*, 815 F. App'x 618 (2d Cir. 2020) ................44

*Yamaha Corp. of Am. v. United States*,
961 F.2d 245 (D.C. Cir. 1992) ......................................................................18

*Zip Dee, Inc. v. Dometic Corp.*,
905 F. Supp. 535 (N.D. Ill. 1995) ..................................................................18

**Other Authorities:**

Fed. R. App. Proc. 4(a)(1)(A ..........................................................................6
Fed. R. Civ. P. 4(k)(2)...................................................................................20
Fed. R. Civ. P. 81(d)(2)..................................................................................22
Lanham Act § 43(a)(1)(B) ...................................................................... *passim*
James Moore, Jo Lucas, & Thomas Currier, 1B Moore's Federal Practice (1988).....................18
4 McCarthy on Trademarks and Unfair Competition (5th ed.)...........................................34
14D Wright, Miller, Cooper & Freer, *Federal Practice & Procedure* (4th ed. 2013) .................10

## <u>INDEX OF EXHIBITS</u>

- **EXHIBIT A:** Order Granting Motion for Reconsideration; Denying Motion to Transfer; Granting Motion to Dismiss for *Forum Non Conveniens*, *YMTC et al. v. Strand Consult et al.*, No. 5:24-cv-3454-NW (N.D. Cal. Sept. 12, 2025) ("Cal. Action"), Dkt. 99.

- **EXHIBIT B:** Judgment of Dismissal, Cal. Action, Dkt. 105.

- **EXHIBIT C:** The White House, "Building Resilient Supply Chains, Revitalizing American Manufacturing, and Fostering Broad-Based Growth," June 2021 (Excerpts).

- **EXHIBIT D:** Department of Commerce, Additions and Revisions to the Entity List and Conforming Removal From the Unverified List, 87 Fed. Reg. 77,505 (Dec. 19, 2022).

- **EXHIBIT E:** Department of Defense, Entities Identified as Chinese Military Companies Operating in the United States (Jan. 31, 2024).

- **EXHIBIT F:** Declaration of John Strand, Cal. Action, Dkt. 92-3

- **EXHIBIT G:** Declaration of Roslyn Layton, Cal. Action, Dkt. 92-4

- **EXHIBIT H:** Translation of Danish Marketing Practices Act, Cal. Action, Dkt. 92-2.

I.    **<u>INTRODUCTION</u>**

This is the second lawsuit in which Plaintiffs Yangtze Memory Technologies Co., LTD and Yangtze Memory Technologies Co., Inc. (together, "YMTC") have sued Defendants Strand Consult and Roslyn Layton on the exact same Lanham Act claims. In its first suit, filed in the Northern District of California, the court (Hon. Judge Wise) issued a final order (i) denying YMTC's motion to transfer the action to this Court, holding this Court did *not* have personal jurisdiction over Defendants on these claims and that there are no other particular circumstances that make this a proper court for this litigation; and (ii) dismissing the complaint on grounds of *forum non conveniens*, finding Denmark to be a more convenient forum for this case. YMTC could have then appealed Judge Wise's decision, proceeded in Denmark, or discontinued its claims against Defendants. It chose none of those options. Instead, one day after Judge Wise entered final judgment, YMTC filed this lawsuit—a collateral action in a sister federal court asserting the *same claim* against the *same parties* based on the *same record.*

Much of the record is already before this Court in yet another lawsuit—YMTC's third on the same alleged factual record—which is a related action against Micron Technology, Inc. ("Micron") and DCI Group AZ, L.L.C. ("DCI"). That suit also alleges Lanham Act false advertising claims. *See YMTC et al. v. Micron Technology, Inc. et al.*, No. 1:25cv1795-CJN (D.D.C. filed June 7, 2025) (the "Micron Action"). There, as here, YMTC bases its false advertising claims on the same five statements that appeared in the same two publications from the China Tech Threat website. There, as here, the two publications are not commercial speech and do not contain actionable false statements, even though both are required for a Lanham Act claim. There, as here, YMTC ignores the fact that the very statements challenged in this litigation were published in other sources, including by the United States government.

The material difference between the Micron Action and this instant action are the named defendants. Though not competitors of YMTC, Strand Consult and Dr. Roslyn Layton—a Danish consulting company and a Danish-domiciled policy expert, both recognized for their advocacy and publications against the Chinese government and its related entities—were YMTC's initial targets. YMTC began this lawfare against Defendants Strand Consult and Dr. Layton over a year ago in the Northern District of California, where they alleged the same false advertising claims based on the same statements in the CTT Publications. *See YMTC et al. v. Strand Consult et al.*, No. 5:24cv3454-NW (N.D. Cal. filed June 7, 2024) ("California Action"). In California, Judge Wise initially dismissed the action for lack of personal jurisdiction with leave to amend. Cal. Action, Dkt. 81. YMTC did not amend. Instead, YMTC sought reconsideration of the personal jurisdiction ruling and, simultaneously, sought transfer to this District. In analyzing YMTC's motion to transfer, Judge Wise was required to assess and decide whether this District had personal jurisdiction over Defendants. Significantly, in holding that "Plaintiffs could not have originally brought this case in the District of Columbia," Judge Wise ruled:

> The Court finds that this case could not have been brought in the District of Columbia, because, without more, the District of Columbia would not have personal jurisdiction over Defendants for this particular dispute (absent waiver or other particular circumstances).

**Ex. A**, Cal. Action, Dkt. 99 at 5, 8. In that same Order, Judge Wise granted Defendants' motion to dismiss on the basis of *forum non conveniens*, finding Denmark to be a more convenient forum.

This lawsuit is clearly precluded by Judge Wise's determination that this Court lacks personal jurisdiction over Defendants on these claims and that a more convenient forum exists in Denmark. The Complaint fails for other reasons, including that it does not plausibly allege how or why Defendants should be found liable under the Lanham Act, which is meant to protect against unfair competition between competitors with respect to *commercial* speech that causes *competitive*

injury based on false, actionable, statements. Ultimately, dismissal is required based on any one of multiple independent grounds: 1) this action is an impermissible second lawsuit barred by issue preclusion and judicial estoppel; 2) Denmark is a more convenient forum for this case; 3) this Court lacks personal jurisdiction over these Defendants; 4) YMTC lacks Article III and statutory standing under the Lanham Act; and 5) the allegations do not plausibly allege a Lanham Act claim.

## II.    STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY

### A.    The California Action

YMTC first sued Defendants in the Northern District of California in June 2024, alleging diversity-of-citizenship subject-matter jurisdiction—based on the incorrect allegation that Dr. Layton resided and owned a home in Florida—and asserting claims under California law for trade libel and unfair competition. Cal. Action, Dkt. 1 ¶¶ 12, 18, 38–55. In the early stages of the California Action, Defendants informed YMTC that subject-matter jurisdiction was lacking (*i.e.*, no diversity jurisdiction) because Dr. Layton was domiciled in Denmark and did not own a home in Florida. *See* Cal. Action, Dkt. 37 at 3.[1] Defendants also informed YMTC and the California court of their intention to file a motion to strike under California's Anti-SLAPP law, Cal. Civ. Proc. Code § 425.16, as well as a motion to dismiss under Federal Rule of Civil Procedure 12 for lack of subject-matter jurisdiction and lack of personal jurisdiction and a motion to stay discovery pending the resolution of those motions. Cal. Action, Dkt. 37 at 7.

Shortly after Defendants moved to stay discovery and before Defendants could file their anti-SLAPP motion, YMTC filed an amended complaint, replacing all of its state law defamation claims with a cause of action under the Lanham Act, effectively evading California's anti-SLAPP

---

[1] Dr. Layton is a dual citizen of the United States and Denmark. *See* Cal. Action Dkt. 65-5 ¶ 3 (Dr. Layton's sworn declaration in support of motion to dismiss the California Action).

laws. Cal. Action, Dkt. 39, 50. YMTC also asserted that the California court had personal jurisdiction over Defendants based on Federal Rule of Civil Procedure 4(k)(2), which applies to defendants who are not subject to personal jurisdiction in any state's courts of general jurisdiction. *See* Cal. Action, Dkt. 46 at 5, 7–8; Dkt. 50. The amended complaint also added a new defendant, DCI Group A.Z., LLC ("DCI").

The California court granted Defendants' motion to stay discovery. *Id.*, Dkt. 59. Defendants moved to dismiss the amended complaint based on lack of subject matter jurisdiction and failure to state a claim, as well as for lack of personal jurisdiction as to DCI. *Id.*, Dkt. 65. On May 20, 2025, the California court dismissed YMTC's first amended complaint, holding that it lacked personal jurisdiction over each of the three defendants and denying leave to amend as to DCI, but granting leave to amend as to Strand Consult and Dr. Layton. *Id.*, Dkt. 81. The Court did not reach Defendants' other arguments.

Instead of voluntarily dismissing the California Action against Defendants or filing another amended complaint in California, YMTC requested reconsideration of the dismissal against Strand Consult and Dr. Layton. Cal. Action Dkt. 83, 88. YMTC even threatened Defendants' counsel with a potential motion for sanctions if they opposed the motion for reconsideration and if (within a little more than 24 hours) they did not stipulate to personal jurisdiction in the United States under Rule 4(k)(2). Defendants declined to stipulate to personal jurisdiction and informed YMTC of their intention to file a motion for dismissal based on *forum non conveniens*. YMTC also filed a Lanham Act action in this District *based on the same challenged statements from the California Action* against Micron and DCI. *See* Micron Action, Dkt. 1.

Significantly, in addition to seeking reconsideration, in July 2025, YMTC filed a motion asking Judge Wise to transfer the case to this District. Cal. Action, Dkt. 91. As YMTC readily

acknowledged, that motion required Judge Wise to decide, *inter alia*, "[w]hether [the California Action] might have been brought in the United States District Court for the District of Columbia" as well as whether transfer would promote the interest of justice. *Id.* at 2–3. YMTC argued that it could have filed the California Action in this District because, it claimed, Defendants were subject to personal jurisdiction anywhere in the United States pursuant to Rule 4(k)(2). *Id.* at 6–11. It also argued that Defendants had "consented to jurisdiction." *Id.* at 6.

Defendants opposed YMTC's motion for reconsideration and its motion for transfer. Cal. Action, Dkt. 89, 93. Defendants argued that this District would not have had personal jurisdiction over Defendants when the California Action was filed, because (1) Defendants do not have minimum contacts with the United States, and (2) the exercise of personal jurisdiction over Defendants would be unreasonable. Cal. Action, Dkt. 93 at 2–5. In addition, Defendants filed a motion to dismiss on *forum non conveniens* grounds. Cal. Action, Dkt. 92.

