**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| YANGTZE MEMORY TECHNOLOGIES, INC. and YANGTZE MEMORY TECHNOLOGIES CO., LTD., <br><br>  Plaintiffs, <br><br> v. <br><br> STRAND CONSULT ApS (d/b/a CHINA TECH THREAT), <br><br> and <br><br> ROSLYN LAYTON, <br><br>  Defendants. | Case No. 1:25-cv-3554 <br><br> Hon. Carl J. Nichols |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS**

Plaintiffs Yangtze Memory Technologies, Inc. and Yangtze Memory Technologies Co., Ltd. (together, "YMTC") respectfully oppose Defendants Strand Consult ApS' ("Strand") and Roslyn Layton's ("Layton") (together, "Defendants") Rule 11 Motion for Sanctions (Dkt. 23) and submits the accompanying Memorandum of Points and Authorities. For the reasons therein, the Court should deny Defendants' Motion. A Proposed Order is attached.

YMTC requests an oral hearing on the Motion, pursuant to Local Rule 7(f).

1

Dated: March 16, 2026

QUINN EMANUEL URQUHART
   & SULLIVAN, LLP

By _____

Robert M. Schwartz (D.C. Bar No. 412049)
Aaron Perahia (*pro hac vice*)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000
robertschwartz@quinnemanuel.com
aaronperahia@quinnemanuel.com

David Eiseman (*pro hac vice*)
50 California Street, 22nd Floor
San Francisco, CA 94111-4788
(415) 875-6600
davideiseman@quinnemanuel.com

Samuel P. Nitze (*pro hac vice)*
295 Fifth Avenue, 9th Floor
New York, New York 10016
(212) 849-7000
samuelnitze@quinnemanuel.com

David Needham (D.C. Bar No. 1017372)
Jaime Luis Lopez (*pro hac vice*)
555 13th Street NW, Suite 600
Washington, DC 20004
(202) 538-8000
davidneedham@quinnemanuel.com
jaimelopez@quinnemanuel.com

Evan Pearson (*pro hac vice*)
300 West Sixth Street, Suite 2010
Austin, Texas 78701-3901
(737) 667-6100
evanpearson@quinnemanuel.com

*Attorneys for Plaintiffs*

2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

YANGTZE MEMORY TECHNOLOGIES,
INC. and YANGTZE MEMORY
TECHNOLOGIES CO., LTD.,

        Plaintiffs,

v.

STRAND CONSULT ApS (d/b/a CHINA
TECH THREAT),

and

ROSLYN LAYTON,

        Defendants.

Case No. 1:25-cv-3554

Hon. Carl J. Nichols

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................................1

FACTUAL BACKGROUND ...................................................................................................3

     A.     Micron Funds a Covert Campaign That Publishes Lies About YMTC's
           Products, Costing YMTC Millions of Dollars. ...........................................................3

     B.     YMTC Sues In California; Defendants Twice Threaten Sanctions And
           Waive Personal Jurisdiction. ....................................................................................4

     C.     The California Court Grants Reconsideration, Denies Transfer On
           Minimum Contacts Alone, And Dismisses On *Forum Non Conveniens*. ...............6

     D.     YMTC Later Identified Defendants' Forum-Selection Clause After
           Defendants Told Judge Wise That D.C. Could Not Hear the Case. ........................7

     E.     YMTC Refiles Where Defendants' Own Terms Require; Defendants
           Threaten Sanctions a Third Time ............................................................................9

ARGUMENT .........................................................................................................................10

I.     YMTC'S JURISDICTIONAL THEORIES SATISFY RULE 11(B)(2) BECAUSE
     THEY REST ON LEGAL STANDARDS JUDGE WISE NEVER REACHED .............10

     A.     Defendants Cannot Satisfy Key Elements of Issue Preclusion. ...........................11

          1.     YMTC's Jurisdictional Grounds Rest on Different Legal Standards
                 That Were Never Litigated in California. ...................................................11

          2.     The Jurisdictional Finding Was Not Necessary or Essential to the
                 Judgment. .................................................................................................16

     B.     Judicial Estoppel Fails Because No *Moses* Factor Is Met. ...............................17

          1.     YMTC's Positions Are Not "Clearly Inconsistent." .................................17

          2.     YMTC Did Not "Succeed in Persuading" Any Court. ..............................18

          3.     Defendants, Not YMTC, Received the Unfair Advantage Because
                 They Failed to Disclose Their Forum Selection Clause and Now
                 Seek to Prevent YMTC from Relying on It. ..............................................20

     C.     YMTC's Counsel Satisfied Rule 11's Reasonable-Inquiry Standard. ..................21

II.     YMTC DID NOT FILE FOR AN IMPROPER PURPOSE ...........................................24

III.    DEFENDANTS' REQUEST FOR INHERENT-AUTHORITY SANCTIONS
FAILS .................................................................................................................26

IV.    DEFENDANTS ARE NOT ENTITLED TO THEIR REQUESTED RELIEF.................27

    A.    On Its Face, Rule 11 Bars Monetary Sanctions Against YMTC ...........................27

    B.    A Filing Injunction Is a Last Resort That This Case Does Not Justify..................29

CONCLUSION..............................................................................................................30

# TABLE OF AUTHORITIES

## Cases

*1443 Chapin Street, LP v. PNC Bank, National Association*,
    718 F. Supp. 2d 78 (D.D.C. 2010) ....................................................................21, 24

*Ali v. Tolbert*,
    636 F.3d 622 (D.C. Cir. 2011) .........................................................................26, 29

*AMA Multimedia, LLC v. Madon*,
    2020 WL 5096476 (D. Nev. Aug. 28, 2020) ...........................................................14

*Angelex Ltd. v. United States*,
    123 F. Supp. 3d 66 (D.D.C. 2015) ..........................................................................11

*\*Beach TV Properties, Inc. v. Solomon*,
    254 F. Supp. 3d 118 (D.D.C. 2017) ...........................................................18, 19, 21

*BEG Investments, LLC v. Alberti*,
    85 F. Supp. 3d 13 (D.D.C. 2015) ............................................................................27

*Bobby v. Bies*,
    556 U.S. 825 (2009) ..............................................................................................16, 17

*Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*,
    498 U.S. 533 (1991) ...............................................................................................28

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) ..............................................................................................26, 29

*Cherichel v. Ergo Solutions, LLC*,
    85 F. Supp. 3d 245 (D.D.C. 2015) .........................................................................21

*Christian v. Mattel, Inc.*,
    286 F.3d 1118 (9th Cir. 2002) ...............................................................................23

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990) ...........................................................................................10, 22

*Danik, Inc. v. Hartmarx Corp.*,
    120 F.R.D. 439 (D.D.C. 1988) ...............................................................................25

*Doe v. Office of Personnel Management*,
    2025 WL 3723770 (D.D.C. Dec. 22, 2025) ...........................................................26

*Dozier v. Ford Motor Co.*,
    702 F.2d 1189 (D.C. Cir. 1983) (Mot. 13) .............................................................15

*Eaton v. Weaver Manufacturing Co.*,
  582 F.2d 1250 (10th Cir. 1978) ................................................................................14, 15

*In re Green*,
  669 F.2d 779 (D.C. Cir. 1981) ........................................................................................29

*Hall v. Clinton*,
  285 F.3d 74 (D.C. Cir. 2002) ..........................................................................................14

*Hedgeye Risk Management, LLC v. Heldman*,
  412 F. Supp. 3d 15 (D.D.C. 2019) ..............................................................................21, 22

*Hickey v. Scott*,
  738 F. Supp. 2d 55 (D.D.C. 2010) ..................................................................................27

*Hooli v. Mitcham*,
  2024 WL 4836419 (D.D.C. 2024) ....................................................................................29

*Insurance Corporation of Ireland v. Compagnie des Bauxites de Guinee*,
  456 U.S. 694 (1982).........................................................................................................22

*Jackson v. Office of the Mayor of D.C.*,
  911 F.3d 1167 (D.C. Cir. 2018) ......................................................................................12

*Jordan v. U.S. Department of Labor*,
  273 F. Supp. 3d 214 (D.D.C. 2017) ................................................................................25

*Jones v. Kirchner*,
  835 F.3d 74 (D.C. Cir. 2016) ......................................................................................16, 17

*\*Klayman v. Obama*,
  104 F.4th 300 (D.C. Cir. 2024)........................................................................................29

*\*Konstantinidis v. Chen*,
  626 F.2d 933 (D.C. Cir. 1980) ....................................................................................18, 19

*Kremer v. Chem. Constr. Corp.*,
  456 U.S. 461 (1982)..........................................................................................................14

*Logan v. SEIU Local*,
  2016 WL 5807932 (N.D. Ill. Oct. 5, 2016)......................................................................24

*Lopes v. JetSetDC, LLC*,
  994 F. Supp. 2d 126 (D.D.C. 2014) ................................................................................22

*M3 USA Corp. v. Qamoum*,
  2021 WL 2324753 (D.D.C. June 7, 2021)........................................................................22

*Magnus Electronics, Inc. v. La Republica Argentina*,
830 F.2d 1396 (7th Cir. 1987) ...................................................................................14

