**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| YANGTZE MEMORY TECHNOLOGIES, INC., *et al.*,<br><br><br>Plaintiffs,<br><br>v.<br><br>STRAND CONSULT APS, *et al.,*<br><br>Defendants. | No. 25-cv-3554-CJN |

**DEFENDANTS' REPLY MEMORANDUM
IN SUPPORT OF THEIR MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................................1

II.   ARGUMENT............................................................................................................2

   A.   YMTC's Complaint is Barred By Collateral Estoppel ............................................2

      1.   Judge Wise's *Forum Non Conveniens* Dismissal Precludes This Action....2

      2.   Judge Wise's Denial of YMTC's Transfer Motion Bars This Action .........5

   B.   Dismissal is Warranted for Judicial Estoppel ...........................................................9

   C.   The CTT Terms Do Not Apply to YMTC's Lanham Act Claim ...........................11

      1.   YMTC's Claim Does Not Arise Out Of or Relate To Its *Use* of the CTT Website or Its Services.................................................................................11

      2.   YMTC'S Lanham Act Claim Does Not Arise Out Of or Relate To the CTT Terms..................................................................................................12

      3.   The CTT Terms are Inapplicable to Roslyn Layton ..................................14

   D.   Dismissal for *Forum Non Conveniens* and Lack of Personal Jurisdiction Are Separately Warranted...............................................................................................15

      1.   Denmark, Not D.C., Is the Appropriate Forum for This Case...................15

      2.   The CTT Terms Do Not Separately Create Jurisdiction Under the D.C. Long-Arm Statute ...................................................................................15

   E.   YMTC Lacks Standing to Pursue a Lanham Act Claim.......................................16

   F.   YMTC's Inability to Establish a Causal Connection Is Underscored by the Context in Which the CTT Publications Were Published .....................................20

   G.   YMTC's Lanham Act Claim Fails for Additional, Independent Reasons.............21

      1.   The CTT Publications are Not Commercial Speech..................................21

      2.   The Five Statements Identified in the Complaint Are Not False or Misleading.................................................................................................25

III.  CONCLUSION.......................................................................................................25

# TABLE OF AUTHORITIES

**Cases:**

*Aenergy, S.A. v. Republic of Angola*,
678 F. Supp. 3d 147 (D.D.C. 2023)......................................................................................2, 3, 4, 5

*Ariix, LLC v. NutriSearch Corp.*,
985 F.3d 1107 (9th Cir. 2021) ........................................................................................................23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................................21

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
571 U.S. 49 (2013)...................................................................................................................3, 9, 15

*Azima v. RAK Inv. Auth.*,
926 F.3d 870 (D.C. Cir. 2019)..................................................................................................13, 14

*Beach TV Props., Inc. v. Solomon*,
254 F. Supp. 3d 118 (D.D.C. 2017).................................................................................................10

*Bolger v. Youngs Drug Prods. Corp.*,
463 U.S. 60 (1983)..........................................................................................................................24

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1988).........................................................................................................................8

*Democracy Partners, LLC v. Project Veritas Action Fund*,
2025 WL 1088090 (D.D.C. Apr. 11, 2025).....................................................................................18

*Dr. Kenneth Ford v. NYLCare Health Plans of Gulf Coast, Inc.*,
141 F.3d 243 (5th Cir. 1998) ..........................................................................................................14

*Geomatrix, LLC v. NSF Int'l*,
629 F. Supp. 3d 691 (E.D. Mich. 2022)....................................................................................19, 20

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
485 F.3d 450 (9th Cir. 2007) ..........................................................................................................10

*HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*,
2021 WL 3115486 (S.D.N.Y. July 21, 2021) ..................................................................................8

*I.A.M. Nat. Pension Fund Benefit Plan A v. Cooper Indus., Inc.*,
789 F.2d 21 (D.C. Cir. 1986)............................................................................................................9

*In re McCormick & Co., Pepper Prods. Mktg. & Sales Pracs. Litig.*,
215 F. Supp 3d 51, 57-58 (D.D.C. 2016)....................................................................16, 17

*In re Orange, S.A.*,
818 F.3d 956 (9th Cir. 2016) ...............................................................................14

*Kabbash v. Jewelry Channel, Inc. USA*,
2015 WL 6690236 (C.D. Cal. Nov. 2, 2015)................................................................12

*Kabbash v. Jewelry Channel, Inc. USA*,
2016 WL 9132930 (C.D. Cal. Feb. 22, 2016)..........................................................11, 12

*King Drug Co. of Florence v. Cephalon, Inc.*,
2014 WL 982848 (E.D. Pa. Mar. 13, 2014)...................................................................8

*KLEO AG v. Rivada Networks, Inc.*,
148 F.4th 741 (D.C. Cir. 2025)..............................................................................17

*Lee ex rel. M.L. v. SEED Public Charter School*,
2020 WL 4923619 (D.D.C. Aug. 21, 2020) ...............................................................18

*\*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)............................................................................18, 19, 20

*Mizokami Bros. of Arizona v. Mobay Chem. Corp.*,
660 F.2d 712 (8th Cir. 1981) ................................................................................4

*Moretti v. Hertz Corporation*,
2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) ..............................................................12

*\*Moses v. Howard University Hosp.*,
606 F.3d 789 (D.C. Cir. 2010)............................................................................9,10

*Mun. Revenue Serv., Inc. v. Xspand, Inc*,
700 F. Supp. 2d 692 (M.D. Pa. 2010)........................................................................23

*Mwani v. bin Laden*,
417 F.3d 1 (D.C. Cir. 2005)...................................................................................10

*Nationwide Relocation Servs., Inc. v. Walker*,
2008 WL 11333712 (S.D. Fla. Feb. 29, 2008) ........................................................11, 12

*\*Neurotron, Inc. v. Am. Ass'n of Electrodiagnostic Med.*,
189 F. Supp. 2d 271 (D. Md. 2001)..........................................................................24

*Paulo v. Holder*,
669 F.3d 911 (9th Cir. 2011) ........................................................................................2

*\*Peak Health Center v. Dorfman,*
2019 WL 5893188 (N.D. Cal. Nov. 12, 2019) ........................................................23, 24

*\*Pers. Wealth Partners, LLC v. Ryberg*,
2024 WL 5286131 (D.N.D. Feb. 16, 2024) ..................................................................7

*Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
626 F.3d 973 (7th Cir. 2010) .......................................................................................5

*Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC.*
60 F. Supp. 3d 21 (D.D.C. 2014) .................................................................................6

*\*SCPS, LLC v. Law*,
770 F. Supp. 3d 11 (D.D.C. 2025) .............................................................................14

*Securities Indus. Ass'n v. Bd. of Governors,*
900 F.2d 360 (D.C.Cir.1990) .......................................................................................2

*Shah v. Guidehouse, LLP*,
2022 WL 741866 (D.D.C. Mar. 2, 2022) ...............................................................13, 14

*\*TrueBeginnings, LLC v. Spark Network Servs., Inc.*,
631 F. Supp. 2d 849 (N.D. Tex. 2009) ...................................................................11, 12

*United States v. Philip Morris USA Inc.*,
566 F.3d 1095 (D.C. Cir. 2009) .............................................................................22, 23

*\*Yamaha Corp. of Am. v. United States*,
961 F.2d 245 (D.C. Cir. 1992) .................................................................................2, 6

*Zaltz v. JDATE,*
952 F. Supp. 2d 439 (E.D.N.Y. 2013) .........................................................................12

**Other Authorities:**

D.C. Code § 13-423(a)(1) ...........................................................................................16
Rule 4(k)(2)................................................................................................... *passim*

## I.    <u>INTRODUCTION</u>

YMTC's Opposition confirms what was apparent from the outset: this case has no merit and no business in this Court.

