# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| YANGTZE MEMORY TECHNOLOGIES CO., LTD., *et al.*,<br><br>       Plaintiffs,<br><br>v.<br><br>STRAND CONSULT APS, *et al.*,<br><br>       Defendants. | No. 25-cv-3554-CJN |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SANCTIONS

**TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................................1

II.   ARGUMENT..........................................................................................................2

        A.    YMTC's Attempt to Limit Judge Wise's Transfer Ruling Fails ................3

        B.    Judge Wise's Rejection of YMTC's Motion to Transfer—and the Specific
              Ruling on This District's Jurisdiction Over Defendants—Merged into the
              Final Judgment and is Binding on This Court ............................................9

        C.    YMTC's Attempt to Posture the Terms Of Use Forum Selection Clause
              Consent Theory and the D.C. Long-Arm Theory as New "Issues" Subject
              to "Different" Standards Fails...................................................................12

        D.    YMTC'S Complaint Is Also Precluded by Judicial Estoppel....................17

        E.    The Circumstances Indicate that YMTC Brought This Case for an
              Improper Purpose, Warranting Sanctions Under Rule 11(b)(1) ................19

        F.    YMTC's Conduct Is Sanctionable Under the Court's Inherent Power
              Based on YMTC's and its Counsel's Bad Faith ........................................21

        G.    Monetary Sanctions are Warranted Against YMTC and its Counsel........22

        H.    Injunctive Relief is Necessary to Deter YMTC........................................24

III.  CONCLUSION.....................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Ali v. Tolbert*,
   636 F.3d 622 (D.C. Cir. 2011) ...................................................................................21

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
   571 U.S. 49 (2013) ..................................................................................................11

*B & B Hardware, Inc. v. Hargis Indus., Inc.*,
   575 U.S. 138 (2015) .................................................................................................10

*Beach TV Props., Inc. v. Solomon*,
   254 F. Supp. 3d 118 (D.D.C. 2017) .........................................................................17

*Christianson v. Colt Indus. Operating Corp.*,
   486 U.S. 800 (1988) .................................................................................................10

*Danik, Inc. v. Hartmarx Corp.*,
   120 F.R.D. 439 (D.D.C. 1988) .................................................................................24

*Hatch v. Reliance Ins. Co.*,
   758 F.2d 409 (9th Cir. 1985) ......................................................................................1

*Hickey v. Scott*,
   738 F. Supp. 2d 55 (D.D.C. 2010) ...........................................................................22

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
   485 F.3d 450 (9th Cir. 2007) ...................................................................................17

*HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*,
   2021 WL 3115486 (S.D.N.Y. July 21, 2021) ..........................................................16

*I.A.M. Nat. Pension Fund Benefit Plan A v. Cooper Indus., Inc.*,
   789 F.2d 21 (D.C. Cir. 1986) ...................................................................................10

*Jackson v. Off. of the Mayor of D.C*
   911 F.3d 1167, 1171 (D.C. Cir. 2018). ....................................................................13

*John Akridge Co. v. Travelers Cos*
   944 F. Supp. 33 (D.D.C. 1996) ................................................................................21

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000) ..................................................................................6, 7

*King Drug Co. of Florence v. Cephalon, Inc.*,
   2014 WL 982848 (E.D. Pa. Mar. 13, 2014) .............................................................16

*Knipe v. Skinner
19 F.3d 72, 77 (2d Cir. 1994)................................................................................18

McLaughlin v. Bradlee,
602 F. Supp. 2d 1412 (D.D.C. 1985) ......................................................................1

*Moses v. Howard University Hosp.,
606 F.3d at 793, 799 .......................................................................................17, 18

Nat'l Parks Conservation Ass'n v. Semonite
422 F. Supp. 3d 92, 96 (D.D.C. 2019) ..................................................................17

North v. Walsh
881 F.2d 1088 (D.C. Cir. 1989)............................................................................12

*Pace v. Cirrus Design Corp.,
2025 WL 819006 (S.D. Miss. March 13, 2025) ...........................................1, 15, 23

*Pers. Wealth Partners, LLC v. Ryberg,
2024 WL 5286131 (D.N.D. Feb. 16, 2024) ...............................................10, 15, 16

Presidential Hosp., LLC v. Wyndham Hotel Grp., LLC,
333 F. Supp. 3d 1179 (D.N.M. 2018) ......................................................................4

Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.,
626 F.3d 973 (7th Cir. 2010) ...................................................................................4

S. Cat, Inc. v. W PR Mgmt., LLC,
537 F. Supp. 3d 193 (D.P.R. 2021).........................................................................8

Sabre International Security v. Torres Advanced Enterprise Solutions, LLC,
60 F. Supp. 3d 21 (D.D.C. 2014)........................................................................4, 14

Son Ly v. Solin, Inc.,
910 F. Supp. 2d 22 (D.D.C. 2012) .........................................................................15

Smith v. Scalia
44 F. Supp. 3d 28, 46 (D.D.C. 2014) .....................................................................23

Stewart Org., Inc. v. Ricoh Corp.,
487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)..............................................4

*Valdez v. Skinner,
144 F. Supp. 2d 663 (N.D. Tex. 2001) .........................................................19, 20, 23

Van Dusen v. Barrack,
376 U.S. 612 (1964)..................................................................................................6

*Vu v. Ortho-McNeil Pharmaceutical, Inc.*,
  602 F. Supp. 2d 1151 (N.D. Cal. 2009) ....................................................................7

*PC Specialists, Inc. v. Micros Sys., Inc.*,
  2011 WL 3475369 (S.D. Cal. Aug. 9, 2011) ............................................................8

*Schmid Lab'ys, Inc. v. Hartford Acc. & Indem. Co.*,
  654 F. Supp. 734 (D.D.C. 1986) ............................................................................13

*Smith v. ABN AMRO Mortg. Grp. Inc.*,
  434 F. App'x 454 (6th Cir. 2011) ..........................................................................10

*\*Washington Bancorporation v. Said*,
  812 F. Supp. 1256 (D.D.C. 1993) .......................................................................1, 2

*Williams v. Verizon D.C. Inc.*
  322 F.R.D. 145, 149 (D.D.C. 2017) ......................................................................23

*Yamaha Corp. of Am. v. United States*,
  961 F.2d 245 (D.C. Cir. 1992) ................................................................................9

*Yangtze Memory Technologies Co., LTD, et al. v. U.S. Dep't of Commerce, et al.*,
  1:25-cv-02997-LLA (D.D.C. Sept. 3, 2025) ..........................................................19

*Yangtze Memory Technologies Co., LTD, v. U.S. Dep't of Defense, et al.*,
  1:25-cv-04244-PLF (D.D.C. Dec. 5, 2025) ...........................................................19

**Statutes**

28 U.S.C. § 1404................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 4(k)(2)....................................................................................... *passim*

Fed. R. Civ. P. 11 .............................................................................................. *passim*