In deciding YMTC's motion for transfer, Judge Wise explained that it was YMTC's burden to prove, as a threshold matter, "that this case could have been brought in the District of Columbia, including … that the District of Columbia has personal jurisdiction over Defendants." **Ex. A**, Cal. Action, Dkt. 99 at 5. On that issue—which was fully litigated in the California Action and is material to this motion—Judge Wise ruled against YMTC and in favor of Defendants: "***Plaintiffs could not have originally brought this case in the District of Columbia.***" *Id.* (emphasis added). In particular, Judge Wise held that Defendants' contacts were "too insignificant to hale foreign Defendants into court in the United States," that YMTC failed to prove that Defendants caused harm that should have been anticipated would be suffered in the United States, and that there were no "other particular circumstances" that would permit litigation of this case in this District. *Id.* at 6–8. Judge Wise additionally held that "Plaintiffs' claims do not arise out of Defendants' forum-

related activities" and that "[e]ven on its face, adjudicating this dispute in the District of Columbia is not reasonable." *Id.* at 8.

As to Defendants' *forum non conveniens* motion to dismiss, Judge Wise held that Denmark was an adequate alternate forum and that the private and public interest factors favored proceedings in Denmark rather than the United States, particularly because "Denmark has an interest in regulating the actions of their local corporations and their citizens when those actions were undertaken within Denmark" and "[w]hile the United States has an interest in protecting its companies, YMTC-USA has not demonstrated harms it incurred, as opposed to its Chinese parent company, YMTC." *Id.* at 12. Accordingly, Judge Wise granted Defendants' motion to dismiss on *forum non conveniens* grounds (with conditions related to the statute of limitations and Defendants' acceptance of process in Denmark). *Id.* at 11, 13. Defendants filed notice of their consent to the conditions for dismissal. Cal. Action, Dkt. 101. On October 2, 2025, Judge Wise entered judgment dismissing the California Action as to all Defendants. **Ex. B**, Cal. Action, Dkt. 105. YMTC did not appeal the California judgment and the time to do so expired on November 3, 2025. *See* Fed. R. App. Proc. 4(a)(1)(A).

On October 3, 2025, *the day after Judge Wise entered judgment*, YMTC filed this action against Defendants. Dkt. 1. This Complaint—the third that YMTC has filed against these Defendants—asserts the same Lanham Act claims that YMTC alleged in the California and Micron Actions. YMTC alleges the same violations—false advertising, product disparagement, and unfair competition—based on the same five statements in the same publications. *Compare* Dkt. 1 ("Compl.") ¶¶ 64–76, *with* Cal. Action, Dkt. 50 ¶¶ 61–72 and Micron Action, Dkt. 1 ¶¶ 63-74.

### B.    The Parties

YMTC describes itself as a "key player in the global 3D NAND [flash memory] market."

Compl. ¶ 3. By contrast, Defendant Strand Consult is a Danish consulting company. Defendant Dr. Roslyn Layton is its Executive Vice President and a co-founder of Strand Consult's China Tech Threat ("CTT") website. Neither manufacture nor market flash memory products. Dr. Layton is also a leading international expert on technology policy whose research has been widely published in the field and who is currently a Visiting Researcher at Aalborg University in Copenhagen. Together, Defendants started the CTT website to help foster awareness of issues involving the Chinese government relevant to American policy, specifically in the technology sector. Neither Dr. Layton nor Strand Consult has a financial stake in any of the companies referenced in publications on the CTT website—despite YMTC's baseless and disparaging description of Defendants as "spammers engaged in a sham marketing scheme for their own profit" or "paid foreign conduits—'hired guns'—for Micron's commercial messaging." Compl. ¶¶ 6, 9.

## C. YMTC's Claims

YMTC's Complaint dedicates several pages to describing the "structure and mechanics" of an alleged "deceptive commercial marketing scheme" executed by Defendants. Compl. ¶ 50; Compl. at 13-15. Ultimately, the Complaint attempts (but fails) to allege a Lanham Act false advertising claim based solely on two publications from the CTT website: (1) a sixteen-page report published in 2022 called "Silicon Sellout" (the "CTT Report"), and (2) a January 4, 2021 blog post (the "CTT Blog Post") (together, the "CTT Publications"). *Id*. ¶ 51-52, 68.

YMTC asserts that these same two publications somehow formed a "dual-track campaign" in which one track (presumably the one at issue in the Micron Action) separately "feinted as advocacy directed at government officials" while the other (the one supposedly at issue here) separately "involved a deceptive commercial marketing scheme that Defendants executed to target private commercial actors and disrupt YMTC's business relationships." *Id.* ¶ 50. This alleged dual

"tracks" theory has no support given that both the Micron Action and this action are based on the *exact same challenged statements* from the *same* two CTT Publications.

As in the Micron Action and the California Action, the Complaint alleges a Lanham Act false advertising, product disparagement, and unfair competition based on five statements from the CTT Publications. Compl. ¶ 68. Even a cursory glance at the Publications makes clear that they are not commercial publications. Nevertheless, YMTC challenges the following five statements, some of which are selective quotations combining separate sentences:

- "YMTC is *associated with* criminal activity, including a Social Security spoofing scam, identity theft, and cyber extortion." Compl. ¶ 68(a) (emphasis added);

- "YMTC chips equipped with spyware and installed on Apple devices *could* funnel collected data back to Beijing." Compl. ¶ 68(b) (emphasis added);

- "YMTC chips … *present the possibility* that malicious technology … from the Chinese military *could* be introduced to Apple end-users." Compl. ¶ 68(c) (emphasis added);

- "YMTC chips *could* be … intentionally compromised with rogue features … These built-in and concealed vulnerabilities would not be detected during manufacturing. They *could* be exploited … to disrupt performance or exfiltrate data." Compl. ¶ 68(d) (emphasis added); and

- "Electronics *with embedded chips* are enabled with a 'kill switch' … Such features, under Chinese military production, *could* be enabled … to shut down remotely by an unauthorized Chinese government actor." Compl. ¶ 68(e) (emphasis added).

Because the statements suggest associational relationships, are subjective, are contingent and/or relate to possible future outcomes, they are, in the first instance, not objective statements of fact that can support false advertising claims.

Moreover, the content of the CTT Publications, including these challenged statements, reflected news and information widely available elsewhere, much of which served as source material. The CTT Report, which is the crux of YMTC's Complaint, emphasizes that "[m]any U.S. policymakers and experts have cautioned that YMTC poses a clear and present danger to America's national security," citing calls by members of Congress for YMTC to be added to the Entity List and a letter from then-Senator Marco Rubio to Apple's CEO. *See* Compl. Ex. 4 at 8 & nn. 21–22. The CTT Report also cites as source material a June 2021 report from the White House entitled "Building Resilient Supply Chains, Revitalizing American Manufacturing, and Fostering Broad-Based Growth," (**Ex. C**, hereinafter, the "White House Report") which describes YMTC as "China's national champion memory chip producer" and includes a section on "Malicious Supply Chain Disruptions" that discusses some of the same security risks for semiconductors that underlie the challenged statements identified in YMTC's Complaint. **Ex. C** at 55 (including "attacks" facilitated by a "modified design" that would "insert a back door across all chips using it, with a malicious actor then able to target the system using the chip" as a potential risk).

The United States government has repeatedly placed YMTC on a sanctions list for risk of "activities contrary to the national security and foreign policy interests of the United States" and raised concerns about YMTC's affiliation with the Chinese government. *See, e.g.,* Department of Commerce, Additions and Revisions to the Entity List and Conforming Removal From the Unverified List, 87 Fed. Reg. 77505, 77506 (Dec. 19, 2022) (**Ex. D**) (placing YMTC on a sanctions list because it "pose[s] a significant risk of being … involved in activities contrary to the national security and foreign policy interests of the United States"); *see also* Department of Defense, Entities Identified as Chinese Military Companies Operating in the United States, (Jan. 31, 2024) (**Ex. E**). The CTT Publications were thus one (minor) voice reflecting a choir that included many

influential voices echoing the same message.

## III.    **ARGUMENT**

### A.    The Complaint Is Precluded by Judge Wise's Rulings in the California Action and Should Be Dismissed as a Result

As a threshold matter, and as also discussed in Defendants' contemporaneously filed Motion for Sanctions, dismissal is warranted here because of the preclusive effect of Judge Wise's ruling that 1) Denmark is a more convenient forum for this lawsuit, and 2) this Court does not have personal jurisdiction over Defendants. *See Aenergy, S.A. v. Republic of Angola,* 678 F. Supp. 3d 147, 159 (D.D.C. 2023) (finding that *forum non conveniens* decision in another court precluded complaint and dismissing on that basis), *aff'd,* 123 F.4th 1351 (D.C. Cir. 2024); *Ross v. Dep't of Just.*, 2022 WL 1746684, at *1 (D.D.C. May 31, 2022) (dismissing based on collateral estoppel).

### 1.    Judge Wise's Dismissal for *Forum Non Conveniens* and Finding That Denmark is a More Convenient Forum Preclude YMTC's Complaint

YMTC's Complaint should be dismissed as precluded by Judge Wise's *forum non conveniens* ruling, which found that Defendants had "met their burden of showing that Denmark is a more convenient forum" for YMTC's claims. **Ex. A**, Cal. Action, Dkt. 99 at 13. As shown by the extensive procedural history of YMTC's pursuit of Defendants, YMTC's Complaint in this action alleges the same claim based on the same facts as in the California Action. Therefore, as Judge Wise has already decided that this lawsuit belongs in Denmark, YMTC is collaterally estopped from trying to relitigate these claims here in this Court.

"Collateral estoppel applies to *forum non conveniens* dismissals." *Aenergy,* 678 F. Supp. 3d at 159. When "one federal court dismisses an action on the basis of *forum non conveniens*, a second federal court in which the case is brought is bound by that decision." *Id.* (quoting 14D Wright, Miller, Cooper & Freer, *Federal Practice & Procedure* § 3828.5, at 730 (4th ed. 2013)).

*See also Can v. Goodrich Pump & Engine Control Sys., Inc.,* 711 F. Supp. 2d 241, 257 (D. Conn. 2010) (*forum non conveniens* dismissal precluded plaintiff from bringing secondary complaint in federal court). Collateral estoppel, or issue preclusion, has three elements: (1) the issue was "actually litigated, that is, contested by the parties and submitted for determination by the court;" (2) the issue was "actually and necessarily determined by a court of competent jurisdiction;" and (3) preclusion "must not work an unfairness." *Otherson v. Dep't of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983) (cleaned up).