*Maverick Entertainment Group, Inc. v. Does 1-2, 115*,
276 F.R.D. 389 (D.D.C. 2011) ...................................................................................24

*McLaughlin v. Bradlee*,
602 F. Supp. 1412 (D.D.C. 1985) ........................................................................22, 23

*Miller v. Saxbe*,
396 F. Supp. 1260 (D.D.C. 1975) ..............................................................................13

*Moses v. Howard University Hospital*,
606 F.3d 789 (D.C. Cir. 2010) .............................................................17, 18, 19, 20

*National Association of Home Builders v. EPA*,
786 F.3d 34 (D.C. Cir. 2015) .....................................................................................15

*National Parks Conservation Association v. Semonite*,
422 F. Supp. 3d 92 (D.D.C. 2019) .............................................................................19

*North v. Walsh*,
881 F.2d 1088 (D.C. Cir. 1989) .....................................................................11, 12, 14

*Pace v. Cirrus Design Corp.*,
2025 WL 819006 (S.D. Miss. Mar. 13, 2025) ..........................................................23

*Paulo v. Holder*,
669 F.3d 911 (9th Cir. 2011) .....................................................................................14

*Petruss Media Grp., LLC v. Advantage Sales & Mktg., LLC*,
2023 WL 5507306 (D.D.C. Aug. 25, 2023) ..............................................................10

*Pinson v. U.S. Dep't of Justice*,
273 F. Supp. 3d 1 (D.D.C. 2017) ...............................................................................10

*Sabre International Sec. v. Torres Advanced Enterprise Solutions, LLC*,
60 F. Supp. 3d 21 (D.D.C. 2014) ...........................................12, 17, 18, 21, 22, 28

*Simmons v. Small Business Administration*,
475 F.3d 1372 (Fed. Cir. 2007) .................................................................................14

*Sinochem International Co. v. Malaysia International Shipping Corp.*,
549 U.S. 422 (2007) ....................................................................................................17

*Son Ly v. Solin, Inc.*,
910 F. Supp. 2d 22 (D.D.C. 2012) .............................................................................23

v

*Spence v. TRW, Inc.*,
    92 F.3d 380 (6th Cir. 1996) ...................................................................................14

*\*Ukiah Adventist Hospital v. F.T.C.*,
    981 F.2d 543 (D.C. Cir. 1992) ..............................................................................16

*United States ex rel. Odish*,
    843 F. App'x 748 (6th Cir. 2021) ....................................................................29, 30

*United States v. Pope*,
    2025 WL 2105571 (D.D.C. July 28, 2025)............................................................26

*United States v. Wallace*,
    964 F.2d 1214 (D.C. Cir. 1992) .............................................................................26

*Urban v. United Nations*,
    768 F.2d 1497 (D.C. Cir. 1985)..............................................................................29

*Valdez v. Kreso, Inc.*,
    144 F. Supp. 2d 663 (N.D. Tex. 2001) ............................................................23, 24

*Weisman v. Rivlin*,
    598 F. Supp. 724 (D.D.C. 1984) ............................................................................23

*Westmoreland v. CBS, Inc.*,
    770 F.2d 1168, 1174–75 (D.C. Cir. 1985)..............................................................28

*Williams v. Verizon Washington, D.C. Inc.*,
    322 F.R.D. 145 (D.D.C. 2017)................................................................................28

*Yamaha Corporation of America v. United States*,
    961 F.2d 245 (D.C. Cir. 1992).....................................................................11, 13, 14

*Yangtze Memory Techs., Inc. v. Micron Tech., Inc.*,
    No. 1:25-cv-1795-CJN (D.D.C. filed June 7, 2025)...........................................6, 30

*Yangtze Memory Techs. Co., Ltd. et al. v. Strand Consult et al.*,
    No. 5:24-cv-3454-NW (N.D. Cal. filed June 7, 2024) .................................... *passim*

## Statutes

28 U.S.C. § 1404................................................................................................................6

Cal. Civ. Proc. Code § 425.16 .........................................................................................5

D.C. Code §§ 13-423 ...............................................................................................9, 10, 16

## **Other Authorities**

Fed. R. Civ. P. 11 ............................................................................................... *passim*

Fed. R. Civ. P. 12 ......................................................................................................5, 13

Fed. R. Civ. P. 4 ................................................................................................. *passim*

## INDEX OF EXHIBITS

| Exhibit | Description |
|:---:|:---|
| 1 | Defendants' Opposition to Plaintiffs' Motion to Transfer Action to the U.S. District Court for the District of Columbia, filed at Dkt. 93 in *Yangtze Memory Techs. Co., et al. v. Strand Consult, et al.*, No. 5:24-cv-3454 (N.D. Cal.) |

**<u>INTRODUCTION</u>**

The China Tech Threat Terms of Use—which Defendants drafted, published on their website, and imposed on every user—require that any lawsuit, like this one, arising from the content Defendants published on their website, "must be instituted exclusively in the federal or state courts located in the District of Columbia and in no other jurisdiction."  Compl. Ex. 5 at 6, § 13.  YMTC complied with those Terms.  Defendants say that doing so was sanctionable.  They are wrong.

Defendants' theory is that Judge Wise's September 2025 Order precludes YMTC from asserting personal jurisdiction here on any basis.  But Judge Wise's Order says no such thing.  It: (1) granted YMTC's motion for reconsideration (finding that Strand and Layton had waived any objection to personal jurisdiction), (2) denied YMTC's motion to transfer under § 1404(a), and (3) granted Defendants' motion to dismiss for *forum non conveniens*.  Mot. Ex. B. at 13.

The personal jurisdiction question arose only as a threshold element of the transfer motion—whether "this case could have been brought in the District of Columbia."  Mot. Ex. B at 5.  On that question, Judge Wise analyzed only whether Defendants had "minimum contacts" with the United States under Rule 4(k)(2) and the Due Process Clause.  *Id.*  That was the sole ground that the parties had briefed.  Mot. Ex. B at 4-8.  When Judge Wise concluded that they did not, she confined her ruling to that ground.  Judge Wise explained that, for purposes of deciding YMTC's transfer motion, there were insufficient minimum contacts to find personal jurisdiction in this District "without more" and "absent waiver or other particular circumstances."  Mot. Ex. B at 8.  The *forum non conveniens* dismissal—not the transfer denial—produced the final judgment.  Mot. Ex. B at 13; *id.* Ex. C at 2.

After that order, YMTC's counsel confirmed that D.C. courts treat contractual consent jurisdiction and minimum contacts as independent bases for personal jurisdiction.  Counsel then

1

identified a specific provision in Defendants' own Terms of Use—a forum selection clause designating this District as the exclusive forum for legal action—that Judge Wise had never been asked to consider. Those qualifying words are consistent with the jurisdictional ground YMTC now asserts. YMTC's Complaint rests primarily on contractual consent jurisdiction, namely, Defendants' own forum selection clause, in Defendants' own Terms of Use, designating this District as the exclusive forum. Compl. ¶ 25. That clause is the kind of "more" that Judge Wise had in mind. Contractual consent jurisdiction and minimum-contacts jurisdiction are not different arguments under the same legal standard; they are different legal issues, governed by different legal standards, and analyzed as separate issues by courts in this Circuit. A later filing that rests on a legal issue that the first court left open is not sanctionable.

Defendants' prior conduct undercuts their position now. For more than a year—through extensive jurisdictional briefing in the California Action—Defendants never disclosed their forum selection clause. Not in their motion to dismiss. Not in their opposition to reconsideration. Not in their *forum non conveniens* motion. Not in their opposition to YMTC's transfer motion. In fact, in that transfer opposition, Defendants told Judge Wise that they would not have been subject to jurisdiction for their statements about YMTC ***even in D.C.***—even as their own website said the opposite. A party that stayed silent about its own forum selection clause through a full round of jurisdictional litigation—and then seeks sanctions when the opposing party relies on that clause—is entitled to no relief under Rule 11.

Defendants' motion levels other serious accusations without any support: that YMTC and its counsel "knowingly ignor[ed] the law," filed this action to "harass" Defendants and "driv[e] up their litigation expenses," and served as agents of a foreign government's "lawfare" campaign. Mot. 20-21, 24. None of these charges is supported by any evidence. No email. No internal document. No deposition testimony. No declaration. Nothing suggesting bad faith or

2

knowledge that the Complaint lacked a legal basis. Defendants built their business on unsubstantiated accusations about YMTC. Their sanctions motion follows the same playbook. The Court should deny it.

## FACTUAL BACKGROUND

### A.      Micron Funds a Covert Campaign That Publishes Lies About YMTC's Products, Costing YMTC Millions of Dollars.

YMTC is a leading developer and manufacturer of advanced 3D NAND flash memory. Compl. ¶ 20. Its wholly owned U.S. subsidiary, YMT Inc., manages YMTC's business relationships in the United States. *Id.* ¶ 21. YMTC competes against Micron Technology, Inc. in the global flash memory market. *Id.* ¶¶ 3-4, 20-21, 37-38. YMTC's advances in 3D NAND technology posed a direct challenge to Micron's market position. *Id.* ¶¶ 37-38.