The Opposition primarily rests on a forum selection clause in the CTT website's Terms of Use ("CTT Terms"). According to YMTC, the CTT Terms cure all the defects of its Complaint and provide a vehicle to escape issue preclusion, judicial estoppel, dismissal for *forum non conveniens*, and dismissal for lack of personal jurisdiction. The CTT Terms do nothing of the sort, and each of these issues independently requires dismissal.

*First*, this action was clearly precluded by Judge Wise's prior decision in California. Judge Wise determined that this case could not have originally been brought in this District because personal jurisdiction was lacking here and found that Denmark is a more appropriate forum than anywhere in the United States. YMTC's belated invocation of the CTT Terms cannot and does not undo those rulings because the CTT Terms *argument* is not a new *issue*. *Second*, the CTT Terms argument independently fails. YMTC's Lanham Act claim neither arises from nor relates to YMTC's "use" of the CTT website or to the CTT Terms themselves. That the CTT Terms are inapplicable to YMTC's claims also undermines its arguments against dismissal for *forum non conveniens* or lack of personal jurisdiction.

Nor does YMTC's Opposition change what this case is at its core: a Lanham Act false advertising case based on five cherry-picked statements from two public-policy focused publications, neither of which can be considered commercial speech. While YMTC makes conclusory assertions about alleged injury due to a nefarious-sounding "astroturfing" scheme, it fails to allege any facts sufficient to connect its alleged harms to the CTT Publications. Therefore, YMTC also lacks standing to pursue its Lanham Act claim and the claim itself fails on the merits.

## II.    ARGUMENT

### A.    YMTC's Complaint is Barred By Collateral Estoppel

#### 1.    Judge Wise's *Forum Non Conveniens* Dismissal Precludes This Action

YMTC does not dispute that in this Circuit "collateral estoppel applies to *forum non conveniens* dismissals." Mot. 10 (citing *Aenergy, S.A. v. Republic of Angola*, 678 F. Supp. 3d 147, 159 (D.D.C. 2023)). Instead, YMTC argues the CTT Terms constitute a new issue not previously decided. Opp. 15-19. This misunderstands collateral estoppel. As detailed in Defendants' motion, YMTC's terms of use argument does not present a new *issue*—it is simply an *argument* that YMTC could have raised regarding the same issue already decided in California: whether Denmark is the more appropriate forum. Mot. 10-15.

#### a.    YMTC's Terms of Use Argument Is Not a New "Issue"

YMTC's argument that the forum selection clause changes the issue (Opp. 16) is directly contrary to basic preclusion precepts. Collateral estoppel prevents the relitigation of *issues* that have been conclusively determined. *See Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992). Further, "once an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case." *Id.* (emphasis original); *see also Securities Indus. Ass'n v. Bd. of Governors,* 900 F.2d 360, 364 (D.C. Cir. 1990) ("preclusion … results from the resolution of a question *in issue,* not from the litigation of specific *arguments* directed to the issue"). Put another way, "[p]reclusion cannot be avoided simply by offering evidence in the second proceeding that could have been admitted, but was not, in the first." *Yamaha Corp.,* 961 F.2d at 254; *see also Paulo v. Holder*, 669 F.3d 911, 918 (9th Cir. 2011) ("If a party could avoid issue preclusion by finding some argument it failed to raise in the previous litigation, the bar on successive litigation would be seriously undermined."). YMTC does

2

not (and cannot) cite a single decision holding that collateral estoppel is inapplicable where the same issue might have been assessed differently if a different argument had been presented.

YMTC had every opportunity to present its forum selection clause arguments in the California Action—either in support of transfer or against Defendants' *forum non conveniens* motion. YMTC's failure to do so does not entitle it to avoid preclusion by raising the argument here for the first time. "[I]dentity of the issue is established by showing that the same general legal rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules." *Aenergy*, 678 F. Supp. 3d at 159 (citation omitted). YMTC does not dispute that the core facts here and in the California Action are indistinguishable—Defendants are domiciled in Denmark, the claim is the same Lanham Act claim, and evidence is largely in Denmark. Nor does YMTC deny that courts in the Ninth Circuit and this Circuit apply the same *forum non conveniens* analysis. Mot. 13, n.2. YMTC argues only that the forum selection clause might have triggered a different legal standard if it had been raised in California. But that argument is plainly insufficient to overcome preclusion. The same "general legal rules," *Aenergy*, 678 F. Supp. 3d at 159, would have applied had YMTC raised the forum selection clause in California. There, as here, Judge Wise would have had to assess the applicability of the forum selection clause before determining whether it affected the balancing of private and public interest factors in her *forum non conveniens* analysis (including whether to apply the *Atlantic Marine* standard YMTC discusses, Opp. 16-17). Because YMTC could have raised its forum selection clause argument in the California Action, in support of the same issue in dispute here, the prior ruling there is preclusive.

**b. YMTC Cannot Evade Judge Wise's Decision that Denmark Is a More Convenient Forum Compared to the United States, Not Just California**

Nor can YMTC defeat the preclusive effect of Judge Wise's *forum non conveniens*

3

dismissal on the theory that Judge Wise "never evaluated the convenience factors specific to this forum" or that "Judge Wise decided only that California was not the right forum." Opp. 18-19. Judge Wise's dismissal turned on a finding that this case belongs in Denmark rather than *the United States*. Judge Wise found that "[I]t would be burdensome for Defendants to travel … to come to the U.S." and travel to Denmark would "not necessarily change the burden on YMTC, whose representatives will need to travel [from China] regardless." Mot. Ex. A (Dkt. 22-1) at 11. Judge Wise also found that "Denmark has an interest in regulating the actions of their local corporations and their citizens when those actions were undertaken within Denmark" and "YMTC-USA has not demonstrated harms it incurred, as opposed to its Chinese parent company, YMTC." *Id.* at 12 (emphasis added). Notably, Judge Wise also found that the public and private interest factors favored Denmark: 1) a "significant portion of the relevant evidence is likely located in Denmark," and 2) "Defendants' blog posts, which they wrote while in Denmark, are at the core of Plaintiffs' case." *Id.* at 11-12. The same reasoning applies equally to the District of Columbia.