I.    **INTRODUCTION**

YMTC's response to the preclusive effect of the 28 U.S.C. § 1404 transfer ruling fails in just about every way imaginable. That sanctions are appropriate for filing this collateral action is beyond challenge, as a decision relied on by YMTC in its motion for transfer (*see* Cal. Dkt. 91 at 12 & 14 of 26) makes clear. *See Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 416 (9th Cir. 1985) (sanctions appropriate where "counsel's attempts to relitigate matters previously and finally determined demonstrate either a lack of understanding or a flagrant disregard of fundamental principles of [preclusion] and federalism"); *see also McLaughlin v. Bradlee*, 602 F. Supp. 2d 1412, 1417 (D.D.C. 1985); *Washington Bancorporation v. Said*, 812 F. Supp. 1256, 1275 (D.D.C. 1993); *Pace v. Cirrus Design Corp.*, 2025 WL 819006, at *10 (S.D. Miss. March 13, 2025) (sanctions imposed where second action attempted to re-litigate personal jurisdiction).

YMTC's answer to Defendants' sanctions motion is the equally sanctionable argument that Judge Wise's motion-to-transfer order somehow "confined," and "reserv[ed]" for another day whatever "other" reasons YMTC could later come up with to justify filing an identical complaint in this District. Opp. 18, 21, 25. This argument—underlying almost every point YMTC tries to make—is flatly wrong under both the plain language by which a section 1404(a) transfer is to be assessed and the manner in which Judge Wise actually assessed and ruled on the motion. Once the argument is unraveled, and with it the bulk of YMTC's arguments, YMTC's Opposition collapses.

What limited sub-arguments remain perform equally poorly. For example, Defendants had no duty to disclose the CTT website's Terms of Use forum selection clause in the California Action and YMTC cites no authority otherwise. In any event, the forum selection clause would not apply to YMTC's claim and, besides, YMTC waived any right to rely on it by filing the initial case in California. YMTC's additional arguments under their forum selection clause "contractual-

1

consent" theory (Opp. 14) or the D.C. long-arm statute fail. YMTC is precluded from re-litigating its transfer motion, whether on the single ground they raised in the California Action or the new grounds they attempt to raise now. YMTC is also wrong to claim that the legal standards that would be applied in California as to these new arguments are any different than what this Court would apply; both courts would assess all arguments as to whether this case could originally have been brought in this District using the same standard set out in 28 U.S.C. § 1404 (*i.e.*, whether this Court was in a "district or division where [the case] might have been brought or [is a] . . . district or division to which all parties have consented"). YMTC offers nothing even suggesting otherwise.

For these and other reasons detailed below and in Defendants' motion for sanctions, the issue of whether this case could have been brought in this District in the first instance was fully and finally determined by Judge Wise, there was no legal basis or proper purpose for YMTC and its counsel to file this action in contravention of Judge Wise's ruling, this motion should be granted, and the Court should set a schedule for further briefing on the appropriate sanction.

## II.    <u>ARGUMENT</u>

Proceeding as YMTC did here—contrary to clear issue preclusion law and with an improper purpose—demonstrates that sanctions are warranted under Rule 11(b)(2). Mot. 10-17; *Washington Bancorporation*, 812 F. Supp. at 1275. YMTC's arguments that it satisfied Rule 11's reasonable inquiry standard (Opp. 21) cannot be squared with its actions, especially since a "reasonable inquiry" would have readily "revealed that there was no basis in law or fact for the asserted claim." *Washington Bancorporation*, 812 F. Supp. at 1275.

YMTC argues that Judge Wise's ruling is not entitled to preclusive effect because (i) Judge Wise expressly limited her ruling, (ii) a forum selection clause in the CTT Terms of Use and the D.C. long-arm statute each provide a transfer basis not precluded by the California order; and (iii)

Judge Wise's denial of YMTC's motion to transfer was not binding on this Court because it was not necessary to the judgment entered in that case. Each of these arguments fails.

### A.    YMTC's Attempt to Limit Judge Wise's Transfer Ruling Fails

YMTC argues that Judge Wise's order on YMTC's transfer motion was somehow "confined," specifically "reserv[ing]" whatever "other" reasons YMTC could later come up with to argue again that this case could have been brought in this District in the first instance. Opp. 18, 21, 25. This argument pervades YMTC's opposition and underlies *almost every point* YMTC makes. *See, e.g.*, Opp. 1, 2, 6, 7, 12, 13, 18, 21, 25, 27. Equally significantly, the argument is entirely baseless, as any reasonable attorney would know—or would have learned after even elementary research. Among other things, it does not take into account (i) the motion YMTC brought in the California Action, (ii) the standards under which that motion was decided, or (iii) Judge Wise's order and the issue preclusion that necessarily follows.

### 1.    The Standards Applicable to YMTC's Motion to Transfer Clearly Encompass a Forum Selection Consent Argument and a D.C. Long-Arm Statute Argument

YMTC filed a motion to transfer in the California Action under 28 U.S.C. § 1404. Cal. Action Dkt. 91. Under section 1404, "a district court may transfer any civil action to any other district or division **where it might have been brought** or to any district or division to which all parties have **consented**." 28 U.S.C. § 1404(a) (emphasis added). Under this statutory language, the arguments YMTC could have made to support transfer are vast. As one court summarized:

> "Recognizing that what is convenient for one litigant may not be convenient for the other, the Supreme Court has taught that section 1404(a) 'is intended to place discretion in the district court to adjudicate motions for transfer according to [a] ... case-by-case consideration of convenience and fairness.'" *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010) (*quoting Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) ). "The statutory language guides the court's evaluation of the particular circumstances of each case and is broad enough to allow the court to take

> into account **all factors relevant** to convenience and/or the interests of justice." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d at 977. The **statute** permits a "flexible and individualized analysis," and affords district courts the opportunity to **look beyond a narrow or rigid set of considerations** in their determinations. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. at 29, 108 S.Ct. 2239.

*Presidential Hosp., LLC v. Wyndham Hotel Grp., LLC*, 333 F. Supp. 3d 1179, 1207 (D.N.M. 2018) (emphasis added).

Under this framework—which conforms to the express language of section 1404—YMTC could have argued, and Judge Wise would have assessed any arguments on, this District's personal jurisdiction over Defendants under any theory *or* any argument that Defendants have consented to this District's jurisdiction (based on a forum selection clause or otherwise). *See, e.g., Sabre International Security v. Torres Advanced Enterprise Solutions, LLC*, 60 F. Supp. 3d 21 (D.D.C. 2014).