*Aenergy, S.A. v. Republic of Angola* is instructive. In *Aenergy*, the plaintiff initially brought a lawsuit seeking damages for breach of contract in the Southern District of New York, which dismissed the case on the basis of *forum non conveniens* before reaching the defendants' other arguments for dismissal. *Aenergy,* 678 F. Supp. at 147. The plaintiff appealed to the Second Circuit, which affirmed, and also filed a writ of certiorari with the Supreme Court, which was denied. *Id.* at 158. Undeterred, the plaintiff filed a new complaint in this District, dropping some defendants but naming the same remaining defendants, and narrowing its complaint to one count of breach of contract. *Id.* The court dismissed the complaint, finding that the plaintiff was "precluded from relitigating the Southern District's and Second Circuit's comprehensive decisions. Even if [the plaintiff] were entitled to another chance, the result would be the same: this suit belongs in Angola and should be dismissed on *forum non conveniens* grounds." *Id.* The D.C. Circuit affirmed. 123 F.4th 1351 (D.C. Cir. 2024).

Similarly, here, YMTC has brought the same Lanham Act claim, based on the same record, against the same Denmark-based Defendants. All three issue preclusion factors are plainly satisfied and dismissal is required.

**First**, there is no dispute that the *forum non conveniens* issue before this Court is the same

issue that was actually litigated in the California Action. "Identity of the issue is established by showing that the same general legal rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules." *Aenergy*, 678 F. Supp. 3d at 159 (citation omitted). Here, the legal rules and factual circumstances are the same because the parties and the claims are the same. Plaintiffs are still a China-based corporation and its California subsidiary, Defendants are still both domiciled in Denmark, and the claim is the same Lanham Act claim. YMTC has alleged no new material facts or law that would change a *forum non conveniens* analysis here. *See, e.g., id.* at 161 (finding plaintiff had not alleged any new material facts and rejecting argument that issue preclusion did not apply because "the D.C. Circuit employs a different *forum non conveniens* standard than the Second Circuit"). Defendants moved for dismissal based on *forum non conveniens* on July 30, 2025, Cal Action, Dkt. 92, and the parties fully briefed the issue. Defendants also submitted declarations evidencing that they both are domiciled in Denmark, that their work on the CTT Publications was completed in Denmark, and that travel to the United States would be extremely burdensome. *See* **Ex. F,** Cal. Action, Dkt. 92-3 (Declaration of John Strand); **Ex. G**, Cal. Action, Dkt. 92-4 (Declaration of Roslyn Layton**).**

**Second***,* the issue was actually and necessarily determined. Similar to the Southern District of New York in *Aenergy*, Judge Wise relied exclusively on *forum non conveniens* to dismiss the claims in the California Action. **Ex. A**, Cal. Action, Dkt. 99. In doing so, Judge Wise found that Denmark is an adequate alternative forum because Defendants are amenable to service of process in Denmark and the "Danish Marketing Practices Act provides an available remedy for Plaintiffs' alleged injuries." *Id.* at 10. Judge Wise also found that the private and public interest factors weighed in favor of a dismissal for *forum non conveniens* because "it would be burdensome for Defendants to travel … to come to the U.S." but travel to Denmark would "not necessarily change

the burden on YMTC, whose representatives will need to travel [from China] regardless." *Id.* at 11. Further, Judge Wise found that a "significant portion of the relevant evidence is likely located in Denmark" since "Defendants' blog posts, which they wrote while in Denmark, are at the core of Plaintiffs' case." *Id.* at 11-12. Finally, Judge Wise found that public interest factors favored Denmark because "Denmark has an interest in regulating the actions of their local corporations and their citizens when those actions were undertaken within Denmark" and "[w]hile the United States has an interest in protecting its companies, YMTC-USA has not demonstrated harms it incurred, as opposed to its Chinese parent company, YMTC." *Id.* at 12. Thus, the issue of whether Denmark is a more convenient forum was actually and necessarily determined by Judge Wise.

*Third*, a finding of issue preclusion would not work a basic unfairness to YMTC, which has already had an opportunity to argue that this case does not belong in Denmark. None of the facts on which the California court made its *forum non conveniens* decision have changed. YMTC's "incentives to litigate the point now disputed were no less present in the prior case, nor are the stakes of the present case of vastly greater magnitude." *Aenergy,* 678 F. Supp. 3d at 163. Therefore, YMTC is collaterally estopped from relitigating its claim in this Court because Denmark has been determined to be a more convenient forum for this case.

**Dismissal for Forum Non Conveniens is Warranted Under D.C. Law.** Even if this Court were to analyze *forum non conveniens* anew, dismissal would still be required because the material facts are the same and the *forum non conveniens* factors are nearly identical between the Ninth and D.C. Circuits.[2] As in California, "the *forum non conveniens* analysis calls for the court to consider (1) whether an adequate alternative forum for the dispute is available and, if so, (2) whether a

---

[2] Under Ninth Circuit law, a movant must show "(1) the existence of an adequate alternative Forum," and "(2) that the balance of private and public interest factors favors dismissal." *Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 767 (9th Cir. 1991).

balancing of private and public interest factors strongly favors dismissal." *de Csepel v. Republic of Hungary*, 714 F.3d 591, 605 (D.C. Cir. 2013) (citation omitted). Also, "[w]hile a plaintiff's choice of forum is usually given a strong presumption, this factor carries much less weight when the plaintiff is also a stranger to the forum." *BPA Int'l, Inc. v. Kingdom of Sweden*, 281 F. Supp. 2d 73, 85 (D.D.C. 2003). Such is the case here, where Plaintiffs are a Chinese corporation and its California-based subsidiary. Compl. ¶¶ 20-21.

An "alternative forum is adequate if the defendants are subject to service of process there and the forum permits litigation of the subject matter of the dispute." *Aenergy*, 678 F. Supp. 3d at 164. Defendants are amenable to service of process in Denmark and, as Judge Wise found, Danish law "permits litigation of the subject matter of the dispute" through the Danish Marketing Practices Act, which prohibits "commercial practice[s]" that "contain false information" or are otherwise deceptive or likely to deceive "the average consumer, even if the information is factually correct." *See* **Ex. H**, Cal. Action, Dkt. 92-2 (English translation of Danish Marketing Practices Act), § 5-1.

The balance of public and private interest factors weighs in Defendants' favor for the same reasons outlined in Judge Wise's decision. These private interest factors include: "the relative ease of access to sources of proof," the "cost to obtain attendance of willing witnesses," and "all other practical problems that make trial easy, expeditious, and inexpensive." *Aenergy*, 678 F. Supp. 3d at 166. These factors clearly favor Denmark, where both Defendants—who are likely to be critical witnesses—are domiciled, where their alleged conduct underlying YMTC's claims took place, and where the evidence related to the CTT Publications is located. *See* **Ex. F,** Strand Decl.; **Ex. G,** Layton Decl. By contrast, Plaintiffs are located in Wuhan, China and Santa Clara, California,

respectively. Compl. ¶¶ 20-21. Plaintiffs would need to travel regardless of whether this litigation took place in Denmark or D.C., and the Chinese YMTC entity is closer to Copenhagen than D.C.[3]

The public interest factors also favor Denmark as a more convenient forum. These factors "attest to whether the suit is unnecessarily burdensome on the court, or the residents of the community in which the suit is brought, and whether the community where the action leading to the suit actually took place has an interest in the litigation." *BPA Int'l, Inc.*, 281 F. Supp. 2d at 85–86. As detailed below, YMTC has failed to allege a connection between Defendants and the District of Columbia sufficient to establish personal jurisdiction in this Court. Further, and as Judge Wise previously found, Denmark has a strong interest in hearing claims brought against its citizens regarding their alleged conduct in Denmark while "YMTC-USA has not demonstrated harms it incurred, as opposed to its Chinese parent company, YMTC." **Ex. A**, Cal. Action, Dkt. 99 at 12. *See also BPA Int'l, Inc.*, 281 F. Supp. 2d at 86  (public and private interests favored Sweden over D.C. where "potential witnesses and much of the evidence will likely be located in Sweden and therefore will likely be beyond the reach of this Court's compulsory process" and "[t]he local [D.C.] community is unlikely to have any special interest in this litigation whereas the citizens of Sweden have a much more significant interest because the case involves Swedish corporations").

    2.    **The Complaint Should Be Dismissed under the Collateral Estoppel Doctrine for Lack of Personal Jurisdiction and Lack of Other Circumstances That Would Permit Bringing This Case in This District**

---

[3] Wuhan is approximately 4,900 miles from Copenhagen but approximately 7,500 miles from Washington, D.C *Compare* https://www.distance.to/Wuhan,Hubei,CHN/Copenhagen,DNK *with* https://www.distance.to/Wuhan,Hubei,CHN/Washington,DC,USA-(District-of-Columbia)     (last accessed Jan. 15, 2026). A court may take judicial notice of distance calculations in considering a forum non conveniens motion to dismiss. *See, e.g., United States v. Perea-Rey*, 680 F.3d 1179, 1182 & n.1 (9th Cir. 2012).

Judge Wise's denial of YMTC's motion to transfer in the California Action separately precludes the Complaint. In deciding YMTC's motion to transfer, Judge Wise explained that it was YMTC's burden to prove, as a threshold matter, "that this case could have been brought in the District of Columbia, including … that the District of Columbia has personal jurisdiction over Defendants." **Ex. A**, Cal. Action, Dkt. 99 at 5. As to that issue, Judge Wise found that "Plaintiffs could *not* have originally brought this case in the District of Columbia because, without more, the District of Columbia would not have personal jurisdiction over Defendants for this particular dispute (absent waiver or other particular circumstances)" *Id.* at 8 (emphasis added). Judge Wise further found that Defendants' contacts were "too insignificant to hale foreign Defendants into court in the United States." *Id.* at 6. Therefore, the elements of collateral estoppel are also satisfied for the issue of whether this Court has personal jurisdiction over Defendants or whether "other" circumstances exist permitting this case to be brought in this District: the issue was 1) "actually litigated," 2) "actually and necessarily determined by a court of competent jurisdiction," and 3) preclusion would not "work an unfairness." *Otherson,* 711 F.2d at 273.

*First*, the issue of whether this Court may exercise personal jurisdiction over Defendants (or whether "other particular circumstances" existed to permit litigation in this District) was actually litigated in the California Action. YMTC filed a motion in the California Action to transfer that case to this District. Cal. Action, Dkt. 91. As YMTC expressly acknowledged, that motion required the California court to decide, *inter alia*, "[w]hether [the California Action] might have been brought in the United States District Court for the District of Columbia"—which necessarily encompassed the inquiry of whether this Court would have had personal jurisdiction over Defendants (or whether, based on other particular circumstances, this case could have been brought in this Court). *Id.* at 2. YMTC argued that this Court would have had personal jurisdiction over

Defendants for purposes of its Lanham Act claim. *See* Cal. Action, Dkt. 91; Dkt. 94. Defendants opposed the motion to transfer on the merits, contending that this Court could not exercise personal jurisdiction over them. *Id.* at Dkt. 93.