Rather than compete on merit, Micron funded a website called China Tech Threat. Compl. ¶¶ 4, 39. Defendant Strand Consult owns and operates China Tech Threat. *Id*. Ex. 5 at 3. Defendant Roslyn Layton, Strand's Executive Vice President, co-founded China Tech Threat and served as the campaign's public face. *Id.* ¶ 23. Behind the scenes, DCI Group AZ, L.L.C., a Washington, D.C. public affairs firm with a history of disguising corporate messaging as grassroots advocacy, wrote China Tech Threat's content. *Id.* ¶¶ 4, 9-12, 42-49. Bloomberg reported that China Tech Threat was "a project of DCI Group" and that its advocacy "align[ed] with [Micron's] corporate interests." *Id.* ¶¶ 17, 39 & Ex. 1 at 2.

To drive business from YMTC to Micron, China Tech Threat published false statements about YMTC and its products. Compl. ¶¶ 11, 14, 50-55. It claimed that YMTC was "associated with criminal activity, including a Social Security spoofing scam, identity theft and cyber extortion"—without supporting evidence. *Id.* ¶ 51. It claimed that YMTC chips "equipped with spyware and installed on Apple devices could funnel collected data back to Beijing."

3

*Id.* ¶¶ 14, 52.  And it claimed that YMTC chips have a "kill switch" that could "shut down [devices] remotely by an unauthorized Chinese government actor."  *Id.* ¶ 52.  These claims are nonsense: Memory chips store bits and cannot execute code, transmit data, or communicate with external devices.  *Id.* ¶¶ 7, 14, 53.  For one claim, China Tech Threat cited only a work of fiction titled *Ghost Fleet: A Novel of the Next World War*.  *Id.* ¶ 52.  China Tech Threat urged Apple to "source memory chips from non-Chinese chipmakers like Micron."  *Id*. ¶ 58 & Ex. 4 at 14.

Defendants ran the campaign for Micron in secret.  DCI employees created content for China Tech Threat from 2020 to 2022, including press releases that falsely listed Layton as the author.  Compl. ¶¶ 42-43.  A NOTUS investigation confirmed that "DCI Group employees were included in the metadata of the documents embedded on the [China Tech Threat] website over the past several years."  *Id.* ¶ 43; Compl. Ex. 2 at 3.  After these revelations, Defendants scrubbed the metadata from China Tech Threat's website and replaced the original files with clean versions.  Compl. ¶ 48.  The false statements cost YMTC hundreds of millions of dollars in lost revenue.  *Id.* ¶ 62.  For example, after Defendants intensified their campaign in mid-2022, a major OEM customer suspended and then abandoned plans to use YMTC chips—a single lost opportunity worth hundreds of millions of dollars.  *Id.*

**B.**     **YMTC Sues In California; Defendants Twice Threaten Sanctions And Waive Personal Jurisdiction.**

In June 2024, YMTC sued Strand and Layton in the Northern District of California, asserting state-law claims for trade libel and unfair competition based on diversity jurisdiction.  *Yangtze Memory Techs. Co., Ltd. et al. v. Strand Consult et al.*, No. 5:24-cv-3454-NW (N.D. Cal. filed June 7, 2024) ("Cal. Action"), Dkt. 1 ¶¶ 18, 38-55.  Latham & Watkins LLP represented YMTC at the time.  *Id.*, Dkt. 1 at 1.  Quinn Emanuel substituted in as counsel in October 2024.  *Id.*, Dkt. 19, 23.  That same month, Defendants threatened a motion under

4

California's anti-SLAPP law, Cal. Civ. Proc. Code § 425.16—a statute that awards mandatory attorney's fees to a prevailing defendant.  Cal. Action, Dkt. 37 at 7.

The next month, before Defendants answered or responded, YMTC filed an amended complaint as of right.  Cal. Action, Dkt. 50.  The amended complaint added new facts from the NOTUS investigative report published after the original complaint, added DCI as a defendant, and replaced the state-law claims with a Lanham Act false advertising claim raising federal question jurisdiction.  *Id.* ¶¶ 24, 30, 42-48.  Because the amended claims fell outside the anti-SLAPP statute, the amendment mooted Defendants' threatened motion.

Defendants pivoted to a second sanctions threat, arguing that YMTC could not cure a subject-matter jurisdiction defect by amending as of right.  Cal. Action, Dkt. 66-2 at 5-6.  YMTC responded with binding authority showing that courts look to an amended complaint to determine jurisdiction.  *Id.* at 3-5.  Even so, Defendants replied that they would be "finalizing the Rule 11 motion" and expected to file it the following month.  *Id.* at 2.  They never filed it.  *Id.*

All three defendants also jointly moved to dismiss the amended complaint.  Cal. Action, Dkt. 65.  Only DCI challenged personal jurisdiction in that motion.  *Id.* at 2 (listing as an issue only "[w]hether this Court should dismiss the claims against DCI Group AZ, L.L.C. in the FAC under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction").  Strand and Layton joined the motion on other grounds but never challenged the assertion of personal jurisdiction against them, thus waiving it.  *See id.*; *see also* Mot. Ex. B at 4 (finding on reconsideration that Strand and Layton "waived personal jurisdiction by failing to raise the issue in their motion to dismiss").

Five months later, Judge Wise dismissed the amended complaint as to DCI for lack of personal jurisdiction without leave to amend.  Mot. Ex. A at 16.  The court then extended DCI's personal jurisdiction arguments to Strand and Layton *sua sponte* and dismissed the claims

5

against them with leave to amend—erroneously relying on the court's authority to raise **subject matter** jurisdiction on its own, a power that does not extend to personal jurisdiction. *Id.*

YMTC promptly moved for reconsideration, noting that Strand and Layton had waived the defense by not raising it in their motion. Cal. Action, Dkt. 83, 88. Meanwhile, after DCI's dismissal from the California action, YMTC filed a separate suit against DCI and Micron in this District. *See Yangtze Memory Techs., Inc., et al. v. Micron Tech., Inc., et al.*, No. 1:25-cv-1795-CJN (D.D.C. filed June 7, 2025). YMTC then moved to transfer the California action here under 28 U.S.C. § 1404(a) to consolidate with that related case. Cal. Action, Dkt. 91. Defendants responded with their own motion to dismiss for *forum non conveniens*. Cal. Action, Dkt. 92.

### C.      The California Court Grants Reconsideration, Denies Transfer On Minimum Contacts Alone, And Dismisses On *Forum Non Conveniens*.

Judge Wise resolved all three motions in one order. Mot. Ex. B. She granted YMTC's reconsideration motion and found that Strand and Layton had "waived personal jurisdiction by failing to raise the issue in their Motion to Dismiss." *Id.* at 4. They had thus "acceded to personal jurisdiction." *Id.* at 13.

The court denied YMTC's transfer motion. Mot. Ex. B at 8. The transfer briefing addressed only minimum contacts under Rule 4(k)(2)—the nationwide-contacts standard under which the parties had litigated the California case—and the court analyzed no other jurisdictional grounds. *Id.* at 5. Judge Wise found that Strand and Layton lacked sufficient minimum contacts but qualified her ruling: "The Court finds that this case could not have been brought in the District of Columbia, because, **without more**, the District of Columbia would not have personal jurisdiction over Defendants for this particular dispute (**absent waiver or other particular circumstances**)." *Id.* at 8 (emphasis added). The phrases "without more" and "absent waiver or other particular circumstances" confirm that the ruling reached only the minimum contacts

jurisdictional grounds before the court and left other grounds—including consent and waiver—open.  Defendants quote this sentence in their motion but cut it off where it stops serving their argument, omitting "absent waiver or other particular circumstances."  Mot. 12.

Judge Wise granted Defendants' forum *non conveniens* motion, finding that the private and public interest factors favored litigation in another forum.  Mot. Ex. B at 13.  The court conditioned dismissal on Defendants "accept[ing] service in Denmark and waiv[ing] any statute of limitations defenses."  *Id.*  Defendants consented.  Cal. Action, Dkt. 101.

Defendants then submitted a proposed judgment stating that the dismissal was "without prejudice to refiling in Denmark."  Cal. Action, Dkt. 102-1 (emphasis added).  YMTC objected, arguing that a forum *non conveniens* dismissal "does not mandate where [the] adjudication must occur."  Cal. Action, Dkt. 104 at 2.  Judge Wise rejected Defendants' proposed language and entered a clean judgment of dismissal on October 2, 2025, without restricting where YMTC could refile.  Mot. Ex. C at 2.  The judgment did not dismiss on the merits and did not dismiss for lack of personal jurisdiction over Strand and Layton—Judge Wise having already found that they waived that defense.  *See id.*; *see also* Mot. Ex. B at 4, 13.

**D.**      **YMTC Later Identified Defendants' Forum-Selection Clause After Defendants Told Judge Wise That D.C. Could Not Hear the Case.**

After Judge Wise's September 2025 Order, YMTC's counsel found the forum selection clause in the China Tech Threat Terms of Use.  Compl. ¶¶ 25-26.  That clause requires that any legal action arising from the site or its services be filed exclusively in D.C. courts:

> These Terms of Use and the relationship between You and us will be governed by the laws of the United States and the District of Columbia …. Any legal action, suit or proceeding arising out of or relating to these Terms of Use, or Your use of the Site or the Services must be instituted exclusively in the federal or state courts located in the District of Columbia and in no other jurisdiction.