*Mizokami*, which YMTC erroneously says "mirrors" this case (Opp. 18), does not support a contrary conclusion. There, an Arizona district court found that Mexico, where most relevant events occurred, was a more convenient forum by balancing factors specific to Arizona (making a later analysis of the same factors to Missouri federal court a different issue). *Mizokami Bros. of Arizona v. Mobay Chem. Corp.*, 660 F.2d 712, 716 (8th Cir. 1981). By contrast, Judge Wise evaluated whether Denmark was more convenient than the United States, not just California.

Further, and as demonstrated in *Aenergy*, when a foreign jurisdiction has been found to be a more convenient forum than a court in the United States, a party cannot avoid preclusion by re-filing in a different state. The *Aenergy* court found that the S.D.N.Y.'s *forum non conveniens* dismissal precluded the same claims in the District of Columbia because Angola, not the United

4

States, had been found to be the more appropriate forum. *Aenergy,* 678 F. Supp. at 147. So too here: Because Judge Wise ruled that the doctrine of *forum non conveniens* required this case to be brought in Denmark rather than the United States, and YMTC never appealed that ruling, YMTC cannot now bring this case anywhere in the United States—including this District. And, in any case, Judge Wise also foreclosed bringing this case in this District by denying YMTC's motion to transfer on jurisdictional grounds. *See infra* Section II.A.2.b.

### 2.   Judge Wise's Denial of YMTC's Transfer Motion Bars This Action

Judge Wise's denial of YMTC's motion to transfer the California Action to this District independently bars this action. *See* Mot. 15-21. YMTC fails to show otherwise.

### a.   YMTC's Jurisdictional Arguments Are Not New Issues

YMTC argues that Judge Wise's decision does not preclude jurisdiction here because its "contractual-consent" and "D.C. long-arm" theories rest on different legal standards. Opp. 21-22, 23 n.3. Again, YMTC confuses a different argument with a different *issue*. The *issue* before Judge Wise was whether this case could have originally been brought in this District, which included analyzing this Court's personal jurisdiction over Defendants, or whether "other particular circumstances" existed to permit litigation in this District. Mot. 16-18. That is the same *issue* presently before this Court.

YMTC characterizes the issue decided by Judge Wise as "only whether Defendants had minimum contact with the United States under Rule 4(k)(2)." Opp. 21. Not so. Judge Wise expressly considered whether "this case could have been brought in the District of Columbia, including finding that the District of Columbia has personal jurisdiction over Defendants." Mot. Ex. A (Dkt. 22-1) at 5; Mot. 16. *See also Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.,* 626 F.3d 973, 978 (7th Cir. 2010) ("The statutory language [of 28 U.S. Code § 1404(a)] guides

the court's evaluation of the *particular circumstances* of each case and is broad enough to allow the court to take into account all factors relevant to convenience and/or the interests of justice.") (emphasis added). Judge Wise's personal jurisdiction analysis was thus one part of her determination on the issue of whether this case could have originally been brought in this District. Mot. 16-17. The sole *argument* that YMTC presented on that *issue* was that Defendants were subject to personal jurisdiction under Rule 4(k)(2). *Id. See also* Cal. Action, Dkt. 91 at 6.

Judge Wise specifically indicated she was prepared to consider any "other particular circumstances" that would have made transfer appropriate. Mot. Ex. A (Dkt. 22-1) at 8. At all points, YMTC could have brought other arguments to prove that the California Action could have originally been brought in this District, including personal jurisdiction under the D.C. long-arm statute or consent to jurisdiction through the CTT Terms, but YMTC only argued for jurisdiction under Rule 4(k)(2). [1] Judge Wise thus decided the same *issue* before this Court—whether this case can properly be brought in this District because it has personal jurisdiction over Defendants or whether "other particular circumstances" exist to permit litigation in this District—and YMTC is simply making a new argument it previously failed to make. *Yamaha*, 961 F.2d at 258.

The decisions YMTC cites do not support a contrary conclusion. *Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC*—which did not analyze issue preclusion—merely stands for the proposition that a party could be determined to have consented to personal jurisdiction if bound by an applicable forum selection clause. 60 F. Supp. 3d 21, 33-35 (D.D.C. 2014). Here, the forum selection clause YMTC references is not applicable to its claim, *see infra* at 11-14, which moots *Sabre*'s applicability. But for the sake of argument, YMTC could have argued that transfer was

---

[1] Indeed, and as discussed further in Defendants' concurrently-filed sanctions reply, 28 U.S.C. § 1404 specifically provides for transfer to "any district or division to which all parties have consented." *See* Sanctions Reply Section II.A.

warranted because Defendants consented to personal jurisdiction in this District. YMTC's failure to raise that *argument* in connection with the relevant *issue* is insufficient to overcome collateral estoppel. Mot. 17-19. To the extent YMTC relies on the timing of when it allegedly "discovered" the CTT Terms (Opp. 8-9), that does not avoid preclusion because the Terms—which have remained unchanged since 2019—were not a material change "following dismissal." Mot. 17-18.

YMTC's remaining cases are inapposite. In *Jackson,* collateral estoppel did not apply because the previous court dismissed for lack of *state court* jurisdiction, whereas the court at issue had to decide *federal court* jurisdiction—different issues. *Jackson v. Off. of the Mayor of D.C.*, 911 F.3d 1167, 1171 (D.C. Cir. 2018). Similarly, in *North*, the D.C. Circuit found that the district court's characterization of the issue as "whether plaintiff is entitled by law to particular documents" to be too broad because the *issues* were different. *North v. Walsh*, 881 F.2d 1088, 1095-96 (D.C. Cir. 1989). While both actions involved withheld documents, one involved a quashed trial subpoena and the other involved documents requested under the Freedom of Information Act—entirely different legal issues because the former requires relevance and necessity and the latter does not. *Id*. Here, by contrast, the *issue* of whether this Court has jurisdiction over this case such that it "could have been brought" in this District is identical.

Tellingly, YMTC does not cite a single case showing that a party can escape the preclusive effect of a transferor court's jurisdictional decisions by relitigating those issues in the requested transferee court. By contrast, *Personal Wealth Partners v. Ryberg* is instructive. There, the plaintiff filed an employment action in Minnesota state court, which was transferred to federal court in North Dakota. 2024 WL 5286131, at *2 (D.N.D. Feb. 16, 2024). The complaint included an unexecuted agreement containing a Minnesota forum selection clause. *Id*. After the transfer decision, the plaintiff purportedly discovered an executed version and sought re-transfer to

Minnesota, with no explanation for not previously raising the forum selection clause. *Id.* at *1. The court denied the motion, noting that a "court should not reopen issues decided in earlier stages of the same litigation." *Id.* at *3. The court also observed that the doctrine "applies with even greater force to transfer decisions" because "transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation," before finding that the plaintiff waived its forum selection clause arguments by failing to raise them in opposition to the motion to transfer. *Id.* (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)); *see also HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, 2021 WL 3115486, at *4 (S.D.N.Y. July 21, 2021) (rejecting argument that would "excuse a party's failure to make an available (and allegedly here conclusive) argument in the transferor court only to make the argument for the first time after the transferor court has analyzed and ruled on the motion to transfer"). As with the plaintiff in *Personal Wealth Partners,* YMTC provides no justification for failing previously to raise the forum selection clause, and so allowing the issue to be relitigated here would create the same "vicious circle of litigation" referenced by the court there.[2]

### b. The Issue of Jurisdiction Was Actually and Necessarily Determined

Because Judge Wise's *forum non conveniens* decision necessarily relied on rejection of YMTC's motion to transfer, YMTC's argument that its transfer motion was not "essential" to the "final outcome" because the "*forum non conveniens* dismissal produced the final judgment" (Opp. 23, citing *Bobby v. Bies,* 556 U.S. 825, 835 (2009)), is baseless.