As its own transfer motion confirms, YMTC readily understood the broad scope of the arguments that could be made—and that would be considered by Judge Wise—in support of the section 1404 motion. *See, e.g.,* Cal. Action Dkt. 91 at 3, 4, 6. To be sure, YMTC made the decision—the "strategic" decision (Opp. 19; *see also* MTD Opp. 24)—to proceed with the single argument that this District has jurisdiction over Defendants under Fed. R. Civ. P. 4(k)(2) (including a misplaced argument that Defendants waived personal jurisdiction and, therefore, consented to it) (Cal. Action Dkt. 91 at 6-7; *see also* Opp. 13). But there is no question that YMTC had every right to make any other supporting arguments, including a consent argument based on the CTT Terms of Use forum selection clause or a personal jurisdiction argument under the D.C. long-arm statute.

YMTC appears almost boastful that it made no other argument in the California Action in its transfer motion, but that eventually—after Judge Wise's ruling—it "discovered" the Terms of Use argument. Opp. 1-2, 7, 13. Now, as YMTC makes abundantly clear, it is making a "consent"

argument based on the forum selection clause. *Id*. 2, 9, 11, 17 ("forum selection clause creates jurisdiction through contractual consent—a basis that does not depend at all on the defendant's contacts"). But while YMTC tries its best to now depict the consent-based theory as a favorable *feature* of its opposition to this sanctions motion, it is absolutely a *bug*. First, consent is expressly stated in section 1404(a) as a ground for transfer and YMTC was duty bound to make this argument, if at all, *in its transfer motion* in the California Action.[1] Second, YMTC (inadvertently) admits the relevance of the forum selection clause *to its motion to transfer* when it disingenuously argues that the real problem here was that *Defendants*—having some sort of duty to inform Judge Wise of the CTT Terms of Use forum selection clause—failed to bring it to Judge Wise's attention as part of the transfer motion. *See, e.g.*, Opp. 2, 13. There is zero legal support for this specious duty-to-disclose argument—YMTC certainly cites none—and it fails on the merits. *See infra* at 8-9. Separately, though, the argument itself is an admission by YMTC that it believes the Terms of Use forum selection clause *was* relevant—not just as a specifically articulated transfer basis in section 1404 but also from YMTC's perspective—to Judge Wise's inquiry into the issue of whether this case could have been brought in this District in the first instance.

Grounds for transfer under section 1404 are vast and include consent. As detailed below, Judge Wise understood and applied that principle and her order reflected that fact.

### 2.    Judge Wise's Motion-To-Transfer Ruling Covers All Issues Raised Now By YMTC

YMTC argues that Judge Wise's motion-to-transfer ruling was specifically limited to a minimum contacts analysis under Rule 4(k)(2), and that she expressly did not—and would not—

---

[1] Though the word "consent" is literally stated in section 1404 as a basis for transfer, YMTC thought it important to state in its opposition that after Judge Wise denied the transfer motion, "YMTC's counsel *confirmed* that D.C. courts treat contractual consent jurisdiction and minimum contacts as independent bases for personal jurisdiction." Opp. 1 (emphasis added).

consider waivers, consents or "other particular circumstances" relating to personal jurisdiction. *See, e.g.*, Opp. 1, 2, 6, 7, 12, 13, 18, 21, 25, 27. Indeed, YMTC goes so far as to suggest that Judge Wise's decision was more in the nature of an invitation to YMTC to forage for such a consent, waiver or other circumstance and, if found, re-file the identical case in another jurisdiction. As YMTC puts it (Opp. 6-7), "[t]he phrases" from Judge Wise's order

> "without more" and "absent waiver or other particular circumstances" confirm that the ruling reached only the minimum contacts jurisdictional grounds before the court [, *i.e.*, Fed. R. Civ. P. 4(k)(2),] and left other grounds—including consent and waiver—open.

YMTC goes on to say that Judge Wise "express[ly] reserve[d]" such issues. Opp. 18, 21; *see also id.* at 25 ("confined her ruling").

The argument is truly frivolous; the scope of the California transfer motion proceedings was commensurate with the broad standard set out in section 1404, and Judge Wise made no reservations or limitations, express or implied, on the proceedings or her order. In the order, Judge Wise quotes the relevant broad standard from 28 U.S.C. § 1404(a) that she applied, a standard coterminous with the section 1404 standard discussed, *supra*, in section II.A.1:

> Even where venue is proper, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division *where it might have been brought or to any district or division to which all parties have consented*." 28 U.S.C. § 1404(a). The purpose of section 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964) (internal citations and quotation omitted). A motion for transfer lies within the broad discretion of the district court and must be determined on a case-by-case basis. *See Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498-99 (9th Cir. 2000). *The moving party has the burden of showing that the case could have been brought in the transferee district and that convenience and fairness warrant transfer. Id.*; *Vu v. Ortho-McNeil Pharmaceutical, Inc.*, 602 F. Supp. 2d 1151, 1155-56 (N.D. Cal. 2009).

Mot. Ex. B (Dkt. 23-2) at 4-5 (emphasis added). Again, YMTC made the strategic decision only to argue Fed. R. Civ. P. 4(k)(2) personal jurisdiction to demonstrate that the action could have been brought in this District in the first instance (*see, e.g.*, Opp. 1, 19; MTD Opp. 24)—and did not argue consent via the forum selection clause or D.C.'s long-arm statute—but it is beyond question that those arguments would be appropriate to raise under section 1404 and that Judge Wise was prepared to entertain any arguments relevant to YMTC's attempt to meet its burden under the motion. Judge Wise specifically quoted section 1404's language providing that consent could be sufficient. And YMTC's forum selection clause theory is, of course, an argument that Defendants consented to this District's jurisdiction. Opp. 2, 9, 11, 17.

In her concluding paragraph on the transfer motion—in the very language that YMTC seizes on in its misguided argument—Judge Wise confirms that YMTC failed to meet its burden taking into account the *full spectrum* of arguments YMTC could have raised to demonstrate that this case could have been filed in this District in the first instance:

> The Court finds that this case could not have been brought in the District of Columbia, because, **without more**, the District of Columbia would not have personal jurisdiction over Defendants for this particular dispute (**absent waiver or other particular circumstances**). Accordingly, the Court denies the motion to transfer.

Mot. Ex. B (Dkt. 23-2) at 8 (emphasis added). In other words, Judge Wise was fully prepared to consider arguments—consistent with section 1404 jurisprudence—relating to waiver or consent or the D.C. long-arm statute, but, ultimately, YMTC did not offer them, and failed to meet its burden. Judge Wise never *excluded* any arguments and certainly did not reserve any arguments for another lawsuit. YMTC's assertions about the meaning of Judge Wise's language are not only disingenuous on their face but they flip issue preclusion jurisprudence on its head, green-lighting a litigant to hold back arguments on the same issue for later litigation in an identical collateral

action between the same parties. YMTC provides no basis in fact or law for such a reading of the order or the result that follows from it.