**Second**, Judge Wise actually and necessarily decided the issue. As the California court's Order explained, "[t]o grant Plaintiffs' motion [to transfer], the Court [would be required to] find that this case could have been brought in the District of Columbia, including finding that the District of Columbia has personal jurisdiction over Defendants." **Ex. A**, Cal. Action, Dkt. 99 at 5. On that specific point, Judge Wise expressly held "that this case could not have been brought in the District of Columbia because, without more, the District of Columbia would not have personal jurisdiction over Defendants for this particular dispute (absent waiver or other particular circumstances)." *Id.* at 8. On that basis, Judge Wise denied YMTC's motion to transfer.

YMTC's current arguments for personal jurisdiction over Defendants in D.C. do not allow YMTC to escape the preclusive effect of Judge Wise's Order. In its Complaint, YMTC alleges two bases for personal jurisdiction, neither of which save their arguments from issue preclusion. First, YMTC asserts that Defendants "consented by contract to jurisdiction in this District through the Terms of Use governing the China Tech Threat website." Compl. ¶ 25. Second, YMTC asserts that "Defendants are subject to personal jurisdiction in this District under the District of Columbia's long-arm statute," based on Defendants' alleged contacts with this District. *Id.* at ¶ 27.

These theories lack merit, as explained below. But this Court need not even reach their merits, because the *issue* of whether this Court may exercise personal jurisdiction over Defendants—or whether there are other circumstances that permit this case in this District—has already been fully litigated and conclusively determined. Additional legal arguments, like YMTC's Terms of Use and D.C.-long-arm theories, are not "new issues." *Hall v. Clinton*, 285

F.3d 74, 81 (D.C. Cir. 2002). Although an exception to issue preclusion allows relitigation of a jurisdictional dismissal when "a precondition requisite to the court's proceeding with the original suit was not alleged or proven, and is supplied in the second suit," that exception "is ***sharply limited*** … by the requirement that new allegations of a sufficient precondition requisite identify *occurrences **subsequent** to the original dismissal* that remedy the jurisdictional deficiency." *Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34, 41 (D.C. Cir. 2015) (cleaned up) (emphasis in original). "That exception permits litigants whose claims were dismissed on jurisdictional grounds to establish jurisdiction in a subsequent case only if a material change *following dismissal* cured the original jurisdictional deficiency." *Id.* at 41 (emphasis added). The "relevant date for purposes of the curable defect exception" is the date of the dismissal of the previous action. *Id.* at 41 n.7.

YMTC's additional legal arguments are not "material changes *following dismissal* [that] cured the original jurisdictional deficiency." *Id.* at 41 (emphasis added). As the D.C. Circuit has explained,

> [i]f a new legal theory or factual assertion put forward in the second action is related to the subject-matter and relevant to the issues that were litigated and adjudicated previously, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged.

*Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 258 (D.C. Cir. 1992) (quoting James Moore, Jo Lucas, & Thomas Currier, 1B Moore's Federal Practice ¶ 0.443[2] at 760–61 (1988)) (emphasis in original). "[O]nce an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case." *Id.* at 254; *see also Paulo v. Holder*, 669 F.3d 911, 918 (9th Cir. 2011) ("If a party could avoid issue preclusion by finding some argument it failed to raise in the previous litigation, the bar on successive litigation would be seriously undermined."); *Zip Dee, Inc. v. Dometic Corp.*, 905 F. Supp. 535, 537 (N.D. Ill. 1995)

("But with [the defendant's] predecessor having once fought and lost the battle on the [legal issue], [the defendant] is now barred by issue preclusion from waging that battle again with fresh troops."). Plainly, YMTC's "new" legal theories and factual assertions regarding personal jurisdiction did not arise after Judge Wise's ruling and are related to the issue already litigated: whether this Court could have exercised personal jurisdiction over Defendants if YMTC had brought its Lanham Act claim in this Court to begin with.

*Third*, preclusion would not work any unfairness here, where "[t]he predicament in which [YMTC] finds [itself] is of [its] own making," *Reed v. Allen*, 286 U.S. 191, 198 (1932). The D.C. Circuit does not permit an equitable exception to issue preclusion except in sharply "limited circumstances." *Canonsburg Gen. Hosp. v. Burwell*, 807 F.3d 295, 306 (D.C. Cir. 2015). None of those circumstances—an intervening change in controlling law, a lack of incentive on the part of the party to be bound to litigate in the prior action, or a serious defect in the prior proceedings— exists here. *Id.* Because the doctrine of issue preclusion "aims to avert … disturbance of repose," the correctness of the prior judgment cannot be collaterally attacked in a second action. Even a judgment that was "patently erroneous" (which is not the case here) must still be given preclusive effect where both the party advocating for preclusion and the party to be bound were litigants in the prior action. *Otherson*, 711 F.2d at 273, 277. And no "compelling showing of unfairness," *id.* at 277 (quoting Restatement (Second) of Judgments § 28, cmt. j), can be made in these circumstances, for YMTC had every incentive to litigate the issue of this Court's personal jurisdiction over Defendants when it invited the California court to decide that issue. *See also Matosantos Com. Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1212 (10th Cir. 2001) (no unfairness in giving preclusive effect to dismissal for lack of personal jurisdiction).

***Fourth***, it is also clear that issue preclusion applies here because Judge Wise "actually and necessarily" decided that YMTC could not establish personal jurisdiction in this District because Defendants lacked minimum contacts with the United States as a whole. **Ex. A**, Cal. Action, Dkt. 99 at 5–8. YMTC's previous legal theory on the issue of personal jurisdiction was that Defendants had sufficient *nationwide* contacts to give rise to personal jurisdiction under Fed. R. Civ. P. 4(k)(2). *See* Cal. Action, Dkt. 46 at 7; Dkt. 91 at 6–11; Dkt. 94 at 3–9. Therefore, in addition to explicitly finding that courts in this District lack personal jurisdiction over Defendants, the California court also *implicitly* found that Defendants lacked sufficient minimum contacts with the District of Columbia. *See Hoult v. Hoult*, 157 F.3d 29, 32 (1st Cir. 1998) (alteration adopted) ("[A]n issue may be 'actually' decided for collateral estoppel purposes even if it is not *explicitly* decided, for it may have constituted, logically or practically, a necessary component of the decision reached") (quoting *Dennis v. R.I. Hosp. Tr. Nat'l Bank*, 744 F.2d 893, 899 (1st Cir. 1984)).

Judge Wise's findings as to Defendants' minimum contacts with the United States therefore preclude YMTC's argument for personal jurisdiction under D.C.'s long-arm statute. *Cf. Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 479 (1982) (prior judgment had preclusive effect where elements of claim under New York law and federal law were "virtually identical" and plaintiff could not succeed on federal claim "consistently with the [prior] judgment" that claim under New York law was meritless); *Spence v. TRW, Inc.*, 92 F.3d 380, 382 (6th Cir. 1996) (where previous court's determination extended to "an essential element of" the plaintiff's claims in the second suit, the judgment in the previous suit foreclosed those claims); *Meng v. Schwartz*, 305 F. Supp. 2d 49, 57 (D.D.C. 2004) (where "the doctrine of collateral estoppel bars relitigating of issues that are central to the viability of the counts in the plaintiffs' complaint," each count "must be dismissed"); *AMA Multimedia, LLC v. Madon*, 2020 WL 5096476, at *4 (D. Nev. Aug. 28, 2020)

(collateral estoppel applicable where issue of personal jurisdiction over defendant "implicates the same analysis as" the issue of personal jurisdiction over defendant's business partner).

As YMTC is collaterally estopped from asserting personal jurisdiction in this Court, YMTC's claims are barred as a matter of law and dismissal is required. *See, e.g., Ross*, 2022 WL 1746684, at *1. Moreover, given the egregious record that YMTC has created across the California Action and here, dismissal on the basis of issue preclusion would serve the doctrine's primary purpose, which is to deter and bar "successive litigation" of the same issues. *Hampshire v. Maine*, 532 U.S. 742, 748 (2001).

### 3.    The Complaint Should Be Dismissed for Judicial Estoppel

The doctrine of judicial estoppel separately prevents YMTC from asserting its new theories of personal jurisdiction because those theories are inconsistent with YMTC's prior position in California that Rule 4(k)(2) applied based on Defendants' alleged *nationwide* contacts. Thus, dismissal is also warranted on this basis. *See, e.g., Hall v. McAleenan*, 2019 WL 4889275, at *4 (D.D.C. Oct. 3, 2019) (granting motion to dismiss under Rule 12(b)(6) based on issue preclusion and judicial estoppel), *aff'd sub nom.*, 2020 WL 6038710 (D.C. Cir. Aug. 7, 2020).

"There are at least three questions that a court should answer in deciding whether to apply judicial estoppel: (1) Is a party's later position clearly inconsistent with its earlier position? (2) Has the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled? (3) Will the party seeking to assert an inconsistent position derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped?" *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 798 (D.C. Cir. 2010).

The answer to each of these questions here is "yes." In the California Action, regarding YMTC's original state-law claims, Defendants raised in the joint case management statement and their motion to stay discovery that the California court lacked personal jurisdiction over them because they did not have minimum contacts with *California*. Cal. Action, Dkt. 37 at 4; *id.* Dkt. 39 at 9–10. In response, YMTC amended its complaint to assert federal law claims for the first time and argued that its amended complaint established personal jurisdiction over Defendants pursuant to Rule 4(k)(2), based on Defendants' alleged *nationwide* contacts. Dkt. 46 at 7. The parties subsequently briefed, and the California court applied, Rule 4(k)(2), which may apply only when the defendant is *not* subject to personal jurisdiction in any state court of general jurisdiction.[4] *See, e.g.*, Cal. Action, Dkt. 91 at 6–11; Dkt. 93 at 3–5; Dkt. 94 at 2–9; Dkt. 99 at 5–8.

That the California Action proceeded based on YMTC's theory of nationwide contacts was plainly to YMTC's benefit, as that standard is far more favorable to a plaintiff than an inquiry focused on contacts with only the forum state. The application of Rule 4(k)(2) is also flatly inconsistent with YMTC's new position that Defendants *are* subject to personal jurisdiction in Washington, D.C. And permitting YMTC to adopt that new, contrary position now—when its new theories have no conceivable purpose but to attempt to avoid the preclusive effect of Judge Wise's Order—would obviously provide an unfair advantage to YMTC, to Defendants' detriment.