Compl. Ex. 5 at 6, § 13.  The Terms define "Services" to include providing China Tech Threat's online content.  *Id.* 3.  The Terms identify Strand as the site's owner and operator.  *Id.*  Defendants concede that the Terms have existed since at least 2019.  Mot. 19; *see also* Compl. Ex. 5 at 6 (indicating "Last Updated" date of April 9, 2019).

YMTC's Lanham Act claims arise from the false statements that Defendants published through the China Tech Threat website—*i.e.*, through the "Site" and "Services," as the Terms define them.  Compl. Ex. 5 at 3,  The CTT Publications are "content" and "various kinds of information and materials" found when "access[ing]the Site," among other things, and YMTC's claims arise from Defendants' dissemination of those materials.  *Id.*  The clause covers any legal action "arising out of or relating to these Terms of Use, or Your use of the Site or the Services"—two independent triggers.  *Id.* at 6.  The Terms also provide that users "consent to exclusive personal jurisdiction and venue in, and agree to service of process issued or authorized by," the federal or state courts in the District of Columbia.  *Id.*  Layton is bound by the Terms both as an officer of Strand, which the Terms identify as the site's owner and operator (*id.* at 3), and as a co-founder of the site: she posted the CTT Publications to the site and is alleged to have authored them.  Compl. ¶¶ 23, 26, 42-43.

Despite having this clause on the China Tech Threat website since 2019, Defendants never disclosed it to Judge Wise during a year of litigation.  Worse, they told the court that D.C. jurisdiction did not exist—while knowing that in their Terms of Use they insisted on being sued exclusively in ***this*** Court—and not anywhere else, such as Denmark—for the kind of conduct Plaintiffs had put at issue.  Ex. 1 at 3 (arguing that "[t]he D.C. court lacks personal jurisdiction over Defendants").  Defendants had four chances to disclose the clause and chose silence each time: in their December 2024 motion to dismiss, where they neglected to challenge personal jurisdiction at all as to Strand and Layton (*id.*, Dkt. 65); in their opposition to YMTC's motion

8

for reconsideration, when they first contested personal jurisdiction (*id.*, Dkt. 89); in their July 2025 *forum non conveniens* motion, where they argued that the Northern District of California was the wrong forum (*id.*, Dkt. 92); and in their August 2025 opposition to YMTC's motion to transfer, where they told the court that YMTC's claims could not have been filed in this District (Ex. 1).

In that transfer opposition, Defendants did not just stay silent.  They put forth a position they knew to be incomplete, telling Judge Wise that "[t]he District of Columbia Is Not a District in Which This Action 'Might Have Been Brought' At the Time It Was Commenced."  Ex. 1 at 2. They briefed this argument, and urged Judge Wise to hold that they could be sued only in Denmark (she declined, as explained below) even though their website required that any legal action concerning its content "must be instituted exclusively in the federal or state courts located in the District of Columbia and in no other jurisdiction."  Compl. Ex. 5 at 6.

Defendants now say that the forum selection clause is something YMTC "could [] have raised … earlier."  Mot. 19.  But Defendants knew about their clause throughout the California litigation and chose not to disclose it, even as they argued that D.C. jurisdiction did not exist. Ex. 1 at 2-5.

### E.     YMTC Refiles Where Defendants' Own Terms Require; Defendants Threaten Sanctions a Third Time

After Judge Wise entered a judgment without restricting where YMTC could refile (Mot. Ex. C at 2), YMTC filed suit in this District.  The Complaint rests on two bases that Judge Wise never analyzed: Defendants' consent to jurisdiction through the China Tech Threat Terms of Use, which require that any legal action "must be instituted exclusively in the federal or state courts located in the District of Columbia"; and D.C.'s long-arm statute, D.C. Code § 13-423(a)(1) and (a)(4).  Compl. ¶¶ 25-27; *id*. Ex. 5 at 6, § 13.  Both operate on different principles

9

from the Rule 4(k)(2) analysis that Judge Wise conducted.  Mot. Ex. B at 4-8.  Both are theories

that Judge Wise's own qualifying language, "without more" and "absent waiver or other

particular circumstances," left open.  *Id.* at 8.

Defendants responded as they have at each stage of the litigation: with more sanctions

threats.  Mot. 1.  They threatened anti-SLAPP sanctions when YMTC filed state-law claims in

California.  Cal. Action, Dkt. 37 at 7.  They threatened Rule 11 sanctions when YMTC amended

to assert a Lanham Act claim.  Cal. Action, Dkt. 66-2 at 2, 5-6.  They seek here Rule 11

sanctions, attorney's fees, and an injunction barring YMTC from ever suing again, because

YMTC filed where Defendants' own terms require.  Mot. 23-25; Compl. Ex. 5 at 6, § 13.

## ARGUMENT

**I.   YMTC'S JURISDICTIONAL THEORIES SATISFY RULE 11(B)(2) BECAUSE THEY REST ON LEGAL STANDARDS JUDGE WISE NEVER REACHED**

Rule 11 is designed to "deter baseless filings"—not "an attorney's enthusiasm or

creativity in pursuing factual or legal theories."  *Petruss Media Grp., LLC v. Advantage Sales &*

*Mktg., LLC*, 2023 WL 5507306, at *16 (D.D.C. Aug. 25, 2023) (quoting *Cooter & Gell v.*

*Hartmarx Corp.*, 496 U.S. 384, 393 (1990)); *see also* Fed. R. Civ. P. 11 advisory Committee's

note to 1983 amendment.  A filing is not subject to sanctions under Rule 11 when its legal

contentions are "warranted by existing law or by a nonfrivolous argument for extending,

modifying, or reversing existing law."  Fed. R. Civ. P. 11(b)(2).  The test is objective: whether a

reasonable attorney would have concluded that the filing had a basis in law.  *Pinson v. U.S.*

*Dep't of Justice*, 273 F. Supp. 3d 1, 13-14 (D.D.C. 2017) (applying objective reasonableness

standard).

The assertion of personal jurisdiction in YMTC's Complaint rests on two theories.

Compl. ¶¶ 25-27.  Both are based on established law.  Neither overlaps with the one Judge Wise

10

addressed.  Mot. Ex. B at 4-8.  The first is consent through the China Tech Threat Terms of Use.  Compl. ¶¶ 25-26.  Those Terms contain an exclusive D.C. forum selection clause that Defendants imposed through their website, but never disclosed to the California court—even while arguing that D.C. was not a viable forum.  Compl. Ex. 5 at 6, § 13; Ex. 1 at 2-6.  The second is D.C. long-arm contacts based on Defendants' targeted conduct in this District—conduct Judge Wise never evaluated.  Compl. ¶ 27.  Neither issue preclusion nor judicial estoppel bars these theories.

### A.    Defendants Cannot Satisfy Key Elements of Issue Preclusion.

To establish issue preclusion, Defendants must prove that: (1) "the same issue now being raised" was "contested by the parties and submitted for judicial determination in the prior case"; and (2) the issue was "actually and necessarily determined by a court of competent jurisdiction." *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992).  Defendants bear the burden.  *Angelex Ltd. v. United States*, 123 F. Supp. 3d 66, 78 (D.D.C. 2015) (placing burden on "the party seeking to invoke issue preclusion").  They cannot show either.

### 1.    YMTC's Jurisdictional Grounds Rest on Different Legal Standards That Were Never Litigated in California.

Defendants cannot satisfy the first *Yamaha* element.  A party must show that the issue is the "same" or "identical" and was "contested by the parties and submitted for judicial determination" in the first action.  *Yamaha*, 961 F.2d at 254.  An issue is not identical when "different legal standards apply" in the second action.  *North v. Walsh*, 881 F.2d 1088, 1096 (D.C. Cir. 1989).  Contractual consent jurisdiction and minimum contacts rest on different legal standards.  No party raised contractual consent before Judge Wise.

Where governing legal standards differ, "issue preclusion does not foreclose litigation"—even if the proceedings share a label or other similarities.  *North*, 881 F.2d at 1096.  The D.C.

11

Circuit reversed an issue-preclusion ruling in *North* that stretched "the concept 'issue' so that the term becomes virtually synonymous with 'demand for relief.'" *Id*. at 1095-96. The same principle drove the D.C. Circuit's holding that state-court and federal-court jurisdictional dismissals raised "different issues." *Jackson v. Off. of the Mayor of D.C.*, 911 F.3d 1167, 1171 (D.C. Cir. 2018).

District courts analyze contractual consent jurisdiction and minimum contacts "separately" because "contract principles rather than the minimum contacts framework" govern consent. *Sabre Int'l Sec. v. Torres Adv. Enter. Sols., LLC*, 60 F. Supp. 3d 21, 32 (D.D.C. 2014). A forum selection clause is "a distinct contract … between the parties to settle disputes in a particular forum"—not a forum "contact." *Id*. (citation omitted). The *Sabre* court reached different results on each jurisdictional ground: it rejected minimum contacts-based jurisdiction, but it upheld contractual consent jurisdiction through the forum selection clause. *Id.* at 31-36. Given that courts refuse to blend these doctrines into a single ground for jurisdiction, they cannot be the "same issue" for preclusion across two cases.