Judge Wise's determinations on YMTC's transfer motion, inclusive of her jurisdictional

---

[2] Although *Personal Wealth Partners was* decided under the law of the case doctrine, courts have explained that this doctrine "operates in much the same manner as collateral estoppel" because "like collateral estoppel, the law of the case doctrine can only be applied where an issue was actually decided and, naturally, only forecloses relitigation of an identical issue later in the case." *King Drug Co. of Florence v. Cephalon, Inc.*, 2014 WL 982848, at *6 (E.D. Pa. Mar. 13, 2014).

findings, became final, appealable, and entitled to preclusive effect when they merged with the final judgment. *I.A.M. Nat. Pension Fund Benefit Plan A v. Cooper Indus., Inc.*, 789 F.2d 21, 24 (D.C. Cir. 1986). Deciding that YMTC could not have originally brought this case in this District due to lack of jurisdiction was "essential" to the judgment because it was a "threshold" inquiry necessary for a transfer to succeed. Mot. Ex. A (Dkt. 22-1) at 5. Had the transfer motion succeeded, the California Action would have been transferred to this Court and not dismissed. Denial of the transfer motion was also "essential" to the "final outcome" because a determination that the case should be transferred to D.C. would have necessarily resulted in Judge Wise's rejection of Defendants' *forum non conveniens* motion. A motion to transfer involves the same analysis as a *forum non conveniens* motion—both determine whether another forum is more appropriate. *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 50 (2013) ("Section 1404(a) is a codification of the [*forum non conveniens*] doctrine for … cases in which the transferee forum is another federal court"). Therefore, granting a transfer to D.C. would have been incompatible with a finding that the case belonged in Denmark.

**B.    Dismissal is Warranted for Judicial Estoppel**

YMTC was judicially estopped from taking inconsistent positions on jurisdiction (Mot. 21-22). Each of YMTC's arguments to the contrary fails.

*First*, YMTC argues that its positions are not inconsistent because "contractual consent and minimum contacts rest on different legal standards." Opp. 24. But the legal standards that govern YMTC's claims are wholly irrelevant to its *position* for judicial estoppel purposes. In *Moses*, judicial estoppel applied because Moses maintained two inconsistent positions: that he was a "proper plaintiff" for an employment discrimination claim even though he had filed for bankruptcy, meaning the trustee of his estate (and *not* Moses) "retain[ed] the sole authority" to be

9

a proper plaintiff. *Moses v. Howard University Hosp.*, 606 F.3d 789, 793, 799 (D.C. Cir. 2010). Similarly, YMTC's position that Defendants were subject to personal jurisdiction under Rule 4(k)(2) is flatly inconsistent with its position now that Defendants are subject to jurisdiction in this District. Mot. 22. *See also Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007) (Rule 4(k)(2) precluded when a party names "some other state in which the suit could proceed") (citation omitted); *Mwani v. bin Laden,* 417 F.3d 1, 11 (D.C. Cir. 2005) (same).

*Second*, YMTC incorrectly cites *Moses* to argue that judicial estoppel does not apply because its transfer motion was denied and thus its Rule 4(k)(2) argument did not "succeed." Opp. at 24-25. *Moses* does not define "success" as prevailing on the merits of an argument—despite successfully maintaining his position as a "proper plaintiff," Moses ultimately lost on summary judgment. *Moses*, 606 F.3d at 799. Here, YMTC succeeded because the California court accepted its position that Defendants were subject to Rule 4(k)(2). Mot. 22. The cases YMTC cites are inapposite. In *Beach TV Props., Inc. v. Solomon*, the court had *rejected* the argument that DC law applied, so the plaintiff's subsequent reliance on Virginia law was not an inconsistent position that the court had previously credited. 254 F. Supp. 3d 118, 126 (D.D.C. 2017). And in *Nat'l Parks Conservation Ass'n v. Semonite*, the court did not apply judicial estoppel because the defendants had not taken inconsistent positions. 422 F. Supp. 3d 92, 96 (D.D.C. 2019).

*Third*, YMTC argues that Defendants experienced no "unfairness" because Judge Wise declined to find personal jurisdiction under Rule 4(k)(2) (Opp. 25-26). But the *Moses* court found that the unfairness stemmed from the advantages Moses *could* have received from "set[ting] up a situation in which he could gain an advantage" despite later losing on the merits. 606 F.3d at 799. And YMTC does not deny that proceeding on a theory of nationwide contacts under Rule 4(k)(2) benefited YMTC because it is generally a more favorable standard for a plaintiff. Mot. 22.

10

**C.      The CTT Terms Do Not Apply to YMTC's Lanham Act Claim**

YMTC's terms of use argument separately fails because its claim does not arise out of and is not related to the CTT Terms, or YMTC's *use* of the CTT website. *See* Mot. 23-24.

### 1.      YMTC's Claim Does Not Arise Out Of or Relate To Its *Use* of the CTT Website or Its Services

The CTT Terms form a contractual relationship between Strand Consult and "users" of the CTT website governing the *use* of "Services," defined as "provid[ing] you with content, allow[ing] you to contact us, letting you sign up for our newsletter, and allowing you to share or 'like' our Site or its features with your social network." *See* Compl. Ex 5. YMTC's attempt to invoke the forum selection clause fails because YMTC does not (and cannot) allege that it was a *user* of the CTT website or its Services.

YMTC alleges only that it "accessed" the CTT website (Opp. 11) presumably to gather evidence for litigation. Courts routinely reject the argument that such "access" is sufficient to make a party a "user" subject to a website's terms of use. *See Nationwide Relocation Servs., Inc. v. Walker*, 2008 WL 11333712, at *3 (S.D. Fla. Feb. 29, 2008) (plaintiff not a "'user' of the website" where only "use" was "to collect the necessary materials for this case"); *TrueBeginnings, LLC v. Spark Network Servs., Inc.*, 631 F. Supp. 2d 849, 856 (N.D. Tex. 2009) (defendants not "users" where use was limited to investigating potential infringement; plaintiff "could have drafted the terms to expressly cover any 'access' or 'viewing' of its website but failed to do so").

The decisions YMTC cites do not support a different conclusion. In each, the claims directly implicated the claimant's active *use* of a website in a manner consistent with the website's purpose—a fact entirely absent here. In *Kabbash v. Jewelry Channel, Inc. USA*, the plaintiffs purchased jewelry from defendant's website—transactions that were the precise purpose of the site—under terms that "exclusively govern the sale of jewelry and other products sold to you."