YMTC's alternative argument that the real problem here is that *Defendants* had a duty-to-disclose the forum selection clause but failed to do so is equally meritless. As a threshold matter, the forum selection clause is irrelevant because YMTC's claim is not covered under the Terms of Use. YMTC is not suing for a breach of the Terms of Use or for actual use of the CTT website or for any Services provided to YMTC from the website. See MTD Section II.B.1; MTD Reply Section II.C. Moreover, a forum selection clause is waivable. *See, e.g., S. Cat, Inc. v. W PR Mgmt., LLC*, 537 F. Supp. 3d 193, 195 (D.P.R. 2021); *PC Specialists, Inc. v. Micros Sys., Inc.*, 2011 WL 3475369, at *3 (S.D. Cal. Aug. 9, 2011) ("[A] party may obviously waive a forum selection clause"). As YMTC acknowledges, it was able to find the plainly visible and accessible forum selection clause (Opp. 1-2, 7, 13), which YMTC agrees had been in place for years before this dispute arose (*id*. 8).[2] By filing its action in California, YMTC clearly waived the forum selection clause, and there is no obligation on Defendants to try to enforce it (Defendants would have every right to waive it, too) even assuming it applied to YMTC's Lanham Act claim (it does not). It is also notable that YMTC argued in the California Action (in order to keep that case alive and in California) that Defendants "consented" to personal jurisdiction there via a waiver of personal jurisdiction (Opp. 13), but YMTC is now scrambling to *overcome* the California Action and the motion to transfer ruling there by claiming, incredibly, that YMTC had a duty to disclose a non-relevant forum selection clause that would have purportedly sent the case to this District.[3]

[2] Given that the Terms of Use forum selection clause predates by many years the dispute underlying this case, it is no surprise that YMTC no longer claims that it fits into the narrow exception to issue preclusion available in those circumstances where there was a *subsequent* relevant development. *See* Mot. 12-13.

[3] In another attempt to search for hidden meanings in Judge Wise's decision, YMTC argues that Judge Wise "rejected" the "proposed language" in the proposed judgment submitted by

Ultimately, and in the only manner that makes sense under the law, the issue of whether this case could have been brought in this District in the first instance was fully litigated and was conclusively and finally determined in the California Action based on YMTC's transfer motion and the law set out in 28 U.S.C. § 1404. Judge Wise ruled that this case could *not* have been brought in this District in the first instance because of a lack of personal jurisdiction and because of zero showing by YMTC of any other "circumstances" that would otherwise permit the case to be filed in this District (*e.g.*, consent, waiver). YMTC's argument, on the other hand, requires concluding that a federal judge permitted (invited) a litigant to hold back arguments on an issue for later litigation against the same parties, exempting the California Action from issue preclusion principles. Among other things, that would be plainly contrary to "the purpose for which civil courts had been established, [*i.e.*,] the conclusive resolution of disputes within their jurisdiction." *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (the "objective" of collateral estoppel is "judicial finality").

### B. Judge Wise's Rejection of YMTC's Motion to Transfer—and the Specific Ruling on This District's Jurisdiction Over Defendants—Merged into the Final Judgment and is Binding on This Court

Judge Wise's motion-to-transfer order is binding on this Court and supports issue preclusion. YMTC argues that issue preclusion should not apply because "Judge Wise's jurisdictional finding does not bind this Court" on the theory that it was not "necessary or essential

---

Defendants. Opp. 7. That proposed judgment included language that the dismissal was "without prejudice to refiling in Denmark," which the court's judgment did not include. *Id*. But the final judgment Judge Wise entered was a standard one-sentence judgment providing no substantive rulings ("The Court having dismissed the operative complaint as to all Defendants, IT IS HEREBY ORDERED AND ADJUDGED that the action is DISMISSED as to all Defendants"). Mot. Ex. A, Cal. Action Dkt. 105. Judge Wise did not enter *either* side's more fulsome proposed judgments. *See* Cal. Action Dkt. 102-1 and Dkt. 104-1. Nothing about the selected form of judgment entered undermines or changes the underlying motion-for-transfer order Judge Wise issued, *i.e.*, that the Unites States—which necessarily includes this District—was not an appropriate forum, because Denmark was the more appropriate jurisdiction, and that there was no jurisdiction over the Defendants in the United States, which necessarily means there is no jurisdiction in this Court.

to the judgment" because dismissal in California was based on *forum non conveniens*. Opp. 16. YMTC's arguments have no legal basis. Judge Wise's decision on YMTC's motion to transfer— including the personal jurisdiction ruling—was a final decision of the California court that was subsumed in the court's final judgment.

It is axiomatic that interlocutory orders, such as a denial of a motion to transfer, merge into a final judgment that is reviewable upon appeal. *See, e.g., I.A.M. Nat. Pension Fund Benefit Plan A v. Cooper Indus., Inc.*, 789 F.2d 21, 24 (D.C. Cir. 1986). *See also Smith v. ABN AMRO Mortg. Grp. Inc.,* 434 F. App'x 454, 464 (6th Cir. 2011) ("[A]ppeal of a final judgment draws into question all prior non-final rulings and orders" including denial of transfer), *cert. denied*, 182 L. Ed. 2d 636 (2012). Collateral estoppel applies "when an issue of fact or law is actually litigated and determined by a valid and **final judgment**, [] the determination is essential to the judgment, [and] the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015) (emphasis added); *see also, e.g., Pers. Wealth Partners, LLC v. Ryberg*, 2024 WL 5286131, at *2 (D.N.D. Feb. 16, 2024) (preclusion through the law of the case doctrine "applies with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation") (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)).

Here, Judge Wise rejected YMTC's motion to transfer based on her determination that courts in this District could not exercise personal jurisdiction over Defendants and, therefore, the California Action could not have originally been brought in this District. Mot. Ex. B (Dkt. 23-2) at 8. That determination was "essential to the judgment"—YMTC itself admits (Opp. 1) that it was a "threshold" inquiry necessary for a transfer to succeed. And had the transfer motion succeeded,

the California action would have been transferred and *not* dismissed.

In a related, though entirely unfounded argument, YMTC asserts that if Judge Wise had never ruled on the transfer motion—*i.e.*, had ruled only on the *forum non conveniens* motion—YMTC would not now have to deal with her personal jurisdiction decision before this Court. Opp. 16. But Judge Wise *did* rule on the transfer motion. Not only did Judge Wise rule on the transfer motion and not only was it a motion that YMTC filed (Cal. Action Dkt. 91), but YMTC specifically requested the California court to rule *only* on the transfer motion, and *not* rule on the *forum non conveniens* motion. *Id*. 5.

Moreover, the ruling on the motion to transfer *was* essential to the ultimate outcome of the California Action. Had YMTC's transfer motion succeeded, the California Action would have been transferred to this District and *not* dismissed. And a determination that this case should be transferred to this District would have necessarily resulted in Judge Wise's rejection of Defendants' *forum non conveniens* motion. Significantly, a motion to transfer involves the same analysis as a *forum non conveniens* motion—both determine whether another forum is more appropriate. *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 50 (2013) ("Section 1404(a) is a codification of the [*forum non conveniens*] doctrine for … cases in which the transferee forum is another federal court"). Therefore, granting a transfer to D.C. would have excluded a finding that the case belonged in Denmark.