**B.    The Complaint Should Be Dismissed Under Rule 12(b)(2) For Lack of Personal Jurisdiction**

"To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff may not rely on conclusory allegations but instead must make a showing of the facts necessary to connect each defendant to the forum." *Devorah v. Royal Bank of Canada*, 115 F.

---

[4] The term "state" includes the District of Columbia. Fed. R. Civ. P. 81(d)(2).

Supp. 3d 35, 38 (D.D.C. 2015). Even if this Court were to reach the personal jurisdiction question on the merits, YMTC has not sufficiently alleged a connection between Defendants and the District of Columbia. YMTC asserts that this Court has personal jurisdiction over Defendants based on two theories: (1) because they "consented by contract to jurisdiction in this District through the Terms of Use governing the China Tech Threat website," Compl. ¶ 25, and (2) under the District of Columbia's long-arm statute, *id.* ¶ 27. Neither theory holds water.

### 1. The China Tech Threat Website's Terms of Use Do Not Confer Personal Jurisdiction Here

YMTC's argument that Defendants have consented to personal jurisdiction in the District of Columbia through the CTT website's Terms of Use fails for a simple and threshold reason: YMTC's claim is not within the scope of the disputes covered by the Terms of Use. A website's terms of use create a contractual relationship between the website operator and users of the website. Therefore, a forum selection clause in a website's terms of use is "not typically treated as a forum 'contact' but rather is a distinct contract … between the parties to settle disputes in a particular forum.'" *SCPS, LLC v. L.*, 770 F. Supp. 3d 11, 32 (D.D.C. 2025).

YMTC's Terms of Use theory for personal jurisdiction fails because the dispute at issue in this action—a Lanham Act false advertising claim—was not contemplated by the relevant agreement. *See, e.g., SCPS, LLC,* 770 F. Supp. at 35 (dismissal warranted where dispute fell "outside the scope of the limited implied consent to personal jurisdiction"). YMTC's selective and self-serving misquoting of the Terms of Use cannot change this fact. YMTC alleges:

> "Section 13 of the Terms of Use provides that the relationship 'will be governed by the laws of the United States and the District of Columbia' and that any legal action arising from the website 'must be instituted exclusively in the federal or state courts located in the District of Columbia and in no other jurisdiction.' [Compl. Ex. 5 at 6] The terms also 'consent to exclusive personal jurisdiction and venue in, and agree to service of process issued or authorized by, any such court.' [Compl. Ex. 5 at 6]" Compl. ¶ 25.

In fact, the Terms state:

> "These Terms of Use and the relationship between You and us will be governed by the laws of the United States and the District of Columbia …. Any legal action, suit or proceeding **arising out of or relating to these Terms of Use, or Your use of the site or the Services** must be instituted exclusively in the federal or state courts located in the District of Columbia and in no other jurisdiction. **You** further consent to exclusive personal jurisdiction and venue in, and agree to service of process issued or authorized by, any such court. Compl. Ex. 5 at 6, § 13  (emphasis added).

Notably, YMTC has not alleged breach of the Terms of Use or of any agreement between YMTC and Defendants (nor could it). YMTC does not allege (nor could it) that this lawsuit arises from its "use of the site or the Services." And YMTC has not sufficiently alleged how Dr. Layton, an alleged officer of Strand Consult, is bound by a CTT Terms of Use forum selection clause. Thus, as an initial matter, the forum selection clause, on its face, simply does not apply here. This dispute—which is entirely based on an alleged false advertising claim under the Lanham Act—is not a dispute "arising out of or relating to" the CTT Terms of Use. In *SCPS, LLC*, for example, the Court found that the forum selection clause in a website's terms of use was inapplicable for the purpose of determining personal jurisdiction because the court could not "discern—and the [plaintiffs] have not argued—how [the defendants'] conduct falls within the scope of the [agreement]." 770 F. Supp. at 41.

### 2.    YMTC's Long-Arm Theory Fails

YMTC's alternate theory for personal jurisdiction under the District of Columbia's long-arm statute also fails because Defendants' actions were not expressly aimed at this forum. As YMTC has acknowledged, neither Strand Consult nor Roslyn Layton are residents of the District of Columbia. Compl. ¶¶ 22-23. In "assessing whether a federal court has personal jurisdiction over a nonresident party, the court ordinarily first considers whether jurisdiction is applicable under the state's long-arm statute and then whether a finding of jurisdiction satisfies the constitutional

requirements of due process." *SCPS, LLC*, 770 F. Supp. at 32 (citation omitted). The latter inquiry is satisfied when there are "minimum contacts between the defendant and the forum." *Id.*

It is YMTC's burden to "allege specific acts connecting [Defendants] with the forum." *Hayes v. FM Broad. Station WETT*, 930 F. Supp. 2d 145, 151 (D.D.C. 2013). YMTC argues that Defendants are subject to personal jurisdiction in this District under D.C. Code § 13-423(a)(1) (transacting business) and § 13-423(a)(1) for "causing tortious injury in D.C. by an act outside D.C. while engaging in persistent conduct in D.C." Compl. ¶ 27. Both arguments fail.

To meet the "transacting business" prong of the District of Columbia's long-arm statute, a plaintiff must prove: "First, that the defendant transacted business in the District of Columbia; second, that the claim arose from the business transacted in D.C.; and third, that the defendant had minimum contacts with the District of Columbia such that the Court's exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice." *Alkanani v. Aegis Def. Servs.*, LLC, 976 F. Supp. 2d 13, 24 (D.D.C. 2014). YMTC's argument that Defendants ""purposefully direct their campaign at this District, targeting media organizations, commercial decision-makers, and relevant stakeholders," Compl. ¶ 27, does not satisfy the requirements for transacting business in D.C. under D.C. Code § 13-423(a)(1). The content on the CTT website— the basis for YMTC's claims—is accessible by lawmakers, "media organizations," "commercial decision-makers," or "relevant stakeholders" across the country. Thus, YMTC does not "allege that the [D]efendants purposefully availed themselves of the District of Columbia any more than they availed themselves of every other jurisdiction in which their website was accessible." *Hayes,* 930 F. Supp. 2d at 152; *see also Brightwell Dispensers Ltd. v. Dongguan ISCE Sanitary Ware Indus. Co.*, 2019 WL 7037493, at *7 (D.D.C. Dec. 20, 2019) (no personal jurisdiction over defendant website operator where plaintiff "present[ed] no evidence that D.C. residents visited the

website or actually engaged in any business transactions with the defendant" and "alleged only that D.C. residents can access and interact with [defendant's] website, which is insufficient to confer personal jurisdiction under D.C. Code § 13-423(a)(1)").

As to YMTC's allegations under the "tortious injury" section of the District's long-arm statute, YMTC must "make a prima facie showing" that it "suffered tortious injury in the District of Columbia," that the "injury was caused by defendant's act or omission outside of the District of Columbia," and that "[D]efendants had one of the three enumerated contacts [or 'plus factors'] with the District of Columbia" *Kline v. Williams*, 2006 WL 758459, at *3 (D.D.C. Mar. 23, 2006). Further, "[T]ortious acts that occur outside of the District of Columbia do not give rise to specific jurisdiction unless the defendant '*expressly aimed* its tortious conduct at the forum[,]' and the harm caused by the defendant was primarily felt in the forum." *Alkanani,* 976 F. Supp. 2d at 28.

YMTC does not make any plausible allegations that it suffered tortious injury in the District of Columbia or that the five statements that form the basis of its Lanham Act claim were "expressly aimed at" D.C. To the contrary, YMTC alleged in the California Action that they were expressly aimed at California in order to affect business decisions made *in California*. *See, e.g.,* Cal. Action Dkt. 1 ¶ 25 ("intentionally directed … statements … at YMT Inc. and California, knowing YMT Inc. maintained its principal place of business in [N.D.Cal.]"); Cal. Action, Dkt 50 ¶ 27 (Silicon Sellout Report "targeted Apple Inc. in Cupertino, California, urging Apple to terminate its relationship with YMTC"); *Id.* ¶ 29 ("the brunt of the harm suffered by Plaintiffs and caused by Defendants' conduct occurred in California").

YMTC's arguments that Defendants "purposefully directed their campaign at this District," Compl. ¶ 27, is contradicted by the other arguments in the Complaint. As an initial matter, the Complaint explicitly denies that its claim is based on Defendants' advocacy directed

toward U.S. policymakers. *See, e.g., id*. ¶ 50 (describing "dual-track campaign" with "one track feinted as advocacy directed at government officials (***which is not challenged in this action***)" (emphasis added). Instead, YMTC's Lanham Act claim here is premised on five statements which it claims were part of a supposed "second track" that was allegedly "executed to target private commercial actors and disrupt YMTC's business relationships." *Id.* YMTC has not alleged any specific connection between this "second track" and D.C. Moreover, even if the "government officials" track is relevant here, such "officials" can be found throughout the United States.

YMTC also fails to allege facts sufficient to show the other "plus factors" required to allege a "reasonable connection" between Defendants and D.C.—regularly doing or soliciting business, engaging in a persistent course of conduct, or deriving substantial revenue from services rendered in D.C. The Complaint here is devoid of any specific injury that occurred in D.C. or any substantial revenue generated by Defendants from D.C. And, as stated above, maintenance of a website that might be accessed by residents of D.C. does not amount to a "persistent course of conduct" under the long-arm statute. *Kline v. Williams*, 2006 WL 758459, at *4 ("mere maintenance of a website accessible to Internet users in the District does not amount to 'any persistent course of conduct' within the meaning of the long-arm statute"). YMTC has therefore failed to establish personal jurisdiction in this District under D.C.'s long-arm statute.

### C.    Dismissal Is Warranted Because YMTC Lacks Standing

#### 1.    This Action Should Be Dismissed for Lack of Article III Standing

Dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1) is required if a plaintiff has not established Article III standing. *Ctr. for Democracy & Tech. v. Trump*, 507 F. Supp. 3d 213, 218 (D.D.C. 2020). To plead Article III standing, a plaintiff must demonstrate (1) an "injury in fact," (2) that is "fairly traceable" to the challenged conduct of the defendant, and (3)

that is "likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish "injury in fact," a "plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Further, there must be a "causal connection between the injury and the conduct complained of" and the injury cannot be the "result of the independent action of some third party not before the court." *Lujan,* 504 U.S. at 560 (cleaned up). Where, as here, Article III standing has not been established, a court need not delve into the merits of the case. *See, e.g.*, *Animal Legal Def. Fund v. Vilsack*, 640 F. Supp. 3d 134, 151 (D.D.C. 2022) (citation omitted) (Nichols, J.).