Judge Wise's qualifying language in ruling on YMTC's transfer motion confirms that the contractual consent ground for jurisdiction falls outside her ruling. Judge Wise found that "this case could not have been brought in the District of Columbia, because, ***without more***, the District of Columbia would not have personal jurisdiction over Defendants for this particular dispute (***absent waiver or other particular circumstances***)." Mot. Ex. B at 8 (emphases added). If Judge Wise meant to decide personal jurisdiction across the board, the phrases "without more" and "absent waiver or other particular circumstances" would be surplusage. Indeed, a forum selection clause "is generally considered to be a consent to the exercise of personal jurisdiction in a particular forum." *Sabre,* 60 F. Supp. 3d at 32. By designating this District as the exclusive forum for any legal action concerning their website's content, Defendants' own clause

surrendered any objection to personal jurisdiction here—a legal issue Judge Wise never reached and that was not before her.  Those grounds are the kind of "more" and "other particular circumstances" Judge Wise excluded from her holding.  Tellingly, when quoting the order, Defendants cut Judge Wise's qualifying language.  Mot. 12.  A jurisdictional dismissal cannot be read as deciding that "no possible jurisdictional basis for the present [] claims could be found" where the new and different ground for jurisdiction was not before the court." *Miller v. Saxbe*, 396 F. Supp. 1260, 1261 (D.D.C. 1975).

Additionally, no party contested contractual consent jurisdiction or put it before Judge Wise.  *See Yamaha*, 961 F.2d at 254 (an issue must be "contested by the parties and submitted for judicial determination").  YMTC's transfer motion argued jurisdiction under Rule 4(k)(2) based on nationwide contacts.  Cal. Action, Dkt. 91 at 6-10.  Defendants' opposition argued that YMTC must "demonstrate that Defendants have at least minimum contacts with the United States."  Ex. 1 at 3.  Neither party cited the Terms of Use or mentioned the forum selection clause.  *Id.*, Dkts. 91, 94; *see also* Ex. 1.  Nor did Judge Wise.  Her Order analyzed only Rule 4(k)(2).  Mot. Ex. B at 4-8.

Defendants point out that YMTC's transfer motion stated that Defendants "consented to jurisdiction."  Mot. 6.  That phrase referred to Defendants' failure to raise an alleged lack of personal jurisdiction under Rule 4(k)(2) in their Rule 12 motion—a procedural-waiver argument under Rule 12(h)(1), not a contractual-consent argument.  Cal. Action, Dkt. 91 at 6 (citing Dkt. 88 at 3-5).  YMTC did not cite the Terms of Use, find the forum selection clause, or brief contractual consent.  *Id.*, Dkt. 91 at 6-10.  But Defendants knew of their own Terms of Use.  They said nothing about the forum selection clause to Judge Wise while simultaneously arguing that no U.S. court could exercise jurisdiction over them.  They cannot now invoke her ruling to foreclose a jurisdictional question they ensured she never considered.

Every case that Defendants cite pertinent to the scope of the "issue" involves a party who raised a new argument under the ***same legal standard*** that the first court applied—not a party who invoked a ***different doctrine*** governed by a ***different legal standard***.[1]  An issue can be precluded only where the same legal standard governs both cases.  *See North*, 881 F.2d at 1096.  Defendants attempt to frame the "issue" as simply "whether this Court may exercise personal jurisdiction over Defendants."  Mot. 12.  But that framing sweeps in every possible ground for personal jurisdictional.  The D.C. Circuit rejected such a move in *North*, where it reversed an issue-preclusion ruling that stretched "the concept 'issue' so that the term becomes virtually synonymous with 'demand for relief.'"  881 F.2d at 1095-96.  YMTC has not offered any new argument on the Rule 4(k)(2) minimum-contacts standard that Judge Wise applied.  Instead, it has invoked a different doctrine—contractual consent jurisdiction through a forum selection clause—governed by contract law, not Constitutional due-process law.  *See* Cal. Action, Dkts. 91, 94; *see also* Mot. Ex. B at 5-8; Ex. 1.

---

[1]  *See, e.g.*, *Eaton v. Weaver Mfg. Co.*, 582 F.2d 1250, 1256–57 (10th Cir. 1978) (Mot. 19) (precluding franchisor-franchisee contacts ground for jurisdiction because prior court applied the same long-arm minimum-contacts standard and rejected jurisdiction on those contacts); *Magnus Elecs., Inc. v. La Republica Argentina*, 830 F.2d 1396, 1399–1401 (7th Cir. 1987) (Mot. 19–20) (precluding new FSIA argument because both suits applied the same commercial-activity exception to sovereign immunity); *Hall v. Clinton*, 285 F.3d 74, 81 (D.C. Cir. 2002) (Mot. 12) (precluding § 1985 claim because prior court applied the same CSRA displacement standard to bar the same type of claim); *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 479–80 (1982) (Mot. 16) (same disparate-treatment standard under Title VII and state human-rights law); *Spence v. TRW, Inc.*, 92 F.3d 380, 382 (6th Cir. 1996) (Mot. 16) (same age-discrimination standard under the ADEA); *AMA Multimedia, LLC v. Madon*, 2020 WL 5096476, at *4–5 (D. Nev. Aug. 28, 2020) (Mot. 16) (same *Calder* effects test for specific jurisdiction based on minimum contacts). *See also Yamaha*, 961 F.2d at 255–57 (Mot. 13) (precluding new evidence on the same Customs-classification standard the prior tribunal applied); *Paulo v. Holder*, 669 F.3d 911, 917–18 (9th Cir. 2011) (Mot. 13) (precluding new arguments under the same immigration-eligibility standard the prior court applied); *Simmons v. Small Bus. Admin.*, 475 F.3d 1372, 1374–75 (Fed. Cir. 2007) (Mot. 20) (applying collateral estoppel because settlement validity was actually litigated and necessarily decided by the prior court).

Defendants' best "could have been raised" case actually undermines their preclusion argument.  In *Eaton*, the court gave preclusive effect to a minimum contacts ruling only because the first court had adjudicated the same minimum contacts grounds for jurisdiction.  582 F.2d at 1256-57 (Mot. 19).  YMTC's contractual consent ground rests on contract law, not minimum contacts—a distinct legal issue governed by different standards that was never before Judge Wise.  *Eaton* thus confirms the rule: preclusion extends only to what was actually decided, not to jurisdictional grounds the first court never reached.

Defendants' analysis of "curable defect" cases, *see* Mot. 12-13, misses the mark for a different reason.  That exception requires that "a material change following dismissal cured the original jurisdictional deficiency."  *Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34, 41 (D.C. Cir. 2015); *see also*, *e.g.*, *Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1192-93 (D.C. Cir. 1983) (barring a second suit asserting the same long-arm ground for jurisdiction on the same facts) (Mot. 13).  YMTC is not trying to cure a Rule 4(k)(2) defect.  Instead, it raises contractual consent, a doctrine that existed throughout the California litigation but that neither party raised.

Defendants' preclusion argument against the D.C. long-arm grounds for jurisdiction fails for the same reason.  Defendants argue that Judge Wise's finding that Defendants lack contacts with the United States concluded "whether this Court could have exercised personal jurisdiction over Defendants if YMTC had brought its Lanham Act claim in this Court to begin with." Mot. 14.  That does not follow.  Rule 4(k)(2) aggregates nationwide contacts and applies a constitutional due-process standard.  *See, e.g.*, Mot. Ex. B at 5-8.  The D.C. long-arm statute applies a different standard: Whether the defendant "transact[ed] any business" or caused "tortious injury" in the District of Columbia by an act or omission outside the District of Columbia while "regularly … engag[ing] in any other persistent course of conduct" in D.C.

15

D.C. Code §§ 13-423(a)(1), 13-423(a)(4).  Those are statutory tests turning on D.C.-specific conduct that no party put before the California court.  Compl. ¶¶ 25-27.

### 2.    The Jurisdictional Finding Was Not Necessary or Essential to the Judgment.

Judge Wise's jurisdictional finding does not bind this Court.  The *forum non conveniens* dismissal—not the transfer denial—produced the final judgment.  We know that because the parties would still be litigating in the Northern District of California, where Defendants had waived personal jurisdiction, but for the *forum non conveniens* dismissal.  *See Ukiah Adventist Hosp. v. F.T.C.*, 981 F.2d 543, 546 (D.C. Cir. 1992) (holding "transfer orders are not appealable final orders" because they "allow the case to continue, rather than terminating it").

A finding "ranks as necessary or essential only when the final outcome hinges on it." *Bobby v. Bies*, 556 U.S. 825, 835 (2009).  "If a judgment does not depend on a given determination, relitigation of that determination is not precluded."  *Id*. at 834.  Findings that are "incidental, collateral, or immaterial" cannot "be given conclusive effect" to bar future litigation on the issue.  *Jones v. Kirchner*, 835 F.3d 74, 83 n.8 (D.C. Cir. 2016).