11

2016 WL 9132930, at *1 (C.D. Cal. Feb. 22, 2016). The plaintiffs' claims that the site advertised "illusory" discounts were directly tied to use of the website for its intended purpose. 2015 WL 6690236, *1 (C.D. Cal. Nov. 2, 2015). Similarly, in *Moretti v. Hertz Corporation*, the plaintiff booked a rental car through Hotwire.com—engaging with the website for its intended purpose— before alleging he was induced to do so because of fraudulent misrepresentations on the website. 2014 WL 1410432, at *1 (N.D. Cal. Apr. 11, 2014). The court applied the site's terms because they expressly stated they "shall apply to all such transactions." *Id.* The parties in *Zaltz v. JDATE* did not contest the applicability of the website's terms, but plaintiff's claims were clearly all directly related to her active use of the defendant's dating website. 952 F. Supp. 2d 439, 456 (E.D.N.Y. 2013). In contrast to these decisions, YMTC's Lanham Act false advertising claim is not related to its *use* of the CTT website for its intended purpose and mere "access" of the website's content is plainly insufficient for YMTC to be considered a "user" under the relevant Terms. *Nationwide Relocation Servs.*, 2008 WL 11333712, at *3; *TrueBeginnings*, 631 F. Supp. 2d at 856.

### 2.   YMTC'S Lanham Act Claim Does Not Arise Out Of or Relate To the CTT Terms

YMTC's forum selection clause argument also fails because its Lanham Act claim does not "arise out of" or "relate to" the CTT Terms. Mot. 24. YMTC summarily asserts that its Lanham Act claim "relates to the Terms because it targets Content delivered through the Services the Terms define." Opp. 10. But the relevant dispute resolution provision covers any legal action arising out of or relating to the "Terms of Use," not mere access, and not the CTT website or its "content" generally. YMTC does not even attempt to show that its Lanham Act claim relates to the CTT Terms. Since the claim can be assessed and resolved without any reference to the Terms, it does not arise out of or relate to those terms.

In their motion, Defendants explained that YMTC has not alleged breach of the CTT Terms

or any agreement with Defendants. Mot. 24. In response, YMTC cites *Shah v. Guidehouse, LLP* to argue that a "plaintiff need not allege breach" and that "stripped of its label, YMTC's claim targets false statements Defendants published as Content through the Site that the Terms govern." Opp. 12. But *Shah* does not support such a broad application of a forum selection clause. The *Shah* court found the forum selection clause applied to discrimination claims only because the plaintiff alleged "a non-contractual motivation for a *contractually related outcome*," and because resolving Shah's claims "necessarily involve[d] interpreting the employment agreement." 2022 WL 741866, at *3 (D.D.C. Mar. 2, 2022) (emphasis added). Because YMTC has not identified any way in which its claim requires interpreting the CTT Terms, *Shah* does not support its argument.

*Azima*, which YMTC cites to argue that a "logical connection [to an agreement] alone suffices," Opp. 10, also does not support YMTC's position. There, the question was whether a settlement agreement's forum selection clause—covering "any dispute or claim arising out of, or in connection with, [the Agreement] or its subject matter or formation"—applied to hacking, conversion, and unfair competition claims. *Azima v. RAK Inv. Auth.*, 926 F.3d 870, 876 (D.C. Cir. 2019). The court found the clause applicable but only because the plaintiff conceded that the hacking was done "in connection with" the parties' mediation that resulted in the settlement agreement and, therefore, was "connected" to the agreement's "formation." *Id.* Because there is no such concession here (nor would any be reasonable), *Azima* does not apply. Moreover, the relevant provision in *Azima* is broader than the provision in the CTT Terms, and the court nonetheless rejected the argument that it should apply to all topics "expressly mentioned" in the agreement, finding that "the mere mention of an event does not make it the 'thing in dispute.'" *Id.* The same logic applies here, where YMTC's sole connection between its claim and the Terms is that "it targets Content delivered through the Services the Terms define." Opp. 10.

*Azima* and *Shah* demonstrate that even a non-contractual claim must bear some relationship to the scope contemplated by the contract for the dispute resolution provision to apply. Other courts agree. In *In re Orange, S.A.,* the Ninth Circuit affirmed that a forum selection clause covering disputes "arising out of or relating to the Agreement" did not apply to unfair competition claims because "nothing in the claims required the district court to interpret, let alone reference, the [agreement]." 818 F.3d 956, 962 (9th Cir. 2016). Similarly, in *Ford,* the Fifth Circuit found that an arbitration clause did not apply to false advertising claims because "the test for whether a tort claim 'relates to' a contract depends on whether the claim *could be* maintained without reference to the contract." *Dr. Kenneth Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 250 (5th Cir. 1998). As resolution of YMTC's claim requires no interpretation of the CTT Terms—and YMTC does not allege otherwise—it therefore does not "arise under" or "relate to" the Terms.

### 3.    The CTT Terms are Inapplicable to Roslyn Layton

YMTC concedes that Dr. Layton was not a party to the CTT Terms, but tries to sweep her in through the "closely related" doctrine. Opp. 13. But that doctrine, which "binds a non-party to a contract's forum selection clause where the non-party's conduct is closely related to the contractual relationship," requires that it be "foreseeable that [a non-party] would be bound by such clause." *SCPS, LLC v. L.*, 770 F. Supp. 3d 11, 39-40 (D.D.C. 2025) (citation omitted). The *SCPS* court refused to bind a non-party where no cited case suggested such a party could foresee being bound to the forum clause at issue and where the claims fell outside the relevant contract's scope. *Id.* at 33-37. The same applies here. YMTC cites no legal authority that an author can be bound to a website's terms of use simply because her work appeared there, or that an executive can be individually subject to the forum selection clause of her company's website. And, as discussed above, YMTC's Lanham Act claim falls outside the scope of the CTT Terms.

14

**D.      Dismissal for *Forum Non Conveniens* and Lack of Personal Jurisdiction Are Separately Warranted**

**1.      Denmark, Not D.C., Is the Appropriate Forum for This Case**

Even if YMTC's effort to bring this case here were not precluded by Judge Wise's prior ruling, this Court should nonetheless again dismiss it on grounds of *forum non conveniens.* The public and private interests—which are the same under D.C. and Ninth Circuit law—separately require dismissal on *forum non conveniens* grounds. *See* Mot. 13-14.