The motion-to-transfer order, including its personal jurisdiction ruling and the arguments that YMTC could have but did not raise, unquestionably merged into the judgment. YMTC cannot escape its preclusive effect by conjuring a procedural posture that does not exist.

**C.**     **YMTC's Attempt to Posture the Terms Of Use Forum Selection Clause Consent Theory and the D.C. Long-Arm Theory as New "Issues" Subject to "Different" Standards Fails**

As a companion to its argument that Judge Wise's order was limited, YMTC asserts that consent via the forum selection clause or jurisdiction via the D.C. long-arm statute are new *issues* that are subject to *different* legal standards than Judge Wise applied and, accordingly, are not subject to issue preclusion. The argument is not just wrong because YMTC is precluded from re-litigating *any* arguments in support of their section 1404 transfer motion (it's all the *same* issue), but also because there is no basis to argue that the legal *standards* that would be applied in California are or would be different than what this Court would apply.

That the purportedly new arguments might have different standards than are applied to a Fed. R. Civ. P. 4(k)(2) personal jurisdiction analysis is *not* the relevant inquiry. Rather, the issue is whether the new arguments should have been raised, if at all, before the court from which the preclusive ruling was issued (yes, they should have) and whether those arguments would have been assessed under legal standards different from this Court. As to *those* relevant questions, Judge Wise was fully prepared to entertain all of YMTC's arguments as to whether this case could have been filed in the first instance in this District and Judge Wise would have applied the exact same standard as this Court, *i.e.*, the standard as set out in 28 U.S.C. § 1404 ("other district or division where it might have been brought or to any district or division to which all parties have consented"). *See also Schmid Lab'ys, Inc. v. Hartford Acc. & Indem. Co.*, 654 F. Supp. 734, 736 (D.D.C. 1986) ("In considering the merits of a transfer motion, the Court may consider factors subsumed by purpose of the statute as well as the factors enumerated in section 1404(a)"). YMTC offers absolutely nothing even suggesting otherwise. The standard under which those arguments would have been assessed by this Court is the same 28 U.S.C. § 1404 analysis pressed

by YMTC in the California Action and used by Judge Wise, as well as other rules assessing consent and minimum contacts.

YMTC relies on three decisions for its new issue/new standard argument. None comes close to supporting YMTC.

*North v. Walsh* makes abundantly clear that YMTC's different issue/different standard argument is *not* applicable here. 881 F.2d 1088 (D.C. Cir. 1989). In *North*, the court ruled that issue preclusion did not apply because the standard for determining whether a grand jury target may obtain documents *via a trial subpoena* is entirely different from determining whether a citizen may obtain records held by the government via a *Freedom of Information Act request*, even where the documents sought are the same and the grand jury target is the same person issuing the FOIA request. Among other things, in the trial subpoena setting, the subpoenaing party needs to demonstrate relevance and necessity. *Id*. at 1095-97. In the FOIA context, however, there is no need to show relevance and necessity. *Id*. The issue is solely whether the documents are properly withheld by the government. *Id*. The *North* court held that the district court erred in determining that the prior ruling on the trial subpoena precluded a later, separate analysis and decision on the materially different standard applicable to the FOIA request.

Because all arguments made in support of a section 1404 transfer motion are governed by section 1404, nothing like the *North* record is present here. Here, the standard applied and issue raised in YMTC's transfer motion—litigated under the rules and governing principles of section 1404—subsumed the new arguments YMTC attempts to make now. YMTC could have (and should have if it really thought it was relevant) argued the Terms of Use forum selection clause consent and the D.C. long-arm statute minimum contacts to demonstrate to Judge Wise that this case could have been brought in this District in the first instance. Those arguments would have

13

been fully appropriate arguments to make in a transfer motion, where it was YMTC's burden to demonstrate that this case could have been brought in this District. Indeed, they are the exact arguments YMTC should have made if YMTC thought they were meritorious.

The trick in YMTC's different issue/different standard argument is easily exposed: the fact that a forum selection clause consent argument is not the same as a Fed. R. Civ. P. 4(k)(2) personal jurisdiction argument does *not* mean that the California court would have applied a different standard to the forum selection clause than this Court. Both courts would have assessed the forum selection clause consent argument similarly, in California as part of the section 1404 transfer motion and here as part of a personal jurisdiction motion.

Likewise, in *Jackson v. Off. of the Mayor of D.C.* collateral estoppel did not apply because the previous court dismissed for lack of *state* court jurisdiction, whereas the court at issue had to decide *federal* court jurisdiction—and the court correctly recognized that those two different jurisdictional questions raise different issues based on different standards. 911 F.3d 1167, 1171 (D.C. Cir. 2018). Here, the *issue* of whether this case could have been brought in the first instance in this District—including as to 4(k)(2) personal jurisdiction, D.C. long-arm statute minimum contacts, waiver, consent, etc.—is all part of the same issue governed by (or that would have been governed by had YMTC made the arguments) the same standards applicable in the California Action as part of YMTC's motion to transfer.

That leaves just the *Sabre* decision. *Sabre International Security v. Torres Advanced Enterprise Solutions, LLC*, 60 F.3d 21 (D.D.C. 2014). YMTC cites that decision as if it ties together the different issue/different standard argument. But that case does not even address issue preclusion, and certainly not when a different issue/different standard may be a defense against issue preclusion. *Sabre* is a straightforward personal jurisdiction decision with different arguments

14

being presented and considered to demonstrate a court's personal jurisdiction over defendants. *Id*. 30 (general jurisdiction), 30-31 (minimum contacts), 32 (forum selection clause). The *Sabre* court confirms the unremarkable point that when a court is deciding whether a given defendant is properly before the court, it can assess arguments of personal jurisdiction and, separately, *consent* via a forum selection clause.[4] *Id*. 32. Ultimately, *Saber* is fully supportive of Defendants on this motion (and the concurrent motion to dismiss) because it recognizes that whether a given defendant is properly before the court can encompass different arguments. Here, that means personal jurisdiction, any applicable long-arm statue, consent via a forum selection clause, waiver, etc. All of those arguments were in play in the California Action and could have been raised and argued by YMTC. That YMTC failed to raise or develop all arguments available to it does not undermine issue preclusion, it necessitates it.[5]

---

[4] In addition to the dispositive issue preclusion that applies in this case, two additional factors entirely distinguish the *Sabre* court's ruling that defendants there had consented to jurisdiction via a forum selection clause. First, the *Sabre* plaintiff filed its one and only case in the forum set out in the forum selection clause. *Sabre*, 60 F. Supp. 3d at 32. The plaintiff did not waive the provision as YMTC did here when it filed its first case in California. Second, there was no argument by any of the parties that the underlying dispute (if not the individual defendants) did not fit within the agreement that contained the forum selection clause. The case directly implicated core obligations set out in the underlying agreement. *Id*. 25-26. Here, of course, YMTC's Lanham Act claim is not within the scope of the CTT Terms of Use or its forum selection clause. *See* MTD Reply Section II.C.