YMTC fails to plausibly establish that any alleged competitive harm was "fairly traceable" to Defendants' actions rather than a "third party not before the court." *Lujan,* 504 U.S. at 560.[5] *See also Joint Stock Soc'y v. UDV N. Am., Inc.,* 266 F.3d 164, 178 (3d Cir. 2001) (no Lanham Act standing where it was apparent that "plaintiffs' putative injuries" were not "fairly traceable to the challenged action of the defendants, but [were] rather the result of an independent cause") (citation modified). Moreover, YMTC fails to plausibly allege "a chain of inferences that show how Defendants' actions could injure Plaintiff's business." *Stahl L. Firm v. Judicate W.*, 2013 WL 6200245, at *4 (N.D. Cal. Sept 12, 2013). While YMTC states in the most generic and conclusory fashion that "Defendants' conduct was a substantial factor in causing" its alleged harms because "[c]onsumers and businesses, particularly in the technology sector, are sensitive to national security concerns and the potential for data breaches and cyberattacks" it does not provide any

---

[5] YMTC also fails to allege a competitive injury, as is required under the Lanham Act. Defendants and YMTC are not competitors at all, let alone direct competitors. *Stahl L. Firm*, 2013 WL 4873065, at *3 (Article III injury for a false advertising claim requires at least "*some* factual allegations in the pleading to support at least the inference of competition") (emphasis added).

further explanation or otherwise connect the dots with factual allegations. Compl. ¶¶ 71-72. These vague and conclusory allegations are not sufficient to state a claim. *Twombly*, 550 U.S. at 570; *Anthony*, 296 F. Supp. 3d at 95.

The Complaint vaguely gestures to generalized harm arising from a broad range of potential and largely undefined customers, from OEMs to end-users. None of that amounts to the "concrete" or "particularized" injury necessary for Article III standing. The Complaint discusses only one specific customer, "OEM Customer #1," which YMTC claims was "considering" YMTC's 3D NAND flash memory chips until "Defendants intensified their disinformation campaign." Compl. ¶ 61. This allegation is plainly insufficient to establish the causal connection required to establish Article III standing. Among other things, the statements making up the alleged disinformation campaign allegedly impacting OEM Customer #1's decision-making—including statements regarding YMTC's relationship with the Chinese government (and the related potential security issues)—appeared in more prominent publications that were completely unaffiliated with Defendants. For example, the White House published a paper which warns of the risks of relying on foreign semiconductor manufacturers—including the risk of "malicious disruptions," **Ex. C** at 55—and references the $24 billion in subsidies that YMTC received from the Chinese government. *Id.* at 62-63. The Department of Commerce placed YMTC on a sanctions list based on a determination that it "pose[s] a significant risk of becoming involved in activities contrary to the national security and foreign policy interests of the United States." **Ex. D** at 77506. Even an article attached to the Complaint indicates that YMTC's loss of a potential deal with Apple was attributable to political pressure from Senator Marco Rubio, *not* the CTT Publications. Compl. Ex. 2 at 5. Senator Rubio's influence was also cited in the CTT Report. *Id.* Ex. 4 at 8 & nn. 21–22.

Against this backdrop, YMTC's effort to blame five statements in the CTT Publications is both misplaced and implausible, and, therefore, YMTC has not adequately pled that the harm it alleges is "fairly traceable" to Defendants instead of "third party not before the court." *Lujan,* 504 U.S. at 560. *See also United States ex rel. Univ. Loft Co. v. Avteq, Inc.*, 2015 WL 13548950, at *9 (W.D. Tex. Dec. 22, 2015) (no Article III standing where Complaint contained "no allegation that defendants' [allegedly false statements] were ever an applicable factor in a[n] … unrestricted bid contest in which plaintiff and defendant(s) were direct competitors"), *report and recommendation adopted*, 2016 WL 9461763 (W.D. Tex. Jan. 8, 2016). There is no independent impact on YMTC's customers from either the CTT Blog Post or CTT Report sufficient to establish Article III standing—and YMTC does not plausibly allege otherwise.

### 2. This Action Should Be Dismissed for Failure to Plead Statutory Standing Under the Lanham Act

In addition to failing to plead Article III standing, YMTC also failed to meet its burden to allege statutory standing to bring a false advertising claim under the Lanham Act, which requires that a plaintiff's injuries "fall within the zone of interests protected by the Lanham Act" and are "proximately caused by violations of the statute." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014). This requires showing "economic or reputational injury flowing *directly* from the deception wrought by the defendant's advertising …. [T]hat occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133 (emphasis added). For at least two reasons, YMTC fails to establish a direct connection between the challenged statements and any of its alleged injuries.

***First,*** the Complaint fails to plead that any alleged reputational harm was proximately caused by Defendants. *Lexmark Int'l, Inc.*, 572 U.S. at 133 ("the proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct").

In other words, YMTC has failed to show injury flowing *"directly from the [alleged] deception wrought," id.* at 133, by the CTT Publications rather than as a result of the same information appearing in other sources. This lack of causal connection is particularly relevant to Defendants because YMTC has not plausibly alleged that the China Tech Threat website (or either Defendant) was a source relied upon by its customers when making purchasing decisions.

The facts here are analogous to *Geomatrix LLC v. NSF International*, in which a manufacturer of wastewater treatment products (Geomat) accused another of conspiring to disparage its products in order to influence state regulators and ultimately prevent Geomat from selling its products in various states. 629 F. Supp. 3d 691, 697-99 (E.D. Mich. 2022), *aff'd*, 82 F.4th 466, 473-75 (6th Cir. 2023). Geomat's core theory was that the alleged "coordinated negative campaign" caused state regulators to view Geomat's "products with suspicion" thereby "withhold[ing] approval." 629 F. Supp. 3d at 709. The court rejected that argument, dismissing the complaint for lack of Lanham Act standing because it was "impossible to trace a straight line" from the "alleged conspiracy to disparage Geomat … to Plaintiff's inability to sell its Geomat products in various states," especially when state regulators could have made their decisions based on their own "independent decision" or a "combination of factors." *Id.* at 709-10. Because the alleged competitive harm was "driven by a unique combination of internal and external variables," it was "impossible to determine if the cause is attributable to defendants." *Id.* at 710.

As described above, there were a number of other, more prominent sources that were unrelated to Defendants or the China Tech Threat website and discussed the risks associated with YMTC's relationship with the Chinese government. A White House Report cited in the CTT Report even includes a section on "Malicious Supply Chain Disruptions" that discusses some of the same security risks for semiconductors that underlie the challenged statements identified in

YMTC's Complaint. **Ex**. **C** at 55 (including "attacks" facilitated by a "modified design" that would "insert a back door across all chips using it, with a malicious actor then able to target the system using the chip" as a potential risk).

Moreover, there are many reasons why a sophisticated OEM might choose one chip manufacturer over another, or why an end-consumer might choose one device over another, that are completely unrelated to the risks discussed in the CTT Publications. The Complaint fails to make plausible allegations that any of the alleged harms to YMTC occurred as a direct result of the CTT Publications, which merely echoed concerns already raised elsewhere. *See, e.g., Geomatrix, LLC,* 629 F. Supp. 3d 691; *see also, e.g.*, *HomeLight, Inc. v. Shkipin*, 694 F. Supp. 3d 1242, 1255 (N.D. Cal. 2023) (dismissing Lanham Act claim where connection between challenged statements and alleged harm was "too attenuated to establish proximate cause," especially where there was "[an]other plausible explanation" for why the alleged harm may have occurred).

Crucially, YMTC fails to make plausible allegations that any customer (1) was aware of the CTT Publications, or (2) relies on statements from sources like the CTT Publications when making purchasing decisions. The alleged loss of prospective business without alleging facts that customers even *saw* the challenged advertisements is too speculative to form the basis of a Lanham Act claim. *See, e.g.*, *Maffick LLC v. Facebook, Inc.*, 2021 WL 1893074, at *5 (N.D. Cal. May 11, 2021) (dismissing Lanham Act claim where plaintiff "provided no clues about how the alleged deception … might have affected the economic decisions by … existing and potential customers, whoever they might be") (citations omitted); *see also Avteq*, 2015 WL 13548950, at *9 (no Lanham Act standing because plaintiff failed to plead that the allegedly false advertisements were "influential or material" to a "consumer's purchasing decision").

YMTC also has not alleged that any of the alleged deception resulted in sales diverted to Defendants (which makes sense because Defendants are not competing chip manufacturers) or any financial benefit to Defendants. Nor has YMTC provided any facts showing that the CTT Publications resulted in any actual benefit to Micron, *i.e.*, the supposed beneficiary of the purported "disinformation campaign," Compl. ¶¶ 4, 10, 38, of which the CTT Publications were supposedly a part. *See, e.g.*, *Avteq*, 2015 WL 13548950, at *9 (no Lanham Act statutory standing where "plaintiff has not pleaded the government was induced by defendants' alleged false advertising to offer its business to the defendants instead of the plaintiff").

**Second**, and in addition to the insufficient allegations regarding "OEM Customer #1," *see above*, YMTC fails to allege how the challenged statements have specifically affected YMTC's sales or business reputation. The Complaint concludes, without any factual allegations, that the challenged statements "directly harmed YMTC's reputation and goodwill within the industry and among consumers, making it more difficult for YMTC to compete effectively in the market, attract and retain customers, secure investments, and recruit and retain employees." Compl. ¶ 73. YMTC's threadbare and conclusory allegations of harm flowing from unspecified customers from both ends of the purchasing spectrum are plainly insufficient, especially given, among other things, the lack of any allegation that customers saw or relied on the CTT Publications in making purchasing decisions. *See Avteq,* 2015 WL 13548950, at *9; *Maffick*, 2021 WL 1893074, at *5; *see also Barrett v. Atl. Monthly Grp. LLC*, 2024 WL 4119400, at *19 (D.D.C. Sept. 9, 2024) (dismissing claim where "allegation[s] of generalized harm" were insufficient).

### D.    YMTC Fails to State a Lanham Act Claim

Finally, as another independent ground supporting dismissal of the Complaint, YMTC cannot plausibly state a Lanham Act claim because 1) the CTT Publications do not qualify as

commercial speech, and 2) none of the five specified statements are false or misleading material statements about YMTC or its products. As the Lanham Act forms the sole basis for the Complaint, the Complaint should be dismissed in its entirety. A complaint is properly dismissed under Rule 12(b)(6) for failure to state a claim if it fails to plead "enough facts to state a claim to relief that is plausible"—not merely "conceivable"—"on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must assume the truth of well-pleaded allegations and draw reasonable inferences in favor of the plaintiff, but "the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions." *Anthony v. Int'l Ass'n of Machinists & Aerospace Workers Dist. Lodge 1*, 296 F. Supp. 3d 92, 95 (D.D.C. 2017).