The September 2025 Order addressed three motions: reconsideration, transfer, and *forum non conveniens*.  Mot. Ex. B at 2.  Only the *forum non conveniens* dismissal produced the final judgment.  *Id.* at 13; Mot. Ex. C at 2.  The transfer denial and the dismissal rested on independent grounds.  They appear in separate sections of the order.  Mot. Ex. B at 4-13.  The *forum non conveniens* analysis did not depend on, cite, or mention the personal jurisdiction finding.  Mot. Ex. B at 9-13.  Had Judge Wise never reached the transfer motion, the dismissal and resulting judgment would have been the same.  Moreover, Defendants' own silence about their forum selection clause contributed to the transfer denial they now invoke.  They cannot use a ruling their omission helped procure to bar YMTC from litigating in the forum they designated.

16

The personal jurisdiction finding was "incidental" and "collateral" to the judgment, not a finding on which the "final outcome" hinged. *Jones*, 835 F.3d at 83 n.8; *Bobby*, 556 U.S. at 834. A court may "bypass[] questions of … personal jurisdiction" when dismissing on *forum non conveniens* grounds. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007). Ignoring this, Defendants treat the transfer denial as though it gave rise to the final judgment. Mot. 12. It did not. The *forum non conveniens* dismissal produced the final judgment. Mot. Ex. B at 13; Mot. Ex. C at 2.

### B.    Judicial Estoppel Fails Because No *Moses* Factor Is Met.

In evaluating a claim of judicial estoppel, courts weigh three factors: (1) whether the party's later position is "clearly inconsistent" with an earlier one, (2) whether the party "succeeded in persuading a court to accept" that earlier position, and (3) whether the party would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 798 (D.C. Cir. 2010). Defendants fail to meet any one of these factors. Mot. 17-19.

### 1.    YMTC's Positions Are Not "Clearly Inconsistent."

The first *Moses* factor asks whether a party's later position is "clearly inconsistent" with its earlier one. 606 F.3d at 798. YMTC's positions are not inconsistent. YMTC's grounds for jurisdiction has a different legal basis than its earlier Rule 4(k)(2) argument. Rule 4(k)(2) asks whether a defendant has enough minimum contacts with the United States to support jurisdiction. *In re Vitamins Antitrust Litig.*, 94 F. Supp. 2d 26, 34 (D.D.C. 2000). A forum selection clause creates jurisdiction through contractual consent—a basis that does not depend at all on the defendant's contacts. *Sabre*, 60 F. Supp. 3d at 32 (a forum selection clause "is generally considered to be a consent to the exercise of personal jurisdiction in a particular forum"). A

17

forum selection clause is "a distinct contract between the parties to settle disputes in a particular forum," governed by "contract principles rather than the minimum contacts framework." *Id.*

Courts in this District treat forum selection clauses not as "forum 'contact[s]'" but as a separate ground for contractual consent jurisdiction. *Sabre*, 60 F. Supp. 3d at 32, 36. *Sabre* shows the point: the court rejected contacts-based jurisdiction over individual defendants yet upheld contractual consent jurisdiction through a forum selection clause—on the same motion. 60 F. Supp. 3d at 31-36. If both theories can coexist in one action, they can coexist across two.

Judge Wise's express reservation—"without more" and "absent waiver or other particular circumstances"—means that YMTC's contractual consent ground for jurisdiction falls outside her holding. Mot. Ex. B at 8. A ruling that addresses only a lack of minimum contacts says nothing about whether contractual consent exists. Defendants' rule would also yield untenable results. Any plaintiff whose Rule 4(k)(2) argument fails would be barred from ever asserting jurisdiction on any other ground—contractual consent, waiver, or a forum selection clause found after filing. Defendants cite no authority for that rule.

### 2.    YMTC Did Not "Succeed in Persuading" Any Court.

The second *Moses* factor also defeats Defendants' argument. Success on the earlier position is a "an essential element" to the doctrine's application. *Konstantinidis v. Chen*, 626 F.2d 933, 939 (D.C. Cir. 1980). "Not only does the lack of success weigh against judicial estoppel, but it generally serves as a prerequisite to its application." *Beach TV, Inc. v. Solomon*, 254 F. Supp. 3d 118, 126 (D.D.C. 2017) (citation omitted). YMTC did not succeed in asserting Rule 4(k)(2) jurisdiction. Judge Wise rejected YMTC's Rule 4(k)(2) ground for jurisdiction, finding that Defendants' contacts were "tenuous." Mot. Ex. B at 8. YMTC did not prevail. Thus, the prerequisite is absent.

18

This Court applied that rule on materially identical facts in *Beach TV*. *See* 254 F. Supp. 3d at 125. The plaintiff argued that D.C. law governed an assignment. *Id.* The court disagreed and applied Virginia law. *Id.* When the plaintiff later advanced a claim premised on Virginia law—the opposite of its earlier position—the court rejected the defendant's attempt to assert judicial estoppel because the plaintiff "did not prevail in its argument that District of Columbia law applied" and "the second and third factors weigh heavily against estoppel." *Id.* at 126. The same result follows here. YMTC argued for Rule 4(k)(2) jurisdiction, did not succeed, and now advances a different ground for jurisdiction.

Defendants recast YMTC's "success" as getting the California court to apply the Rule 4(k)(2) framework. Mot. 18-19. They also frame it as a benefit, arguing that the standard "was plainly to YMTC's benefit, as that standard is far more favorable to a plaintiff." Mot. 19. Both points fail. The second *Moses* factor asks whether the party "succeeded in persuading a court to accept that party's earlier position"—the substantive point the party asked the court to endorse. *Moses*, 606 F.3d at 798. YMTC's position was that Defendants had enough nationwide contacts to support jurisdiction. Mot. 18; Cal. Action, Dkt. 91 at 6-7. The California court rejected that position. Mot. Ex. B at 8.

Choosing which legal vehicle to brief is litigation strategy, not a "position" a court "accepts" for estoppel purposes. Whether a standard was "favorable" to a party says nothing about whether the party "succeeded" in persuading the court to accept it. A litigant who picks a favorable standard and loses within it has not "succeeded" in anything.

The doctrine's rationale reinforces this point. Judicial estoppel guards against "cold manipulation" of the courts, not against a party that lost and later tried a different argument. *Nat'l Parks Conservation Ass'n v. Semonite*, 422 F. Supp. 3d 92, 97 (D.D.C. 2019) (quoting *Konstantinidis v. Chen*, 626 F.2d 933, 939 (D.C. Cir. 1980)). When a court hears a party's

19

argument and rejects it, no misleading occurs. "Judicial estoppel should not be applied if no judicial body has been led astray." *Semonite*, 422 F. Supp. 3d at 97. The California court heard YMTC's 4(k)(2) argument, weighed the evidence, and rejected it. Mot. Ex. B at 4-8. That is the opposite of the harm judicial estoppel prevents.

### 3. Defendants, Not YMTC, Received the Unfair Advantage Because They Failed to Disclose Their Forum Selection Clause and Now Seek to Prevent YMTC from Relying on It.

The third *Moses* factor asks whether the party asserting the inconsistent position would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Moses*, 606 F.3d at 798. Any claimed unfairness must flow from the inconsistent position itself. A "disadvantage" or "advantage" that "is not the result of a misrepresentation or inconsistent position" does not satisfy this factor. *Semonite*, 422 F. Supp. 3d at 97-98. Here, the unfairness cuts against Defendants, not YMTC.

Defendants say that the Rule 4(k)(2) framework was "plainly to YMTC's benefit." Mot. 19. Yet YMTC received no benefit; it lost. Mot. Ex. B at 6. And Defendants created that unfairness: They wrote a forum selection clause choosing this District, failed to disclose that clause to the California court during months of jurisdictional briefing, and now seek sanctions against YMTC for discovering and relying on it. Compl. ¶¶ 25, 28-29; *id.* Ex. 5 at 6, § 13.

Defendants also assert that YMTC's new theories have "no conceivable purpose" but to attempt to "avoid the preclusive effect of the California court's Order." Mot. 19. That gets the facts backward. YMTC's contractual consent ground for jurisdiction rests on Defendants' own contractual choice of forum. It is a clause Defendants drafted and imposed on every user as a "binding agreement." Compl. Ex. 5 at 3, 6. Defendants' forum selection clause requires that any legal action arising from the content Defendants post "must be instituted exclusively in the federal or state courts located *in the District of Columbia and in no other jurisdiction*." *Id*. Ex.

5 at 6, § 13 (emphasis added).  YMTC is not inventing a jurisdictional ground to dodge preclusion.  It is holding Defendants to their own choice of forum.  This third factor weighs against estoppel where, as here, a party "does not unfairly benefit from now being able to assert" its new position after losing on the earlier one.  *Beach TV Props.*, 254 F. Supp. 3d at 126.

### C.    YMTC's Counsel Satisfied Rule 11's Reasonable-Inquiry Standard.

As explained above, YMTC's counsel conducted a reasonable prefiling inquiry.  A filing is sanctionable only if "a reasonable inquiry would have revealed that there was no basis in law or fact for the asserted claim."  *Hedgeye Risk Mgmt., LLC v. Heldman*, 412 F. Supp. 3d 15, 34 (D.D.C. 2019) (denying Rule 11 sanctions where plaintiff's claims rested on a reasonable prefiling inference).  Even advancing a losing legal argument does not warrant sanctions if the prefiling inquiry was reasonable and the claim was legally tenable.  *Id.*  Rule 11 "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories."  Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment.  Courts deny sanctions when a party advances an unsuccessful legal argument that presents a substantive dispute requiring careful judicial analysis.  *1443 Chapin St., LP v. PNC Bank, Nat'l Ass'n*, 718 F. Supp. 2d 78, 86-87 (D.D.C. 2010) (denying sanctions and finding that the challenged arguments "required careful consideration by the Court and were by no means frivolous"); *Cherichel v. Ergo Sols., LLC*, 85 F. Supp. 3d 245, 249-50 (D.D.C. 2015) (dismissing claims but denying sanctions because the court was "reluctant to conclude that it is so frivolous a legal theory as to merit sanctions").