YMTC admits that "some of Judge Wise's findings—that Defendants live in Denmark, that evidence is there, that travel to the U.S. would be burdensome—apply to any U.S. court" (Opp. 18) but invokes the *Atlantic Marine* standard to argue that the CTT Terms forum selection clause removes private-interest factors from the analysis. *Id.* (citing *Atl. Marine*, 571 U.S. at 64). The forum selection clause is inapplicable here, *see supra* at 11-14, and so the *Atlantic Marine* standard does not apply. But even assuming *arguendo* that the *Atlantic Marine* standard applied, the public interest factors alone still overwhelmingly favor Denmark. YMTC's arguments to the contrary, such as that the "campaign injured YMTC's U.S. business relationships" and that YMTC has brought a "false-advertising claim arising under U.S. law" (Opp. 20)—are unavailing. The interest that D.C. would have in the harms incurred by a Chinese company and its California subsidiary do not outweigh the interest Denmark would have in a case involving Danish citizens with evidence and actions undertaken within Denmark. Mot. 14-15. And, as Judge Wise recognized, Danish courts provide an available remedy for YMTC's alleged injuries under the Danish Marketing Practices Act, Mot. Ex. A (Dkt. 22-1) at 10, which would govern a case filed in Denmark rather than the Lanham Act.

**2.      The CTT Terms Do Not Separately Create Jurisdiction Under the D.C. Long-Arm Statute**

15

YMTC's arguments that the D.C. long-arm statute separately confer jurisdiction fail because YMTC has not shown that its Lanham Act claim arose from business transacted in D.C. Mot. 25. YMTC again invokes the inapplicable CTT Terms to argue that it has sufficiently alleged a "contractual relationship" sufficient to establish "transacting business" under D.C. Code § 13-423(a)(1). Opp. 14. But YMTC cites no law that terms of use alone constitute "transacting business," and the D.C. long-arm statute otherwise requires both that "the claim arose from the business transacted in D.C." and minimum contacts with the District. Mot. 25. YMTC's claim does *not* arise from business transacted "in D.C." and YMTC does not dispute that the CTT website content is accessed by lawmakers, "media organizations," "commercial decision-makers," and "relevant stakeholders" (Compl. ¶ 27) from across the country.

### E.      YMTC Lacks Standing to Pursue a Lanham Act Claim

The Complaint must also be dismissed because YMTC lacks Article III and statutory standing for its Lanham Act claims (Mot. 27-33) and YMTC's opposition fails to show that it meets the standards for either.

*First,* YMTC fails to plead concrete and particularized competitive harm fairly traceable to Defendants as is required under Article III. Mot. 27-30. As YMTC acknowledges, Article III standing for a Lanham Act claim requires a "*chain of inferences* showing how a defendant's false advertising could harm plaintiff's business." Opp. 27 (quoting *In re McCormick & Co., Pepper Prods. Mktg. & Sales Pracs. Litig.*, 215 F. Supp 3d 51, 57-58 (D.D.C. 2016)). While YMTC claims the "Complaint more than sufficiently pleads such a causal link," Opp. 28, the Complaint offers only two data points: Defendants published the CTT Publications, and "[a]s a direct and foreseeable result of this targeted commercial pressure, YMTC's deal with original equipment manufacturer ('OEM') Customer #1 collapsed." *Id.* The Complaint provides no facts connecting

these conclusions. It does not allege that any YMTC customer, let alone "OEM Customer #1," ever saw the CTT Publications. And it does not allege the CTT Publications or any of the five challenged statements were relied upon by "OEM Customer #1" as reasons to back out of its alleged deal or buy from another manufacturer. YMTC's other allegation, that the CTT Publications "fueled a broad public campaign against YMTC," is also belied by the Publications themselves, which highlighted existing government sources that were already warning of the national security risks posed by YMTC. Mot. 9-10; 31-32.

The facts offered by YMTC also stand in stark contrast to decisions it cites in which a causal chain was established. In *KLEO AG v. Rivada Networks, Inc.*, the complaint alleged that defamatory statements were made at an industry conference widely attended by the relevant audience and on a podcast distributed on an authoritative news platform. 148 F.4th 741, 749 (D.C. Cir. 2025).[3] The complaint further alleged that potential commercial partners approached the plaintiff during the conference to express doubt about the business's viability and then refused to partner. *Id.* at 745. The D.C. Circuit found sufficient "facts to suggest that … the participants in the conference heard [the] statements, and that the statements had their intended effect," "[a]lthough the matter is close," and noted the complaint did not support "a potential alternative explanation." *Id.* at 749-51. No remotely similar facts are alleged here. YMTC does not allege *any* facts making it plausible that the relevant audience was even aware of the challenged statements—much less influenced by them.

*McCormick* further illustrates the deficiencies. There, direct competitors' products were positioned next to each other on grocery shelves, and the court found competitive injury plausible because "it is elementary that when a consumer chooses between two apparently similar products,

---

[3] *KLEO* involved F.R.C.P. 9(g), but the court applied the *Twombly* pleading standard. *Id.* at 748.

she will choose the lower price." 215 F. Supp. 3d at 56-57, 59. And YMTC is also wrong to rely on *Lee ex rel. M.L. v. SEED Public Charter School*. In that case, the complaint alleged that the plaintiff was injured through bullying and violence at a school that was managed by the defendant, who was responsible for training and supervising employees, for setting school policy, and for oversight of the school's anti-bullying policy. 2020 WL 4923619, at *4 (D.D.C. Aug. 21, 2020). Those factual allegations made it plausible that the injuries were fairly traceable to the defendant. Unlike *SEED*, the Complaint here alleges no facts connecting Defendants' conduct to the direct cause of YMTC's alleged harm: The decision of a single, independent third party (OEM #1) to cut ties with YMTC and purchase from others.

*Second,* and based on the same record, YMTC fails to allege Lanham Act statutory standing. YMTC does not deny that *Lexmark Int'l, Inc. v. Static Control Components*, *Inc.* sets the standard for establishing statutory standing under the Lanham Act but misstates the appropriate test. Opp. 32. Statutory standing under *Lexmark* requires "economic or reputational injury flowing *directly* from the deception wrought by the defendant's advertising," 572 U.S. 118, 132 (2014) (emphasis added), and "generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct." *Id.* at 133; Mot. 30-33. YMTC argues that statutory standing under *Lexmark* only requires that a defendant's actions were a "substantial factor" in bringing about the harm. Opp. 32. That misstates the law; YMTC cites no decision supporting "substantial factor" as the test for Lanham Act statutory standing anywhere, much less in this Circuit. [4]

While YMTC fails under either standard, the distinction between establishing statutory standing under the *Lexmark* framework and YMTC's proposed "substantial factor" analysis is

---

[4] YMTC only cites a case applying D.C. common law on causation and fraudulent misrepresentation. Opp. 32 (citing *Democracy Partners, LLC v. Project Veritas Action Fund*, 2025 WL 1088090, at *10 (D.D.C. Apr. 11, 2025)).

significant. The directness inquiry in *Lexmark* is a threshold question—whether a plaintiff has established a commercial injury that was *directly* caused by an advertisement such that the claim arises under the Lanham Act. Mot. 32-33. In other words, regardless of whether an advertisement was a "substantial factor," a plaintiff must first show that its injuries were *directly* caused by that advertisement, *Lexmark*, 572 U.S. at 132, to have standing to bring a claim under the Lanham Act.