[5] In the end, YMTC does not (and cannot) cite a single decision that supports its argument that the application of a different legal standard due to now raising an argument not previously raised constitutes a new issue for issue preclusion purposes. An absence of any such decisions should have signaled to YMTC's counsel during its prefiling inquiry that there is no legal basis for this argument. *See also Son Ly v. Solin, Inc.*, 910 F. Supp. 2d 22, 32 (D.D.C. 2012) (ordering plaintiffs to show cause as to why Rule 11 sanctions should not be issued where "even the most cursory of legal inquiries would have uncovered" the lack of jurisdiction); *Pace*, 2025 WL 819006, at *10 (Rule 11 sanctions warranted where "elementary legal research on personal jurisdiction would have prevented [the second] suit from being filed" and "[e]ven if" the plaintiff's counsel "believed that the [prior court] ruled incorrectly, he should have understood that issue preclusion would bar him from filing an identical action"). What is more, because YMTC uses its erroneous different issue/different standard argument to attempt to distinguish *each* of the numerous issue preclusion decisions cited in Defendants' motion, YMTC is left with no meaningful response to that robust collection of court decisions. Opp. 14 ("Every case that Defendants cite pertinent to the scope of the 'issue' involves a party who raised a new argument under the ***same legal standard*** that the first court applied—not a party who invoked a ***different doctrine*** governed by a ***different legal standard***.") (emphasis original).

By contrast, *Personal Wealth Partners* clearly explains the obvious flaws in YMTC's approach here. There, the court precluded the re-litigation of the jurisdictional findings made on a motion to transfer when a party could, but failed to, raise an allegedly applicable forum selection clause. There, the plaintiff originally filed an employment action in Minnesota state court, which the defendant successfully transferred to the District of North Dakota. *Personal Wealth Partners, LLC v. Ryberg*, 2024 WL 5286131, at *2 (D.N.D. Feb. 16, 2024). Attached to the complaint was an unexecuted version of the plaintiff's employment agreement containing a Minnesota forum selection clause. *Id.* After the Minnesota court had issued its decision on the motion to transfer, the plaintiff purportedly discovered an executed version of the operative employment agreement and sought to have the case re-transferred back to Minnesota with no explanation of why it did not previously raise the applicability of the forum selection clause. *Id.* at *1. The North Dakota court denied the motion to re-transfer, citing the law of the case doctrine, and finding that a "court should not reopen issues decided in earlier stages of the same litigation" in the interest of judicial economy. *Id.* at *3.

In reaching its decision, the *Personal Wealth Partners* court specifically noted that the plaintiff waived its forum selection clause arguments by failing to raise them in opposition to the motion to transfer and rejected the plaintiff's arguments that the forum selection clause warranted revisiting the transfer decision because it "almost certainly would have reframed the parties' arguments." *Id.*; *see also HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, 2021 WL 3115486, at *4 (S.D.N.Y. July 21, 2021) (rejecting plaintiff's advocation for a "rule of law that would excuse a party's failure to make an available (and allegedly here conclusive) argument in the transferor court only to make the argument for the first time after the transferor court has analyzed and ruled

on the motion to transfer").[6]

As with the plaintiffs in *Personal Wealth Partners,* YMTC provides no explanation or justification for its failure to raise arguments related to the forum selection clause in support of its motion to transfer. As with the plaintiffs in *Personal Wealth Partners,* YMTC is precluded from now raising the forum selection clause to relitigate the California court's transfer decision.

### D.    YMTC'S Complaint Is Also Precluded by Judicial Estoppel

YMTC was judicially estopped from taking inconsistent positions on jurisdiction, and any reasonable lawyer conducting a modicum of research would have known this. Mot. 17-19. Each of YMTC's arguments to the contrary fails.

*First*, YMTC argues that its positions are not inconsistent because "contractual consent jurisdiction and minimum contacts rest on different legal standards." Opp. 11. But the legal standards that govern YMTC's claims are wholly irrelevant to the application of judicial estoppel. In *Moses*, judicial estoppel applied because Moses maintained two inconsistent positions that applied to different claims: that he was a "proper plaintiff" for an employment discrimination claim even though he had filed for bankruptcy, meaning the trustee of his estate (and not Moses) "retain[ed] the sole authority to sue and be sued on its behalf." *Moses v. Howard University Hosp.*, 606 F.3d at 793, 799. Similarly here, YMTC's position that Defendants were subject to personal jurisdiction under Rule 4(k)(2) (both in the California court and in this District) is flatly inconsistent with its position now that Defendants are subject to jurisdiction in this District based on consent and the D.C. long-arm statute. Mot. 22; *see also Holland Am. Line Inc. v. Wartsila N.*

---

[6] Although *Personal Wealth Partners was* decided under the law of the case doctrine, courts have explained that this doctrine "operates in much the same manner as collateral estoppel" because "like collateral estoppel, the law of the case doctrine can only be applied where an issue was actually decided and, naturally, only forecloses relitigation of an identical issue later in the case." *King Drug Co. of Florence v. Cephalon, Inc.*, 2014 WL 982848, at *6 (E.D. Pa. Mar. 13, 2014).

*Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007) (naming "some other state in which the suit could proceed" precludes use of Rule 4(k)(2) (citation omitted); *Mwani v. bin Laden*, 417 F.3d 1, 11 (D.C. Cir. 2005) (same).

*Second*, YMTC incorrectly cites *Moses* to argue that judicial estoppel does not apply because YMTC's transfer motion was denied and thus its Rule 4(k)(2) argument did not "succeed." Opp. 24-25. But *Moses* does not define "success" as ultimately prevailing on the merits of an argument—it found that Moses had "succeeded" because the district court accepted him as a "proper plaintiff" even though he ultimately lost on summary judgment. *Id*. at 793. Here, too, YMTC succeeded because the California court accepted YMTC's premise that Defendants were subject to Rule 4(k)(2) and adopted that framework in its analysis. Mot. 18.

Other decisions YMTC cites are inapposite. In *Beach TV Properties*, the court had rejected the argument that D.C. law applied, so the plaintiff's subsequent reliance on Virginia law was not an inconsistent position that the court had previously credited. *Beach TV Props., Inc. v. Solomon*, 254 F. Supp. 3d 118, 126 (D.D.C. 2017). And in *Nat'l Parks Conservation Ass'n v. Semonite*, the court did not apply judicial estoppel because the defendants had not taken inconsistent positions. 422 F. Supp. 3d 92, 96 (D.D.C. 2019).