### 1.    The CTT Publications are Not Commercial Speech

It is well-settled law that a claim for Lanham Act false advertising must be based on *commercial* speech. *See* 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 27:71 (5th ed.) (The "Lanham Act § 43(a)(1)(B)'s requirement that the challenged statement be 'in commercial advertising or promotion' includes *only* communications that can be characterized as Constitutionally defined 'commercial speech'") (collecting cases) (emphasis added); *Farah v. Esquire Mag., Inc.*, 736 F.3d 528, 541 (D.C. Cir. 2013) ("Every circuit court of appeals to address the scope of [the Lanham Act's] provisions has held that they apply only to commercial speech."). This is true regardless of whether the speech at issue is, in fact, false. Speech that is false, but non-commercial, is outside the reach of the Act. *Neurotron, Inc. v. Am. Ass'n of Electrodiagnostic Med.*, 189 F. Supp. 2d 271, 275 (D. Md. 2001), *aff'd*, 48 F. App'x 42 (4th Cir. 2002).

Commercial speech has been defined as "'expression related *solely* to the economic interests of the speaker and its audience' or 'speech proposing a commercial transaction.'" *United*

*States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1143 (D.C. Cir. 2009) (emphasis added). The Complaint's allegations fail to meet either standard. Because the CTT Publications are not "commercial" and/or "advertising or promotion(s)," dismissal is required.

### a.    The CTT Publications Are Not Advertisements

Courts are guided by the "commonsense distinction between speech proposing a commercial transaction … and other varieties of speech." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 64 (1983). Although YMTC makes conclusory allegations about a supposed "deceptive marketing scheme," Compl. ¶ 5, containing "commercial messaging," *id.* ¶ 9, for a "commercial purpose," *Id.* ¶ 41, even a cursory review of the CTT Publications—both of which are attached to the Complaint—reveals that neither are commercial speech by any definition. In *Farah,* the court looked closely at a post on the *Esquire*.com website's "Politics Blog" before finding that it could not "plausibly be viewed as commercial speech" under the Lanham Act. 736 F. 3d at 539-40. Similarly, in *Peak Health Center,* the court examined the publication at issue before determining that the "article does not appear to be an advertisement or promotion. It is presented in a news format and purports to be an 'investigative report.'" *Peak Health Center v. Dorfman,* 2019 WL 5893188, *2, *7 (N.D. Cal. Nov. 12, 2019) (dismissing Lanham Act claims). Determination of whether speech is commercial is a question of law. *See, e.g., Farah,* 736 F.3d at 541. Therefore, this Court should look at the text of the CTT Report and CTT Blog Post themselves, which will show that YMTC has not plausibly alleged that either Publication constitutes commercial speech.

*First,* it is obvious that the CTT Blog Post does not "propose a commercial transaction." *Philip Morris,* 566 F.3d at 1143. Largely focused on the Chinese government's actions within the flash memory industry (including through YMTC), the CTT Blog Post summarizes findings from

third-party sources—including a December 2020 report that identified YMTC's ties to the Chinese Military (the "Mulvenon Report")—before ultimately suggesting that the then-outgoing "Trump administration still has time to implement controls to stop the flow of [semiconductor manufacturing equipment] to China," and noting that "President-elect Biden's advisors … have signaled the importance of maintaining a tough stance against China's tech ambitions." Compl. Ex. 3. The Blog Post is thus plainly political advocacy critiquing the Chinese government's relationship with YMTC and does *not* promote any product or propose a commercial transaction.

***Second,*** the CTT Report addresses "American policymakers" and cites the Mulvenon Report and other government publications (such as the 2021 White House Report) to advance a policy discussion about how a potential partnership with YMTC "underscores failures in the United States to incentivize domestic chip production, which has become a focus of the Biden Administration." Compl. Ex. 4 at 3, 16. The focus of the CTT Report, evident from its secondary title, is analysis of the ways in which "Chinese military chip maker YMTC threatens American national security," *Id.* at 1. Most importantly, the CTT Report does *not* advertise any products.

YMTC's attempts to characterize the CTT Report as promotions for Micron are unavailing. For example, YMTC's argument that the CTT Report "urges Apple to "source its chips from existing suppliers like Micron" or "source memory chips from non-Chinese chipmakers like Micron," Compl. ¶ 58, is at best a disingenuous selective quotation. Not only are these sentences plucked from within several pages of policy-focused analysis about the economic and national security risks posed by the Chinese government's relationship with YMTC, they also do not promote Micron as the sole alternative to YMTC's products as YMTC suggests. Instead, when viewed in context, the full quotations state that Apple "can source its chips from existing suppliers like Micron, Kioxia, Samsung, SK Hynix, Western Digital, and Intel" and can "source memory

chips from non-Chinese chipmakers like Micron, Kioxia, Samsung, SK Hynix, Western Digital, and Intel." Compl. Ex. 4 at 2, 12. These quotations thus cannot plausibly be determined to be promotional statements selling Micron's products when in actuality they urge Apple to source its chips from several other sources, including other competitors. Similarly, the CTT Report's reference to "Idaho-based Micron" is part of its discussion of "competition and price volatility" in chip market more generally, which has driven "other U.S. players out of the industry," rather than any type of stealth advertisement for Micron. *Id.* at 6. These references to Micron are not sufficient to support a finding that the CTT Report is an advertisement or promotion under the Lanham Act. *See, e.g., Bolger,* 463 U.S. at 62 (the fact that the "informational pamphlets" at issue "reference … a specific product does not by itself render the pamphlets commercial speech").

***Third,*** the China Tech Threat website states that its purpose is to "study the problems of technology produced by the People's Republic of China and suggest policy solutions to protect the security, privacy, and prosperity of all Americans." "About China Tech Threat," Compl. Ex. 3, at 3. Each of the CTT Publications was written in furtherance of *that* purpose, not to "propose a commercial transaction" in any manner. This is self-evident from the language in the CTT Publications themselves, which clearly address a political audience and ask for political action. *See, e.g.*, CTT Blog Post, Compl. Ex. 3, at 1 ("The Trump administration still has time to implement controls to stop the flow of SME…"); CTT Report, Compl. Ex. 4, at 16 (addressing "American policymakers" and suggesting that the "U.S. can promote … proactive policy…").

#### b. YMTC's Characterization of the Challenged Statements as "Commercial" Fails

YMTC disingenuously divides the CTT Publications into two "tracks": (1) "petitions to the government for action against YMTC" (which YMTC states "are not challenged here," Compl.

¶¶ 50, 56), and (2) a "deceptive commercial marketing scheme." *Id.* ¶ 50. Presumably, YMTC's first "track" of "advocacy directed at government officials," *Id.* ¶ 50, is a reference to the arguments made in the Micron Action. But YMTC challenges the same five specific statements in the same CTT Publications both here and in the Micron Action. It is implausible that the same five statements from the same two publications somehow form two different "schemes." In any case, two articles from a single website cannot plausibly amount to a "sham marketing scheme" or "coordinated disinformation campaign." Compl. ¶ 4.

YMTC's nonsensical attempt to manufacture commercial speech by singling out specific phrases or sentences is similarly unavailing. For example, the Complaint claims that "some of the[] statements" contained in the CTT Report "feinted as government petitions" while others were "commercial statements" that "were covert commercial advertisements designed to promote Micron at YMTC's expense and call for YMTC's current and prospective customers to stop transacting with YMTC." Compl. ¶ 56. But, tellingly, the five challenged statements at issue here are the *same* challenged statements at issue in the Micron Action, which YMTC apparently is now saying were "feinted as government petitions." *Id.*

Even assuming, *arguendo*, that *some aspect* of the challenged statements could be construed as proposing a commercial transaction, the inclusion of one or two sentences that might qualify as "commercial" in a different context does not automatically convert otherwise non-commercial speech to commercial speech. *See Neurotron*, 189 F. Supp. 2d at 276 ("While Plaintiff is correct that the article is not removed from commercial speech restrictions simply because it is educational, it does not follow that the article can not [sic] be protected speech if the content is something other than *purely* educational"); *Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781, 795-96 (1988) (Where the main purpose of the work is non-commercial, and the commercial and non-

commercial "component parts of a single speech are inextricably intertwined, we cannot parcel out the speech, applying one test to one phrase and another test to another phrase ... Therefore, we apply our test for fully-protected expression.").

This is especially true where, as here, the challenged statements are incidental to the primary purpose of the overall publication. *See, e.g.*, *Oxycal Lab'ys, Inc. v. Jeffers*, 909 F. Supp. 719, 724-25 (S.D. Cal. 1995) (concluding that it was "too much of a stretch" to call a book "commercial speech" just because it contained suggestions of "products to use and buy" and an appendix that described where to buy those products, when it referenced plaintiff's product only three times in 500 pages); *The Monotype Corp. v. Simon & Schuster Inc.,* 2000 WL 1852907, at *7 (N.D. Ill. Sept. 8, 2000) (No commercial speech where two challenged statements were "buried within the text" of a book: "[T]he court does not believe that two lines of commercial text in a 270-page book can support a conclusion that the Guide is commercial in nature.").

Here, the Complaint cherry-picks one sentence from one blog post—out of hundreds of blog posts on the China Tech Threat website relating to China's threats to the U.S. in the technology space—and four statements from the sixteen-page, single-spaced CTT Report. The CTT Publications were each clearly non-commercial speech written in furtherance of the public policy focus of the China Tech Threat website and to raise awareness about YMTC's relationship with the Chinese government. The challenged statements—each of which is nonactionable for the additional reasons articulated below—are plainly non-commercial and YMTC does not and cannot convert their character from non-commercial to commercial.

### c.    YMTC's "Economic Interests" Arguments are Unavailing

YMTC has also failed to plausibly allege that the CTT Publications are "expression related *solely* to the economic interests of the speaker and its audience.'" *Philip Morris USA*, 566 F.3d at

1143. It is obvious that Defendants and YMTC are not competitors, and YMTC does not allege otherwise. Therefore, YMTC does not (and cannot) plausibly allege that the CTT Publications were written "for the purpose of influencing consumers to buy [Defendants'] goods or services." *See, e.g.*, *Gmurzynska v. Hutton*, 355 F.3d 206, 210 (2d Cir. 2004) ("Commercial advertising or promotion" under the Lanham Act is "(1) commercial speech, (2) made for the purpose of influencing consumers to buy defendant's goods or services…") (citation modified); *Strauss v. Angie's List, Inc.*, 951 F.3d 1263, 1268-69 (10th Cir. 2020) (same); *Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017) (same). YMTC does not plausibly allege that the China Tech Threat website was somehow an advertisement or promotion for Defendants' services.