Judge Wise's express reservation—"without more" and "absent waiver or other particular circumstances" (Mot. Ex. B at 8)—signaled that the ruling was limited to minimum contacts under Rule 4(k)(2) and left open that jurisdiction could rest on other grounds, including waiver or other circumstances.  YMTC's counsel investigated and confirmed that D.C. courts treat contractual consent jurisdiction and contacts as independent bases for jurisdiction.  *Sabre*, 60 F.

21

Supp. 3d at 32.  Counsel found a contractual provision—Defendants' forum selection clause—supporting jurisdiction on a ground Judge Wise did not have before her.  Compl. Ex. 5 at 6, § 13.

The personal jurisdiction requirement "recognizes and protects an individual liberty interest" and thus "may be intentionally waived, or for various reasons a defendant may be estopped from raising the issue." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-04 (1982).  Courts treat contractual consent jurisdiction through a forum selection clause as dispositive: Where a party entered a "binding forum-selection clause" that "expressly consent[s] to the personal jurisdiction of the … federal courts for the District of Columbia," that "consent is dispositive with respect to the Court's personal jurisdiction." *M3 USA Corp. v. Qamoum*, 2021 WL 2324753, at *8 (D.D.C. June 7, 2021).  Those findings gave counsel an objectively reasonable basis for filing.  *Cooter & Gell*, 496 U.S. at 401 (holding that the Rule 11 inquiry requires consideration of "all the circumstances of a case").

That a court later rejects a legal theory does not make the filing sanctionable.  A court in this District denied Rule 11 sanctions on a claim it simultaneously dismissed at summary judgment because the plaintiff "had sufficient reason to believe" its allegations were supported when filed.  *See Hedgeye*, 412 F. Supp. 3d at 34.  The federal system permits—if not expects—parties to assert a new legal basis to address a jurisdictional gap.  *See, e.g.*, *Lopes v. JetSetDC, LLC*, 994 F. Supp. 2d 126, 130-33 (D.D.C. 2014) (finding no Rule 11 violation where plaintiff filed an amended complaint "to cure a jurisdictional deficiency" because the new jurisdictional facts had evidentiary support).

Defendants rely on *McLaughlin v. Bradlee* for the proposition that sanctions are "especially appropriate" where "collateral estoppel plainly preclude[s] relitigation."  Mot. 10-11 (citing 602 F. Supp. 1412, 1417 (D.D.C. 1985), *aff'd*, 803 F.2d 1197 (D.C. Cir. 1986)).  The operative word is "plainly."  In *McLaughlin*, the plaintiff relitigated the identical claim under the

22

identical legal standard after a full merits adjudication. 602 F. Supp. at 1417. This case is nothing like that: YMTC raises a *different* jurisdictional ground, governed by a *different* legal standard, that Judge Wise's Order left open. And unlike *McLaughlin*, there has been no adjudication on the merits of YMTC's claims; Judge Wise's ruling addressed only the procedural question of whether to transfer the case. Collateral estoppel cannot be "plain" where the first court never reached the substance of the claims being litigated.

Defendants cite five other cases to argue that YMTC's counsel should have known the complaint was precluded. Mot. 15-17. These cases fall into two groups. YMTC's Complaint belongs to neither.

The first group involves attorneys who filed complaints with defects visible on the face of their own filings. *See, e.g.*, *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1121 (9th Cir. 2002) (sanctioning attorney who filed a copyright claim even though the allegedly infringing work "had been created well prior to" the work it supposedly copied, a defect in plain sight on the dolls' heads, which had "clearly visible copyright notices") (Mot. 15); *Weisman v. Rivlin*, 598 F. Supp. 724, 724 (D.D.C. 1984) (sanctioning attorney who brought diversity jurisdiction lawsuit on behalf of client without knowing client's citizenship) (Mot. 15); *Son Ly v. Solin, Inc.*, 910 F. Supp. 2d 22, 32 (D.D.C. 2012) (ordering plaintiffs to show cause after they invoked diversity citizenship despite all parties residing in Virginia, an error apparent from "the face of the complaint") (Mot. 15). YMTC's filing involves no face-of-the-complaint defect.

The second group involves parties who refiled on the same minimum contacts-based jurisdictional ground that another court had rejected. *See Pace v. Cirrus Design Corp.*, 2025 WL 819006, at *10 (S.D. Miss. Mar. 13, 2025) (finding second action rested on identical contacts grounds for jurisdiction and that "elementary legal research on personal jurisdiction would have prevented [the second] suit from being filed") (Mot. 16); *Valdez v. Kreso, Inc.*, 144 F. Supp. 2d

23

663, 665-69 (N.D. Tex. 2001) (sanctioning attorney who refiled within two weeks of dismissal on same factual allegations and contacts grounds for jurisdiction, including allegations he knew were false) (Mot. 17).  YMTC's complaint does not repeat the minimum contacts jurisdictional ground that Judge Wise rejected.

## II.      YMTC DID NOT FILE FOR AN IMPROPER PURPOSE

Rule 11 bars filings made for an "improper purpose," such as "to harass, cause unnecessary delay, or needlessly increase the cost of litigation."  Fed. R. Civ. P. 11(b)(1).  That did not happen here.  YMTC filed this complaint in the forum Defendants' Terms of Use designate, on a jurisdictional ground that Judge Wise left open.  Compl. Ex. 5 at 6, § 13; Mot. Ex. B at 8.  No evidence suggests that YMTC filed for any reason other than to pursue its claims.

Defendants' improper-purpose argument is a repackaged Rule 11(b)(2) challenge—the claim that YMTC's jurisdictional theories are legally unwarranted.  Mot. 21-25.  For the reasons set forth in Section I.C, those arguments fail.  If a disputed jurisdictional ground were enough to prove improper purpose, every Rule 11(b)(2) motion would satisfy Rule 11(b)(1) as well—collapsing the two provisions into one.  That is not the law.  Improper purpose means "something other than [the] mere assertion of frivolous or unfounded legal arguments or contentions." *Logan v. Serv. Emps. Int'l Union Loc. 73*, 2016 WL 5807932, at *2 (N.D. Ill. Oct. 5, 2016). Rule 11(b)(1) requires evidence of an improper motive independent of the merits.  *See 1443 Chapin St.*, 718 F. Supp. 2d at 86 (denying sanctions where movant's improper-purpose arguments were "tied to the merits" of a separate substantive brief); *Maverick Entm't Grp., Inc. v. Does 1-2,115*, 276 F.R.D. 389, 392, 395 (D.D.C. 2011) (denying sanctions for lack of evidence of improper purpose despite the movant's argument that the filings were "nearly identical" to denied motions).  That is all Defendants argue here.  Mot. 21-24.

24

Defendants conjure up the so-called "improper purpose" based on a prejudicial inference from YMTC's litigation decisions and irrelevant third-party commentary.

*First*, Defendants recast YMTC's amendment of its California complaint—dropping state-law claims and proceeding under the Lanham Act—as evidence of harassment. Mot. 21. That inference is not only unsupported but also prejudicial. Refining claims after new counsel evaluates the record reflects ordinary litigation judgment, not improper purpose. Courts routinely reject Rule 11 motions that attempt to convert a disagreement over legal strategy into evidence of bad faith. *See Jordan v. U.S. Dep't of Labor*, 273 F. Supp. 3d 214, 246 (D.D.C. 2017) (denying sanctions where the movant "attribute[d] a competing opinion on how to apply the law and facts of this case to a desire to cause unnecessary delay").

*Second*, Defendants misleadingly suggest that YMTC cobbled together the Complaint within 24 hours of entry of the judgment in the California Action. That is not correct. Judge Wise entered her *forum non conveniens* order on September 12, 2025, and YMTC filed the Complaint on October 3, 2025—three weeks later. Defendants rely on *Danik, Inc. v. Hartmarx Corp.*, 120 F.R.D. 439, 443 (D.D.C. 1988), where the court granted sanctions because the plaintiff conducted no meaningful pre-filing investigation. The opposite happened here. Judge Wise confined her ruling to the absence of minimum contacts under Rule 4(k)(2) but expressly left open the possibility of jurisdiction based on "waiver or other particular circumstances." Mot. Ex. B at 8. In the ensuing three weeks, YMTC's counsel uncovered just such grounds. Compl. Ex. 5, at 6, § 13. That reflects careful pre-filing inquiry, not harassment.