YMTC fails to state any *facts* showing that its alleged harm was *directly* caused by the CTT Publications and thus has not established Lanham Act statutory standing. Instead, it relies only on the conclusory allegation that the collapse of its deal with OEM Customer #1 was the "direct and foreseeable result" of Defendants' two publications. Opp. 32-33. This is plainly insufficient, especially because YMTC has failed to show that any customers ever *saw* much less *relied* on the CTT Publications in making their purchasing decisions. *See Geomatrix, LLC v. NSF Int'l,* 629 F. Supp. 3d 691, 709 (E.D. Mich. 2022) (plaintiff's repeated and "identical recitation[s] that 'as a direct and proximate result of Defendant's false and misleading claims, Geomatrix has been damaged'" was "clearly conclusory and insufficient to establish a viable claim"), *aff'd*, 82 F.4th 466 (6th Cir. 2023). *See also* Mot. 32. For the same reasons, YMTC fails to show that the CTT Publications were *a* factor in consumer purchasing decisions, much less a "substantial" one.

YMTC's claim that its alleged harm was a "direct and foreseeable" result of the CTT Publications is also facially implausible. YMTC alleges the relevant audience "in the technology sector" "rel[ies] on … accurate information about technology products when making purchasing decisions" (Compl. ¶ 71) and that the "CTT publications' precise accusations about YMTC…caused purchasers of memory products to view YMTC as a threat and to conclude that sourcing from YMTC posted unacceptable risks" (Opp. 30), yet also alleges the risks identified in the challenged statements are "technologically-impossible" (*id.*). The Lanham Act requires "the

19

audience's belief in the disparaging statements," *Lexmark*, 572 U.S. at 138, but here the Complaint effectively concedes that the audience could not have believed the claimed assertions.

*Geomatrix* demonstrates what is missing here and how much more is needed. *See* Mot. 12. There, a wastewater treatment products manufacturer accused another of conspiring to disparage its products to influence state regulators. 629 F. Supp. 3d at 697-99. The core theory was that a "coordinated negative campaign" caused state regulators to view the products "with suspicion" and "withhold approval." *Id.* at 709. Thus, unlike here, the plaintiff alleged a direct chain between the campaign, its intended audience, and the resulting harm. Still, the defendant's motion to dismiss was granted because a "unique combination of internal and external variables" made it "impossible to trace a straight line" from the defendant's conduct to state regulators' decisions, 629 F. Supp. 3d at 710. So should this Court find here.

### F.    YMTC's Inability to Establish a Causal Connection Is Underscored by the Context in Which the CTT Publications Were Published

YMTC asks the Court to accept that its loss of a multi-million dollar deal was directly caused by five cobbled-together statements from a blog post and investigative report on a policy-focused website, which was never—so far as the Complaint alleges—read by the relevant customer. But the CTT Publications were one small voice joining a far more prominent chorus of critics in the U.S. government discussing national security risks from foreign semiconductor companies like YMTC. The "causation chain" that YMTC suggests is far too attenuated. Any alleged harm is far more plausibly attributable to other sources, including the U.S. government's own publications. *See* Mot. 28-29. YMTC has no adequate response.

YMTC never denies that many unrelated speakers criticized YMTC and argued that doing business with YMTC presented national security risks. Its own exhibits, which detail how prominent government sources warned of YMTC's risks to national security and applied political

pressure to discourage transactions with YMTC, prove as much. Mot. 9, 29. Even the "independent reporting" that YMTC touts (Opp. 28) itself observes that "U.S. officials have long been concerned about Chinese hardware and software companies collecting user data" and that "interviews with technologists, current and former government officials and national security experts confirm that Chinese technology products could pose espionage or data security risks." Compl. Ex. 1 at 4. That same article observes that YMTC's purported harms are chronologically tied to remarks by then-Senator Rubio, which came just one month before "Apple abandoned plans to use YMTC in iPhones." Compl. Ex. 1 at 5. Where the allegations of harm are "not only compatible with, but indeed … more likely explained by" a cause other than the defendant's conduct, dismissal for lack of standing is appropriate. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). This is such a case.

### G.     YMTC's Lanham Act Claim Fails for Additional, Independent Reasons

YMTC does not deny that a Lanham Act claim requires actionable false statements in a "*commercial advertisement*." *See, e.g.*, Opp. 35.[5] The CTT Publications are clearly political advocacy and policy-based analysis, and *not* advertisements. Mot. 35-37. YMTC's arguments that the CTT Publications are commercial speech because they were a stealth advertisement for Micron, Opp. 35-40, fail because they are contradicted by the plain text of the Publications.

### 1.     The CTT Publications are Not Commercial Speech

YMTC does not dispute that the determination of whether a publication qualifies as commercial speech is a matter of law determinable on a motion to dismiss. Mot. 42. YMTC agrees (Opp. 36) that commercial speech means "expression related solely to the economic interests of the speaker and its audience" or "speech proposing a commercial transaction." *United States v.*

---

[5] Contrary to YMTC's assertion (Opp. at 35), Defendants do not "take issue" with only *one* element of the Lanham Act claim. But it is absolutely the case that YMTC's claim fails the threshold false-commercial-speech element of a Lanham Act claim.

*Philip Morris USA Inc*., 566 F.3d 1095, 1118 (D.C. Cir. 2009). YMTC also concedes (Opp. 36) that the CTT Publications are *not* expressions related "solely to the economic interests" of their authors. And YMTC makes no effort to show how the CTT Blog Post could qualify as commercial speech. *See* Mot. 35-36 (explaining that the CTT Blog Post clearly is not commercial speech).

Instead, YMTC argues the "CTT Report is quintessential commercial speech because it proposes a particular transaction" by "mak[ing] an explicit and repeated commercial pitch for Micron …." Opp. 36. But YMTC's characterization is belied by the Report itself. For example, while YMTC argues that the CTT Report urges Apple to "source its chips from existing suppliers like Micron" or "source memory chips from non-Chinese chipmakers like Micron," (Compl. ¶ 58, Opp. 31) the Report in fact states (Compl. Ex. 4, at 4, 12):

> Ideally Apple will voluntarily end its partnership with YMTC. It can source its chips from existing suppliers like Micron, Kioxia, Samsung, SK Hynix, Western Digital, and Intel. Failing that, the report describes how US policymakers must restrict technology exports to and imports from YMTC.

> Ideally Apple will voluntarily end its partnership with YMTC. It can source memory chips from non-Chinese chipmakers like Micron, Kioxia, Samsung, SK Hynix, Western Digital, and Intel. However as Apple goes forward with a dangerous deal, U.S. policymakers should explore the following policy measures to mitigate the security risks of Apple's deal with YMTC and protect Apple users and others.

When viewed in context, two things are apparent. First, YMTC's claim that the CTT Report was an advertisement for Micron is implausible and hinges on disingenuous selective quotations. Far from positing Micron as the sole alternative, the Report lists several alternatives including Micron competitors. Second, the challenged statements are clearly incidental to the primary purpose of the publication: advocating for political action. The sentences immediately following YMTC's selected quotes posit proposed policy measures, which the Report discusses at length. Mot. 35-37. *See also* Compl, Ex. 4. The primary purpose of the CTT Publications is to critique YMTC's potential impact on foreign and domestic policy, *not* to advertise any products. *Id.* There

is no price, volume, attributes, ordering information or other indicia of a commercial transaction.