*Third*, YMTC argues that Defendants experienced no "unfairness" because YMTC "lost" (Opp. 20), which again relies on YMTC's misinterpretation of "success." In *Moses*, the court found that the unfairness stemmed from the advantages Moses could have received from maintaining his earlier position despite later losing on the merits. *Moses v. Howard University Hospital,* 606 F.3d at 793, 799 (Moses' earlier position "set up a situation in which he could gain an advantage"). And YMTC does not deny that proceeding on a theory of nationwide contacts under Rule 4(k)(2) benefited YMTC because it is a more favorable standard than a state-specific analysis (Mot. 19)

18

and, earlier, YMTC was able to avoid an anti-SLAPP motion by converting its improper state law causes of action to a federal question claim (*id.* 5). And YMTC's additional argument that Defendants "created the unfairness" (Opp. 20) because of an alleged duty to disclose the Terms of Use fails for the reasons stated earlier. *See supra* at 8-9.

E.    **The Circumstances Indicate that YMTC Brought This Case for an Improper Purpose, Warranting Sanctions Under Rule 11(b)(1)**

Sanctions under Rule 11(b)(1) are available when a pleading is "being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). YMTC characterizes Defendants' "improper purpose" argument as a mere "repackag[ing]" of their Rule 11(b)(2) arguments and argues that "[i]f disputed jurisdictional ground were enough to prove improper purpose, every Rule 11(b)(2) motion would satisfy Rule 11(b)(1) as well." Opp. 24. This argument ignores case law finding that an improper purpose can—and here should—be found based on the totality of the circumstances, including a pattern of serial litigation, the speed of refiling claims, and the larger context of a party's actions. Mot. 19-21.

In *Knipe v. Skinner*, for example, the Second Circuit upheld the district court's imposition of sanctions pursuant to Rule 11(b)(1) where the plaintiff filed a secondary action "on the heels of the dismissal" of another case based on the same factual record, but asserting a new legal theory. 19 F.3d 72, 77 (2d Cir. 1994). Because the plaintiff "offered no reason why his theory of liability…could not have been included in his first complaint," the district court found that it was clear that the plaintiff was "simply attempting another creative avenue to beat a dead horse." *Id.* The Second Circuit agreed, finding that "reasserting …arguments in a new complaint in a district court four days after that court has rejected those arguments in the context of the same factual circumstances affords grounds for finding that the new pleading was interposed for an improper

19

purpose." *Id.* Similarly, in *Valdez*, the court found that a party's persistence in pursuing personal jurisdiction arguments that were objectively meritless necessitated the conclusion that he "did so with an improper purpose, such as to harass defendants and cause them needless increase in the cost of litigation." *Valdez v. Skinner*, 144 F. Supp. 2d 663, 668 (N.D. Tex. 2001).

YMTC's improper purpose in filing a new case in this District "on the heels of the dismissal" of a case against the same parties and on the same claim as in the California Action—where YMTC was told that Denmark is a more appropriate forum, no less—can also be inferred by its actions outside of this action. For example, and as explained in Defendants' motion, YMTC subjected Defendants—a small Danish consulting firm and an academic author—to several procedural maneuvers in the California Action, such as dropping its original state law claims in favor of a Lanham Act claim to avoid California's anti-SLAPP laws. Mot. 5. YMTC has also pursued the same claims on the same factual record across three separate cases (Mot. 1-6) and is also suing the U.S. government for its inclusion on sanctions lists (which are themselves referenced in the two publications at issue in this action) in two other actions that are also being litigated in this District. *See Yangtze Memory Technologies Co., LTD, et al. v. U.S. Dep't of Commerce, et al.*, 1:25-cv-02997-LLA (D.D.C. Sept. 3, 2025); *Yangtze Memory Technologies Co., LTD, v. U.S. Dep't of Defense, et al.*, 1:25-cv-04244-PLF (D.D.C. Dec. 5, 2025). This conduct fits into the larger "alarming trend" identified by Defendants in its Motion—YMTC's use of "frivolous lawsuits" designed to intimidate critics into silence in a clear abuse of the United States judicial process. Mot. 4. The totality of the circumstances clearly reflect YMTC's improper purpose to continue a relentless pursuit of Defendants to further drive up the disruption and costs of litigation.

Further, YMTC's arguments about the timing of its pre-filing inquiry (Opp. 25) do not save the impropriety of its decision to re-litigate jurisdictional issues in this District. YMTC insists that

20

it did not "cobble together the Complaint within 24 hours of entry of the judgment in the California Action." *Id*. Instead, it states that it spent the "ensuing three weeks" after Judge Wise issued her decision denying YMTC's motion to transfer to "uncover" the "grounds" for its jurisdictional claims. *Id.* But a "reasonable inquiry" spanning three weeks by sophisticated counsel such as YMTC's attorneys would have revealed the preclusive effect of Judge Wise's decision and, separately, the impropriety of asserting jurisdiction under Terms of Use that are clearly inapplicable here. That YMTC claims it conducted a "careful pre-filing inquiry," *id*., and *still* filed this action supports a finding that it was filed for an improper purpose. *See Valdez,* 144 F. Supp. 2d at 672 (sanctions warranted and improper purpose found where "[n]o reasonable attorney would have believed, after reasonable inquiry under the circumstances, that the claims and legal contentions related to the theories of liability alleged in the complaint … were warranted by existing law").

### F.    YMTC's Conduct Is Sanctionable Under the Court's Inherent Power Based on YMTC's and its Counsel's Bad Faith

YMTC argues that it is not subject to sanctions under the Court's inherent authority because Defendants "target the same conduct as their Rule 11 theory: filing the Complaint." Opp. 26. Not so. Defendants' motion makes clear that its arguments are based on the "totality of the circumstances," including YMTC's slew of strategic legal maneuvers, "such as its abandonment of its claims under California state law solely to avoid being subject to an anti-SLAPP motion that, if successful, would have required it to pay Defendants' attorneys' fees and its decision to file this action without even mentioning that Judge Wise denied its motion to transfer the California Action to this District because Her Honor held that this Court would have lacked personal jurisdiction over YMTC's Lanham Act claim." Mot. 21. In addition to YMTC's Complaint not mentioning Plaintiffs' denied motion to transfer the California Action to this District, it also failed to note

21

Judge Wise's ruling on personal jurisdiction. *Id*. at 22. YMTC does not provide any response or justification for these omissions.