Recognizing the lack of commercial competition with, or economic benefit to, Defendants from the CTT Publications, YMTC instead tries to rely on a purported benefit to Micron. *See, e.g.,* Compl. ¶ 9. But—because the CTT Publications plainly address political and public policy issues directed to a political audience—that allegation does not support a Lanham Act claim. *Peak Health Center,* 2019 WL 5893188 (N.D. Cal. Nov. 12, 2019), is instructive on this point. There, the court found that an "investigative report" that focused entirely on potential fraud in the development of the plaintiff's CBD products was not "commercial speech" despite being published on a website owned by the plaintiff's competitors. Finding that allegations of a "competitive relationship between [Defendant's employer] and [Plaintiff] and the economic incentives that may arise from that relationship" were insufficient to support "characterization of the article as a 'commercial advertising or promotion' without more," the court looked closely at the actual report before determining that the "article does not appear to be an advertisement or promotion. It is presented in a news format and purports to be an 'investigative report." *Id.* at *2, 7. Notably, while the report

40

critiqued the plaintiff's products, "it contains nothing that can plausibly be characterized as advertising or promoting [the publisher-competitor's] own products (or anyone else's)." *Id.* at *7.

As in *Peak Health Center*, both CTT Publications are policy-focused pieces devoid of any proposals of a "commercial transaction." The CTT Report is very clearly a long-form investigative report—formatted and presented like an academic journal article—and the CTT Blog Post summarizes and refers to various newsworthy topics. *See* Compl. Exs. 3 and 4. Neither is an advertisement or promotion by any "common-sense" description, *Bolger,* 463 U.S. at 64. That each source focuses on YMTC and mentions YMTC's products is unimportant; the CTT Publications do not promote products owned by Defendants. And, as discussed *supra* at 35-37, the stray references to Micron in the CTT Report are insufficient to convert the CTT Report into a promotion for Micron's products. *See, e.g., Gordon & Breach Sci. Publishers S.A.*, 859 F. Supp. 1521, 1541 (S.D.N.Y. 1994) (The fact that defendants "stood to benefit" from publishing a scholar's articles in their academic journal or "even that they *intended* to benefit" was "insufficient by itself to turn the articles into commercial speech"); *Exeltis USA Inc. v. First Databank, Inc.*, 520 F. Supp. 3d 1225, 1235 (N.D. Cal. 2021) (defendant's pharmaceutical database was not a "commercial advertising or promotion" because—even if it was funded or directed by plaintiff pharmaceutical manufacturer's competitors—it was "undisputed that the products listed in the database are not Defendant's own"); *Bilinski v. Keith Haring Found., Inc.*, 96 F. Supp. 3d 35, 47 (S.D.N.Y.) (rejecting allegation that a press release was commercial because it was published "with the intent of preventing sales of the plaintiffs' works and of increasing the value of Defendants' artworks at [plaintiffs'] expense" as it was insufficient to allege a "sufficient connection" to a "proposed commercial transaction") (citation modified), *aff'd in part*, 632 F. App'x 637 (2d Cir. 2015).

Furthermore, the China Tech Threat website is available to consumers free of charge and offered without any marketing, advertisements, or commercial transactions. But even if the website were different, that would not change the CTT Publications' non-commercial nature. Such actions and any related revenue are insufficient for purposes of alleging the required element under the Lanham Act of a *competitive commercial* purpose. A contrary rule would lead to the impermissible conclusion that "*[a]ny publication* would be deemed an advertisement if the defendant had an interest in encouraging others to purchase it." *Alfasigma USA, Inc. v. First Databank, Inc.*, 525 F. Supp. 3d 1088, 1101 (N.D. Cal. 2021) (emphasis added); *see also Edward Lewis Tobinick, MD*, 848 F.3d at 952 ("Even if [defendant] receives some profit for his quasi-journalistic endeavors … the articles themselves, which never propose a commercial transaction, are not commercial speech."); *Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 765 (9th Cir. 2024) (A "simple profit motive to sell copies of a publication or to obtain an incidental economic benefit, without more, does not make something commercial speech. Otherwise, virtually any newspaper, magazine, or book for sale could be considered a commercial publication").

Simply put, the CTT Publications do not meet any of the factors required to constitute "commercial advertising or promotion" by Defendants and are not commercial speech. Thus, YMTC's Lanham Act claim fails as a matter of law. *See Nichols v. Club for Growth Action,* 235 F. Supp. 3d 289, 298 (D.D.C. 2017) (dismissing Lanham Act claims where challenged publication was "political speech expressing a point of view, not commercial speech attempting to promote a good or service."); *Farah,* 863 F. Supp. 2d at 41 (dismissing Lanham Act claims stemming from a blog post where "the expression cannot be characterized as commercial speech").

## 2.    The Challenged Statements Are Not Actionable Under the Lanham Act

Finally, YMTC's false-advertising claim fails because none of the challenged statements are actionable under the Lanham Act. "In a false-advertising claim, only statements of fact are actionable. … Statements of opinion will not support a false-advertising claim." *FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*, 97 F.4th 444, 453 (6th Cir. 2024). A "complaint may not baldly assert that a challenged statement is false or misleading. It must explain *why* and *how* it is so." *Id.* at 454 (emphasis in original). And "[courts] do not review the challenged statement in isolation. Courts should consider the statement in its entirety and in its 'full context.'" *Id.*

In order to give rise to liability under the Lanham Act, a challenged statement must make a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Fedex*, 97 F. 4th at 453. The four challenged statements from the CTT Report—each of which are cherry-picked from over sixteen single-spaced pages of text and selectively quoted—are so clearly hypothetical and/or forward-looking statements that they are non-actionable on that basis alone:

- "YMTC chips equipped with spyware and installed on Apple devices *could* funnel collected data back to Beijing." Compl. ¶ 68(b) (emphasis added);

- "YMTC chips … *present the possibility* that malicious technology … from the Chinese military *could* be introduced to Apple end-users." Compl. ¶ 68(c) (emphasis added);

- "YMTC chips *could* be … intentionally compromised with rogue features … These built-in and concealed vulnerabilities would not be detected during manufacturing. They *could* be exploited … to disrupt performance or exfiltrate data." Compl. ¶ 68(d) (emphasis added); and

- "Electronics *with embedded chips* are enabled with a 'kill switch' … Such features,

under Chinese military production, *could* be enabled … to shut down remotely by an

unauthorized Chinese government actor." Compl. ¶ 68(e) (emphasis added).

None of the four statements above are actionable under the Lanham Act. While each warns

of hypothetical and/or potential vulnerabilities in YMTC's products, critically, *none* of the

statements would reasonably be interpreted by a consumer of YMTC's products to be objective

facts. Nor does YMTC plausibly allege *why* or *how* the statements are false or misleading. These

four statements are therefore insufficient to form the basis of a Lanham Act false advertising claim.

*Fedex*, 97 F. 4th at 453.

The fifth challenged statement, that "YMTC is *associated with* criminal activity, including

a Social Security spoofing scam, identity theft, and cyber extortion," Compl. ¶ 68(a) (emphasis

added), which appears in the CTT Blog Post, is similarly non-actionable. The phrase "associated

with" does not have a "precise meaning." *Wexler v. Dorsey & Whitney, LLP*, 2019 WL 5485265,

at *6 (E.D.N.Y. Oct. 25, 2019), *aff'd*, 815 F. App'x 618 (2d Cir. 2020). It could be interpreted in a

number of different ways, including that the activities were being performed by associates of

YMTC or entities and people that have some associational relationship with YMTC (*e.g.*, the

Chinese government or Chinese military, etc.), not YMTC itself. The statement cannot reasonably

be interpreted as a factual statement that YMTC is directly engaged in criminal activities or is a

criminal. *Id.* at 7 (rejecting argument that "major spousal scheme" necessarily meant "dishonest

plan" where it was "not self-evident that the word 'scheme' … implies deception or impropriety").

Furthermore, viewed in the context of the sixteen-page investigative CTT Report or the

CTT Blog Post, it is implausible that a reader would isolate these five statements and find them to

be anything but the opinions of the authors. *See Wexler,* 2019 WL 5485265, at *8 (finding that "no

one could reasonably read the article and [the allegedly false statement] as anything other than the author's opinion" where the statement appeared in a "blog piece on a private firm's website").

## IV.    <u>REQUEST FOR JUDICIAL NOTICE</u>

Defendants respectfully request that the Court take judicial notice of the following:

1. The White House, "Building Resilient Supply Chains, Revitalizing American Manufacturing, and Fostering Broad-Based Growth," June 2021. *See* **Ex. C**.

2. Department of Commerce, Additions and Revisions to the Entity List and Conforming Removal From the Unverified List, 87 Fed. Reg. 77,505 (Dec. 19, 2022). *See* **Ex. D**.

3. Department of Defense, Entities Identified as Chinese Military Companies Operating in the United States (Jan. 31, 202). *See* **Ex. E**.

The Court may take judicial notice of these documents as evidence of what information was available to the public around the time of Defendants' alleged conduct and Plaintiffs' alleged harm. *See Kaspersky Lab, Inc. v. U.S. Dep't of Homeland Sec.*, 909 F.3d 446, 464 (D.C. Cir. 2018) (taking judicial notice of "claims about the [plaintiff] company memorialized in various congressional hearings and legislative materials … not for [their] truth, but for [their] existence").

## V.    <u>CONCLUSION</u>

For the foregoing reasons, YMTC's Complaint should be dismissed without leave to amend under Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure, as well as on the basis of *forum non conveniens*.

January 15, 2026                    Respectfully submitted,


                                    */s/ Michael L. Resch*
                                    Michael L. Resch (D.C. Bar #481402)
                                    *mresch@kslaw.com*
                                    KING & SPALDING LLP
                                    50 California Street, Suite 3300
                                    San Francisco, California 94111
                                    Telephone: (415) 318-1200
                                    Facsimile: (415) 318-1300

                                    Dale Giali (D.C. Bar #436514)
                                    *dgiali@kslaw.com*
                                    Lena T. Colin (*pro hac vice forthcoming*)
                                    *lcolin@kslaw.com*
                                    KING & SPALDING LLP
                                    633 West Fifth Street, Suite 1600
                                    Los Angeles, California 90071
                                    Telephone: (213) 443-4355
                                    Facsimile: (213) 443-4310

                                    Attorneys for Defendants
                                    STRAND CONSULT AND ROSYLN LAYTON