*Finally*, Defendants lean on testimony from a political hearing to characterize this action as "lawfare." Mot. 2-3, 4, 24. A single witness's disputed views about YMTC at such a hearing say nothing about whether counsel's pre-filing inquiry in this case was reasonable or whether the Complaint here serves an improper purpose—the only questions Rule 11 asks. Defendants

25

invoke that testimony for one reason: to cast YMTC as a foreign threat rather than a commercial

plaintiff with a Lanham Act claim.  The tactic aims to prejudice, not to inform.  That Defendants

built their Motion on such rhetoric rather than legal argument says more about the Motion than it

does about the Complaint.

## III.    <u>DEFENDANTS' REQUEST FOR INHERENT-AUTHORITY SANCTIONS FAILS</u>

Inherent-authority sanctions carry a higher bar than Rule 11: the movant must show by

clear and convincing evidence that the opposing party acted in "bad faith."  *Ali v. Tolbert*, 636

F.3d 622, 627 (D.C. Cir. 2011) (requiring "clear and convincing evidence" of conduct

"tantamount to bad faith").  Unlike Rule 11's objective test, inherent-authority sanctions require

proof that the party acted with "bad faith, vexatiously, wantonly, or for oppressive reasons."

*United States v. Pope*, 2025 WL 2105571, at *4 (D.D.C. July 28, 2025).  Even negligent or

careless conduct cannot justify this remedy.  *United States v. Wallace*, 964 F.2d 1214, 1219

(D.C. Cir. 1992) (reversing inherent-authority sanctions because "a finding of bad faith is

required," and attorney's negligence "did not reach even the lowest of the possible thresholds").

Defendants fail from the start because they target the same conduct as their Rule 11

theory: filing the Complaint.  Mot. 21-22.  When the challenged conduct falls within Rule 11's

scope, a court should use that Rule rather than inherent authority.  *Chambers v. NASCO, Inc.*,

501 U.S. 32, 50 (1991) ("when there is bad-faith conduct in the course of litigation that could be

adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than

the inherent power").  Because that conduct does not warrant sanctions under Rule 11's lower,

objective standard (for the reasons in Sections I and II), it cannot warrant sanctions under the

higher, subjective standard inherent authority requires.  A filing that is not objectively

unreasonable cannot be subjectively vindictive.

That YMTC pursued a different ground for jurisdiction in a new forum does not amount to "dishonesty, improper interference with the judicial function … or any other form of malfeasance." *Doe v. Off. of Pers. Mgmt.*, 2025 WL 3723770, at \*18 (D.D.C. Dec. 22, 2025).  If refiling on the same ground for jurisdiction does not amount to bad faith absent a judicial warning, then refiling on a different ground for jurisdiction—as YMTC did here—cannot either. *See BEG Invs., LLC v. Alberti*, 85 F. Supp. 3d 13, 51 (D.D.C. 2015) (declining to sanction a party that reasserted previously dismissed claims where "bad faith is not readily apparent" and counsel "had not previously been warned by this Court that such conduct was sanctionable").

## IV.      <u>DEFENDANTS ARE NOT ENTITLED TO THEIR REQUESTED RELIEF</u>

Defendants seek "all costs and fees incurred by Defendants in this matter," paid by YMTC and its counsel, plus a permanent injunction barring YMTC from "filing another lawsuit in federal district court arising from the same facts." Mot. 23-24.  Neither Rule 11 nor the Court's inherent authority supports either remedy on the facts of the record.

### A.      <u>On Its Face, Rule 11 Bars Monetary Sanctions Against YMTC</u>

Rule 11 sanctions must be "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

Rule 11(c)(5)(A) bars monetary sanctions against YMTC.  The text is mandatory: monetary sanctions "must not be awarded against a represented party for violating Rule 11(b)(2)." Fed. R. Civ. P. 11(c)(5)(A); *Hickey v. Scott*, 738 F. Supp. 2d 55, 74 n.21 (D.D.C. 2010) (recognizing prohibition).  YMTC is a represented party.  Defendants' legal-sufficiency challenge falls squarely within Rule 11(b)(2).  The bar applies.

Nor are Defendants entitled to monetary sanctions against Quinn Emanuel on this record. Quinn Emanuel found a jurisdictional basis—Defendants' forum selection clause—that neither party had raised and that the California court did not consider.  Mot. Ex. B at 8.  Before filing

27

this lawsuit, Quinn Emanuel identified controlling D.C. authority confirming that courts treat personal jurisdiction based on contractual consent as distinct from personal jurisdiction based on minimum contacts. *Sabre*, 60 F. Supp. 3d at 32. Quinn Emanuel filed in the contractually designated forum. Compl. Ex. 5 at 6, § 13. That is not sanctionable conduct. *Williams v. Verizon Washington, D.C. Inc.*, 322 F.R.D. 145, 149 (D.D.C. 2017) (explaining that "Rule 11 sanctions attach only on the basis of an inadequate pre-filing investigation" and denying sanctions because movant Verizon offered only speculation about the lack of pre-filing investigation based on the assertion that the "case should never have been filed").

Defendants' demand for "all costs and fees incurred" is also unreasonable. Mot. 23. Rule 11 "is not a fee-shifting statute." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 553 (1991). It covers "only the cost of a discrete event," not "the entire cost of litigation." *Id.* Defendants have failed to limit their demand to the fees they incurred in filing this Motion. Even when a court finds a violation, sanctions are discretionary. The 1993 amendments replaced "shall" with "may" and added Rule 11(c)(5)(A)'s bar on monetary sanctions against represented parties. Fed. R. Civ. P. 11(c)(1); Fed. R. Civ. P. 11, advisory Committee's note to 1993 amendment. Defendants' assertion that sanctions are "required" when a violation is found, relying on pre-1993 *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1174–75 (D.C. Cir. 1985), is wrong. Mot. 9.

Defendants' Rule 11(b)(1) theory rests on the same premise as their (b)(2) theory—that YMTC's jurisdictional arguments are precluded—but Defendants offer no evidence of improper motive. Mot. 20. For the reasons in Section II, that theory fails. Allowing it to support monetary sanctions would let movants evade Rule 11(c)(5)(A)'s bar by recasting every (b)(2) challenge as a (b)(1) claim—eviscerating the bar's protection for represented parties.

28

Finally, to the extent Defendants invoke the Court's inherent authority as an independent basis for sanctions, that argument fares no better. Inherent authority sanctions require "clear and convincing evidence" of conduct "tantamount to bad faith." *Ali*, 636 F.3d at 627. Defendants identify no misconduct outside Rule 11's reach, and where conduct falls within Rule 11's scope, a court should "ordinarily" rely on that Rule rather than inherent authority. *Chambers*, 501 U.S. at 50. For the reasons in Sections I through III, the underlying conduct does not warrant sanctions under any standard.

### B.    A Filing Injunction Is a Last Resort That This Case Does Not Justify.

The Court should deny Defendants' requested permanent filing injunction. Mot. 23-24. Filing injunctions are tools of "last resort," used only for litigants who flood courts with frivolous filings that threaten the "administration of justice." *Klayman v. Obama*, 104 F.4th 300, 306, 309 (D.C. Cir. 2024) (requiring that prefiling injunctions be "targeted"). Courts reserve this "last resort" remedy for extreme cases: a litigant filing 600 to 700 lawsuits over a decade (*In re Green*, 669 F.2d 779, 781-82 (D.C. Cir. 1981)) or a litigant bringing more than 100 appeals in a single year (*Urban v. United Nations*, 768 F.2d 1497, 1499 (D.C. Cir. 1985)).

By contrast, the D.C. Circuit vacated a prefiling injunction entered after a litigant filed six duplicative lawsuits, finding that number insufficient to "threaten the courts' ability to manage their dockets." *Klayman*, 104 F.4th at 307; *see also Hooli v. Mitcham*, 2024 WL 4836419, at *7 (D.D.C. 2024) (following *Klayman*, denying prefiling injunction after five suits across four districts). If filing five or six complaints does not justify this remedy, then refiling one lawsuit in Defendants' designated forum after a non-merits dismissal should not either.

Defendants cite no D.C. Circuit authority to the contrary. Mot. 24. They rely on a lone unpublished Sixth Circuit case, which like the outlier cases in D.C., involved "over one hundred filings" totaling "thousands of pages," including "sexually explicit images." *United States ex rel.*

*Odish v. United States*, 843 F. App'x 748, 750-51 (6th Cir. 2021) (Mot. 24).  That is the type of extreme conduct prefiling injunctions address.  That is not this case.

An injunction drawn that broadly, for example, could threaten YMTC's right to pursue separate claims against Micron and DCI, already pending before this Court.  *Yangtze Memory Techs., Inc., et al. v. Micron Tech., Inc., et al.*, No. 1:25-cv-1795 (D.D.C. filed June 7, 2025).  It could also bar YMTC from seeking relief if Defendants publish new false statements.  Rule 11 sanctions must be "limited to what suffices to deter [improper] repetition."  Fed. R. Civ. P. 11(c)(4).  Such an open-ended injunction that could bar claims no court has found frivolous is not deterrence.  It is immunity for Defendants to engage in further misconduct.

## CONCLUSION

For the reasons above, the Court should deny Defendants' Motion for Sanctions.

Dated: March 16, 2026

Respectfully submitted,

QUINN EMANUEL URQUHART
   & SULLIVAN, LLP

By _____

      Robert M. Schwartz
      *Attorneys for Plaintiffs*

30