YMTC fails to provide a *single* example of a Lanham Act case where a similar policy-focused publication was found to be commercial speech and the decisions YMTC cites highlight this deficiency. *Philip Morris* involved corrective statements in "full-page advertisement[s] in thirty-five major newspapers" and "advertisements on a major television network." 566 F.3d at 1142; *see also Mun. Revenue Serv., Inc. v. Xspand, Inc,* 700 F. Supp. 2d 692, 700 (M.D. Pa. 2010) (referencing "advertisements"). *Ariix, LLC v. NutriSearch Corp.*, which YMTC calls a "similar 'stealth marketing case,'" (Opp. 23) addressed a ratings guide for nutritional supplements. 985 F.3d 1107, 1111 (9th Cir. 2021). These examples—newspaper advertisements, television commercials, and buyer's guides—are *actual* commercial speech concerning specific products offered for sale, not the CTT Report's policy advocacy.

YMTC urges the Court to evaluate the statements "within the context of the alleged scheme," calling CTT a "commercial façade" and "'front' for the sole purpose of advancing the economic interests of its paying sponsor, Micron." Opp. 36. But even assuming that YMTC could disregard the language of the Publications (which it cannot), YMTC's Complaint is still devoid of *factual allegations* supporting this supposed stealth commercial purpose. YMTC claims that the CTT Publications were "designed to disparage YMTC for Micron's financial gain" by "call[ing] on U.S. companies to end their business with YMTC and buy chips from other suppliers, including Micron, based on false security threats." Opp. 37. But as described above, the highlighted sections of the Report do not focus exclusively on Micron and in fact identify no fewer than six companies that do not pose the same security risks as YMTC.

The mere critique of a company is insufficient to convert non-commercial speech into commercial speech. For example, in *Peak Health Center*, the court found an "investigative report"

critiquing the plaintiff's products was not "commercial speech" despite being published on a website owned by the plaintiff's competitors, because the report contained no language that could "plausibly be characterized as advertising or promoting [defendant's employer's] own products (or anyone else's)." *Peak Health Center v. Dorfman,* 2019 WL 5893188, at *7 (N.D. Cal. Nov. 12, 2019). Similarly, in *Neurotron*, the court declined to find a trade journal article reviewing a medical tool to be commercial speech because the article's primary purpose was educational and "even if there is some commercial aspect of the article, it would not be considered commercial speech … because of its public significance." *Neurotron Inc. v. Am. Ass'n of Electrodiagnostic Med.,* 189 F. Supp. 2d 271, 275 (D. Md. 2001).  So too here: Because the Report is plainly policy advocacy, its incidental mentions of manufacturers other than YMTC cannot convert it into commercial speech.

YMTC's reliance on *Bolger v. Youngs Drug Prods. Corp.,* 463 U.S. 60 (1983), is misplaced. YMTC ignores the first *Bolger* requirement—an advertisement—and summarily states the CTT Report is commercial speech because it "references a specific product (YMTC's memory products), promotes Micron as the preferred alternative, and was created for an economic motive." Opp. 38. As shown in *Neurotron* and *Peak Health Center*, references to a specific product are insufficient to convert speech into a commercial advertisement. And the text of the CTT Report refutes YMTC's assertion that it "promotes Micron as the preferred alternative." Opp. 38.

YMTC's passing reference to an "economic motive" or to Strand Consult as a "profit-driven company," *id.* at 39, also misunderstands the nature of commercial advertising under the Lanham Act. YMTC conflates the "economic motivation" for commercial speech with *any* financial incentive, but just because speech is published for a profit motive—as is true for nearly every newspaper, book, magazine, and website—does not make it commercial. YMTC does not attempt to distinguish the decisions demonstrating this straightforward distinction. *See* Mot. 41.

24

**2.      The Five Statements Identified in the Complaint Are Not False or Misleading**

None of the five statements identified in the Complaint is actionably false. YMTC arguments turn on its representation that the statements "presuppose that YMTC's chips already have malicious technology" or identify "a *present* issue with YMTC's chips." Opp. 41-42. The actual challenged language says otherwise.

In context, each of the challenged statements addresses the risks posed by the Chinese government's relationship with YMTC, which the report posits could lead to compromised products. They are neither "present" statements about YMTC's chips nor technical representations about chip capabilities. For example, YMTC argues the CTT Report states YMTC's chips "have 'built-in and concealed vulnerabilities.'" Opp. 5, 41-42. But in full context, the passage references a scenario where potential, vulnerabilities were exploited and hypothesizes what "could" occur if YMTC's chips "*could* be similarly, intentionally compromised." Compl. Ex. 4 at 8. Similarly, YMTC argues the CTT Report states YMTC's chips "have a 'kill switch,'" but the actual statement does not mention YMTC *at all*:

> Electronics with embedded chips are enabled with a "kill switch," a feature to shut down the device upon the user's command. Such features, under Chinese military production, could be enabled or programmed to shut down remotely by an unauthorized Chinese government actor or another. Military hardware has been seemingly compromised by a kill switch in at least one known instance,[24] and in consumer devices. For example, a kill switch could shut off a phone used in a political demonstration or a critical device connected to a larger system, such as an electric grid.

In sum, as more fully explained in the Motion (Mot. 43-45), and not meaningfully rebutted by YMTC, the Complaint fails to allege false, actionable speech.

## III.      CONCLUSION

For the reasons stated here and in Defendants' Motion, YMTC's Complaint should be dismissed with prejudice under Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure, as well as on the basis of *forum non conveniens*.

25

April 6, 2026

Respectfully submitted,

*/s/ Michael L. Resch*
Michael L. Resch (D.C. Bar #481402)
*mresch@kslaw.com*
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, California 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

Dale Giali (D.C. Bar #436514)
*dgiali@kslaw.com*
Lena T. Colin (*pro hac vice forthcoming*)
*lcolin@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, California 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

Attorneys for Defendants Strand ApS
and Roslyn Layton

26

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on April 6, 2026, DEFENDANTS' REPLY

MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS was served on Plaintiffs

and their counsel via ECF to Plaintiffs' counsel as follows:

Robert M. Schwartz
*robertschwartz@quinnemanuel.com*
Aaron Perahia
*aaronperahia@quinnemanuel.com*
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

David E. Eiseman
*davideiseman@quinnemanuel.com*
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Evan Pearson
*evanpearson@quinnemanuel.com*
300 West Sixth Street, Suite 2010
Austin, Texas 78701-3901
Telephone: (737) 667-6100
Facsimile: (737) 667-6200

David Needham
*davidneedham@quinnemanuel.com*
1300 I Street NW
Washington, DC 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100

DATED: April 6, 2026

                              */s/ Michael L. Resch*
                              Michael L. Resch (D.C. Bar #481402)
                              KING & SPALDING LLP

27