As discussed in the decisions YMTC itself cites, sanctions under the court's inherent authority address a broader range of conduct under Rule 11. *See Ali v. Tolbert*, 636 F.3d 622, 627 (D.C. Cir. 2011) (remanding case because even though party's "conduct is not sanctionable under Rule 11, sanctions may nonetheless be warranted under the district court's inherent authority, which enables courts to protect their institutional integrity and to guard against abuses of the judicial process") (citation omitted). YMTC argues that to sanction conduct under the court's inherent authority requires "clear and convincing evidence that the opposing party acted in 'bad faith,'" Opp. 26, but it ignores the fact that such evidence can be circumstantial. For example, YMTC does not even attempt to distinguish the decision cited in Defendants' motion, *John Akridge Co. v. Travelers Cos*, in which the court granted sanctions pursuant to its inherent power because the plaintiff's conduct left "no question that the Plaintiffs filed the instant suit with the specific intent of circumventing this Court's dismissal of its earlier suit." 944 F. Supp. 33 (D.D.C. 1996). YMTC's pattern of conduct—including filing a duplicative second action against Defendants one day after the entry of judgment on the preclusive order of the California court and refusing to properly challenge Judge Wise's order through the appellate process—provides circumstantial evidence of an attempt to "circumvent" Judge Wise's decision to continue its ill-advised pursuit of Defendants.

### G.    Monetary Sanctions are Warranted Against YMTC and its Counsel

YMTC does not dispute that monetary sanctions may be awarded under the court's inherent authority, Mot. 24-25, or deny that substantial sanctions are warranted to "deter groundless litigation tactics and stem needless litigation costs to court and counsel." *Id.* (quoting

*Westmoreland*, 770 F.2d at 1179). YMTC instead advances two other arguments against the imposition of monetary sanctions under Rule11. Both arguments fail.

*First*, YMTC argues that it is not subject to monetary sanctions because monetary sanctions "must not be awarded against a represented party for violating Rule 11(b)(2). Opp. 27 (citing Fed. R. Civ. P. 11(c)(5)(A). YMTC then states in a conclusory fashion that "YMTC is a represented party. Defendants' legal-sufficiency challenge falls squarely within Rule 11(b)(2). The bar applies." *Id.* But Defendants have not alleged sanctionable conduct under only Rule 11(b)(2). As shown above and in Defendants' motion, YMTC's conduct also reflects an improper purpose under Rule 11(b)(1). Thus, YMTC is not immune to monetary sanctions under Rule 11. Mot. 23-24 (citing, among other cases, *Hickey v. Scott*, 738 F. Supp. 2d 55 (D.D.C. 2010)).

*Second,* YMTC does not deny that monetary sanctions can be imposed on its counsel, Quinn Emanuel, under Rule 11(b)(2). Opp. 27. Instead, YMTC argues that Quinn Emanuel is not subject to monetary sanctions because it "found a jurisdictional basis—Defendants' forum selection clause—that neither party had raised and that the California court did not consider." *Id*. But because that argument is so clearly precluded by the California court's final judgment—as any reasonable attorney would have known—it remains sanctionable to have initiated a new case based upon an argument Quinn Emmanuel knew this Court could not consider. YMTC relies on *Williams v. Verizon D.C. Inc.* to argue that "Rule 11 sanctions attach only on the basis of an inadequate pre-filing investigation." *Id.* (quoting 322 F.R.D. 145, 149 (D.D.C. 2017). But, again, that requires a showing that Quinn Emanuel's pre-filing investigation was adequate, which it was not. As sophisticated counsel at a major law firm conducting a "reasonable inquiry" under these circumstances, Quinn Emanuel should have recognized that the claims were precluded by Judge Wise's order and that there is no basis in the record or law for the argument that Judge Wise's

23

order was somehow expressly limited in scope and, indeed, invited further collateral overlapping litigation. As demonstrated in the decisions Defendants cite in their motion, courts have found monetary sanctions to be warranted under similar circumstances. *See, e.g., Valdez,* 144 F. Supp. 2d at 672 (imposing monetary sanctions where reasonable inquiry would have revealed that jurisdictional argument was precluded); *Pace*, 2025 WL 819006, at \*11 (same). *See also Danik, Inc. v. Hartmarx Corp.*, 120 F.R.D. 439, 444 (D.D.C. 1988) (assessing monetary sanctions under Rule 11 against plaintiff and his counsel for failing to conduct a reasonable pre-filing inquiry).

### H.    Injunctive Relief is Necessary to Deter YMTC

Finally, while YMTC argues that a prefiling injunction is a "last resort" only reserved for extreme cases where a litigant brings hundreds of lawsuits, Opp. 29, YMTC's pattern of conduct justifies such injunctive relief. YMTC has repeatedly demonstrated its willingness to engage in procedural maneuvers to litigate the same issues across multiple forums—against clear precedent—to avoid adverse rulings. Mot. 1-6.

The decisions YMTC cites do not limit pre-filing injunctions *only* to litigants who bring hundreds of lawsuits. On the contrary, in *Smith v. Scalia*, the court granted a pre-filing injunction where the plaintiff had filed "ten prior lawsuits, with strikingly similar allegations, and the saga of this series demonstrates a clear pattern…" 44 F. Supp. 3d 28, 46 (D.D.C. 2014). Here we have multiple lawsuits, but we also have YMTC's broader lawfare campaign and pattern of abusive litigation.

YMTC's also argues that "an injunction drawn that broadly…could threaten YMTC's right to pursue separate claims against Micron and DCI, already pending before this court" or "could also bar YMTC from seeking relief if Defendants publish new false statements." Opp. 30. But YMTC's arguments ignore Defendants' request, which is limited to filing another lawsuit based

on the same facts *against the same Defendants*. Mot. 24. YMTC provides no explanation for how such a narrowly-tailored injunction would preclude their pursuit of future claims arising from different facts or why such an injunction could not be specifically written to protect Defendants—rather than any other party—from such claims.

## III.    CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion for sanctions against YMTC and its counsel and set this matter over for further briefing on the appropriate sanction.

Respectfully submitted,

/s/ Michael L. Resch
Michael L. Resch (D.C. Bar #481402)
*mresch@kslaw.com*
KING & SPALDING LLP
50 California Street, Suite 3300
San Francisco, California 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

Dale Giali (D.C. Bar #436514)
*dgiali@kslaw.com*
Lena T. Colin (*pro hac vice application forthcoming*)
*lcolin@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, California 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310

Attorneys for Defendants
Strand Consult ApS and Roslyn Layton

April 6, 2026

25

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on April 6, 2026, the REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS was served on Plaintiffs and their counsel via ECF to Plaintiffs' counsel as follows:

Robert M. Schwartz
*robertschwartz@quinnemanuel.com*
Aaron Perahia
*aaronperahia@quinnemanuel.com*
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

David E. Eiseman
*davideiseman@quinnemanuel.com*
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Evan Pearson
*evanpearson@quinnemanuel.com*
300 West Sixth Street, Suite 2010
Austin, Texas 78701-3901
Telephone: (737) 667-6100
Facsimile: (737) 667-6200

David Needham
*davidneedham@quinnemanuel.com*
1300 I Street NW
Washington, DC 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100


DATED: April 6, 2026

*/s/ Michael L. Resch*
Michael L. Resch (D.C. Bar #481402)
KING & SPALDING LLP