**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

YANGTZE MEMORY TECHNOLOGIES
CO., LTD., *et al.*,

        *Plaintiffs*,

    v.

STRAND CONSULT APS, *et al.*,

        *Defendants*.

Civil Action No. 1:25-cv-03554 (CJN)

## <u>MEMORANDUM OPINION</u>

Yangtze Memory Technologies Co., Ltd., and Yangtze Memory Technologies, Inc., (collectively, YMTC) claim that Strand Consult ApS and Roslyn Layton violated the Lanham Act, 15 U.S.C. § 1125(a), by allegedly running an astroturfing campaign that discouraged customers from purchasing memory chips from YMTC due to its connections to the Chinese government. ECF 1.  Strand Consult and Layton contend that the Court lacks personal jurisdiction over them. For the following reasons, the Court agrees and grants their motion to dismiss, ECF 22, but denies their motion for sanctions, ECF 23.

### I.    Background

Headquartered in Wuhan, China, Yangtze Memory Technologies Co., Ltd., "is a leading developer and manufacturer of advanced 3D NAND flash memory and related storage technologies."[1]  ECF 1 ¶ 20.  Its U.S.-based subsidiary, Yangtze Memory Technologies, Inc., manages YMTC's American presence and business development. *Id.* ¶ 21.  "YMTC has designed

---

[1] "[O]n a motion to dismiss," the Court of course "accept[s] as true the well-pleaded factual allegations of the complaint." *Davis v. Billington*, 681 F.3d 377, 379 (D.C. Cir. 2012).

and manufactured 3D NAND flash memory chips that set new benchmarks for bit density, input/output performance, and storage capacity." *Id.* ¶ 32.   Enticed by these technological advancements and lower prices, in 2022 Apple selected YMTC to be its supplier of advanced memory chips.[2] *Id.* ¶¶ 18, 35.

Micron Technology, Inc., competes against YMTC in the memory chip market.  *Id.* ¶ 3. Threatened by "YMTC's ascension," Micron worked with Layton and her company Strand Consult, a public affairs firm based in Denmark, to "engage[] in a sophisticated 'astroturfing' campaign . . . to damage YMTC's reputation and business." *Id.* ¶¶ 3–4, 6, 22–23.  Strand Consult and Layton operated a website called China Tech Threat that "presented itself as an independent research and advocacy organization focused on policy" but was actually a front "to disseminate favorable messages about Micron's products and disparaging messages about YMTC's competing products." *Id.* ¶¶ 4–5, 9, 39.

In September 2020, China Tech Threat began its "disinformation campaign." *Id.* ¶ 11.  A January 2021 blog post titled "As YMTC Booms, China Aims to Dominate Flash Memory Industry" asserted that YMTC was associated with "criminal activity, including a Social Security spoofing scam, identity theft and cyber extortion." *Id.* ¶ 11 & n.4 (quoting ECF 1-3 at 2).  And a 20-page report from June 2022 titled "Silicon Sellout:  How Apple's Partnership with Chinese Military Chip Maker YMTC Threatens American National Security" implored "Apple to voluntarily end its partnership with YMTC" and "source its chips from existing suppliers like Micron." *Id.* ¶ 12 (alterations adopted) (quoting ECF 1-4 at 4).

---

[2] The complaint refers to the large customer in question generically as "OEM Customer #1." *See, e.g.*, ECF 1 ¶ 35.  "OEM Customer #1" appears to be Apple given that YMTC challenges a publication that criticizes the deal between YMTC and Apple. *See id.* ¶ 12.

YMTC alleges that these "false and misleading statements caused YMTC to lose significant business opportunities and derailed ongoing negotiations with major customers and technical partners." *Id.* ¶ 61. Most notably, Apple suspended its plans to purchase chips from YMTC in October 2022, resulting in "hundreds of millions of dollars in lost revenue." *Id.* ¶ 62. The astroturfing campaign also "inflicted lasting damage on YMTC's reputation and commercial standing across the technology sector." *Id.* ¶ 63.

In June 2024, YMTC sued Strand Consult and Layton in the Northern District of California. Complaint at 1, *Yangtze Memory Techs., Inc. v. Strand Consult*, No. 5:24-cv-3454 (N.D. Cal. June 7, 2024). YMTC initially asserted state-law defamation claims, *id.* at 12–15, but after Strand Consult and Layton threatened to move to strike under California's anti-SLAPP law, Joint Case Management Statement at 7, *Yangtze Memory Techs., Inc. v. Strand Consult*, No. 5:24-cv-3454 (N.D. Cal. Oct. 24, 2024), YMTC filed an amended complaint that swapped out the state-law defamation claims for claims under the Lanham Act, which "prohibits deceptive trade practices such as false advertising and trademark infringement," *Farah v. Esquire Mag.*, 736 F.3d 528, 540 (D.C. Cir. 2013); *see also* Amended Complaint at 17–24, *Yangtze Memory Techs., Inc. v. Strand Consult*, No. 5:24-cv-3454 (N.D. Cal. Nov. 17, 2024).

Strand Consult and Layton (and DCI Group AZ, LLC, another public affairs company that was added as a defendant in the amended complaint) moved to dismiss. Motion to Dismiss at 1, *Yangtze Memory Techs., Inc. v. Strand Consult*, No. 5:24-cv-3454 (N.D. Cal. Dec. 17, 2024). The court granted this motion upon concluding that it lacked personal jurisdiction, but it also granted YMTC leave to amend as to Strand Consult and Layton. Order Granting Defendants' Motion to Dismiss at 2–3, *Yangtze Memory Techs., Inc. v. Strand Consult*, No. 5:24-cv-3454 (N.D. Cal. May 20, 2025). YMTC moved for reconsideration on the ground that those defendants had waived any

3

personal jurisdiction defense because only DCI had raised that issue in the motion to dismiss. Motion for Reconsideration at 1, *Yangtze Memory Techs., Inc. v. Strand Consult*, No. 5:24-cv-3454 (N.D. Cal. June 20, 2025). YMTC also separately moved to transfer the case to this District because it had since brought a related suit against Micron and DCI here. Motion to Transfer at 1, *Yangtze Memory Techs., Inc. v. Strand Consult*, No. 5:24-cv-3454 (N.D. Cal. July 21, 2025). Strand Consult and Layton responded by moving to dismiss based on forum non conveniens, arguing that the claim against them should have been brought, if anywhere, in Denmark. Motion to Dismiss for Forum Non Conveniens at 1, *Yangtze Memory Techs., Inc. v. Strand Consult*, No. 5:24-cv-3454 (N.D. Cal. July 30, 2025).

On September 12, 2025, the court granted YMTC's motion for reconsideration, denied YMTC's motion to transfer, and granted Strand Consult and Layton's motion to dismiss for forum non conveniens. *Yangtze Memory Techs., Inc. v. Strand Consult*, No. 5:24-cv-3454, 2025 WL 2637501, at *8 (N.D. Cal. Sept. 12, 2025). "Taking the motions in the order they were filed," the court first determined that Strand Consult and Layton had waived any defense about personal jurisdiction in the Northern District of California given that they did not raise it in their original motion to dismiss. *Id.* at *2. The court accordingly granted YMTC's motion for reconsideration and vacated the relevant portion of the earlier order. *Id.* at *3.

Moving to YMTC's motion to transfer, the court explained that it had to "find that this case could have been brought in the District of Columbia, including finding that the District of Columbia has personal jurisdiction over Defendants." *Id.* The court analyzed personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2)—the only basis for jurisdiction here that YMTC had asserted. *Id.* at *3–5. Focusing on whether the exercise of personal jurisdiction would comport with due process, the court concluded that "this case could not have been brought in the District

4

of Columbia, because, without more, the District of Columbia would not have personal jurisdiction over Defendants for this particular dispute (absent waiver or other particular circumstances)." *Id.* at *5.

Ending with the forum non conveniens issue, the court held that Denmark would be the more convenient forum given that the "case centers around alleged actions by Denmark domiciliaries, conducted in Denmark, on computers owned by a Danish company." *Id.* at *5–8. The court thus granted Strand Consult and Layton's motion to dismiss on the condition that they "accept service in Denmark and waive any statute of limitations defenses." *Id.* at *8. On October 2, 2025, the court entered a judgment that formally closed the case. Judgment of Dismissal at 1, *Yangtze Memory Techs., Inc. v. Strand Consult*, No. 5:24-cv-3454 (N.D. Cal. Oct. 2, 2025).

The next day, YMTC filed this suit, raising the same Lanham Act claim against Strand Consult and Layton. ECF 1. This new action, however, relies on new grounds for establishing personal jurisdiction here: the China Tech Threat website's forum-selection clause[3] and the transacting-business and tortious-injury provisions of the D.C. long-arm statute. *Id.* ¶¶ 25–27. Strand Consult and Layton move to dismiss on numerous grounds. ECF 22. They also ask the Court to sanction YMTC and its counsel. ECF 23.

---

[3] The forum-selection clause states: "Any legal action, suit or proceeding arising out of or relating to these Terms of Use, or Your use of the Site or the Services must be instituted exclusively in the federal or state courts located in the District of Columbia and in no other jurisdiction. You further consent to exclusive personal jurisdiction and venue in, and agree to service of process issued or authorized by, any such court." ECF 1-5 at 6.

## II.        Personal Jurisdiction

### A.        Preclusive Effect of Prior Decision

As a threshold matter, the prior decision in the Northern District of California action appears to preclude relitigation of personal jurisdiction here.[4]  Under the doctrine of collateral estoppel, or issue preclusion, an earlier decision controls where (1) "the issue [was] actually litigated, that is, contested by the parties and submitted for determination by the court"; (2) "the issue [was] actually and necessarily determined by a court of competent jurisdiction"; and (3) preclusion would "not work an unfairness" to the party bound by the first determination. *Otherson v. Dep't of Just.*, 711 F.2d 267, 273 (D.C. Cir. 1983) (citation and internal quotation marks omitted).  All three requirements weigh in favor of finding preclusion here.

1.        The issue of whether there was (or would be) personal jurisdiction in the District of Columbia was "actually litigated" in the prior action.  *Id.*  As the court there explained, to grant YMTC's motion to transfer, the court would have had to "find that this case could have been brought in the District of Columbia, including finding that the District of Columbia has personal jurisdiction over Defendants." *Yangtze*, 2025 WL 2637501, at *3.  But the court denied the transfer motion because it concluded that "this case could not have been brought in the District of Columbia, because, without more, the District of Columbia would not have personal jurisdiction

---

[4] Although Strand Consult and Layton also argue that YMTC lacks Article III standing, ECF 22 at 27–30, the Court first (and only) addresses personal jurisdiction given that "a federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits,'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)).  In any event, for the reasons discussed in the Court's opinion in a related case brought by YMTC against other defendants, YMTC likely has Article III standing to bring this suit. *See* Memorandum Opinion at 3–7, *Yangtze Memory Techs., Inc. v. Micron Tech., Inc.*, 25-cv-1795 (D.D.C. Aug. 13, 2026).

over Defendants for this particular dispute (absent waiver or other particular circumstances)." *Id.* at *5.

YMTC argues that the prior decision did not address either the forum-selection clause or the D.C. long-arm statute. ECF 28 at 21–22. That is certainly true, but that's because YMTC never raised these alternative bases for personal jurisdiction in the prior action. It is well established, however, that "once an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case."[5] *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992); *see also Sec. Indus. Ass'n v. Bd. of Governors of the Fed. Rsrv. Sys.*, 900 F.2d 360, 364 (D.C. Cir. 1990) ("[P]reclusion because of a prior adjudication results from the resolution of a question *in issue*, not from the litigation of specific *arguments* directed to the issue.").

Contrary to YMTC's contentions, this framing of the "issue" is not too broad. The relevant issue decided there was that "the District of Columbia would not have personal jurisdiction over Defendants for this particular dispute." *Yangtze*, 2025 WL 2637501, at *5. To be sure, there may have been multiple available arguments for why there is (or would be) personal jurisdiction over Strand Consult and Layton here, but this framing comes nowhere near "swell[ing] the concept 'issue' so that the term becomes virtually synonymous with 'demand for relief.'" *North v. Walsh*, 881 F.2d 1088, 1095 (D.C. Cir. 1989). The case that YMTC principally relies on for this criticism held that it was error for a district court to treat the relevant issue as "whether plaintiff [was]

---

[5] The September 12 opinion's qualifiers that the case could not have been brought in the District of Columbia "without more" and that the District would not have personal jurisdiction over the suit "absent waiver or other particular circumstances" does not undermine the preclusive effect of that judgment. *Yangtze*, 2025 WL 2637501, at *5. Rather, this language merely confirms that YMTC could have raised other arguments about personal jurisdiction in the District when the issue was before the Northern District of California.

entitled by law to particular documents" when concluding that a denial of a grand jury subpoena for documents in an earlier case precluded the plaintiff from seeking the same documents in a later proceeding brought under the Freedom of Information Act. *Id.* at 1095–97 (citation and internal quotation marks omitted). If the issue here were framed more generally to be "whether any jurisdictional defects barred the claim" and the court had never considered personal jurisdiction in particular, YMTC would potentially have a point. But the issue of whether there is personal jurisdiction over Strand Consult and Layton here with respect to YMTC's Lanham Act claim is sufficiently narrow given that YMTC's "new legal theor[ies]" are "related to the subject-matter and relevant to the issues that were litigated and adjudicated previously." *Yamaha Corp.*, 961 F.2d at 257–58 (citation and internal quotation marks omitted).

2.    As for whether the earlier action also "actually and necessarily determined" the issue of personal jurisdiction, *Otherson*, 711 F.2d at 273 (citation and internal quotation marks omitted), a "determination ranks as necessary or essential only when the final outcome hinges on it," *Bobby v. Bies*, 556 U.S. 825, 835 (2009). YMTC argues that any analysis related to personal jurisdiction was not necessary to the earlier judgment because the forum non conveniens dismissal—rather than the transfer denial—produced the final judgment. ECF 28 at 23. This argument, however, ignores how the court reached its decision and the connection between the rulings. At the outset, the court announced that it would "[t]ak[e] the motions in the order they were filed." *Yangtze*, 2025 WL 2637501, at *2. The decision to deny YMTC's motion to transfer on the ground that there would not be personal jurisdiction over Strand Consult and Layton in the District of Columbia was therefore necessary to "the final outcome" of the dismissal on forum non conveniens grounds. *Bobby*, 556 U.S. at 835. That transfer orders are ordinarily "not appealable final orders," *Ukiah Adventist Hosp. v. FTC*, 981 F.2d 543, 546 (D.C. Cir. 1992), does not change

this conclusion because that portion of the order "merge[d] into the final judgment," making "it . . . open to review on appeal from that judgment" and entitled to preclusive effect, *I.A.M. Nat'l Pension Fund Benefit Plan A v. Cooper Indus., Inc.*, 789 F.2d 21, 24 (D.C. Cir. 1986).

3.      Finally, applying issue preclusion would not "work an unfairness" to YMTC. *Otherson*, 711 F.2d at 273. Not enforcing issue preclusion is appropriate in only "certain limited circumstances, none of which applies here." *Canonsburg Gen. Hosp. v. Burwell*, 807 F.3d 295, 306 (D.C. Cir. 2015). YMTC had every incentive to put forth its best arguments for why there would be personal jurisdiction over Strand Consult and Layton in the District of Columbia given that it was the party that moved to transfer the case here. *See Yangtze*, 2025 WL 2637501, at *3. And there has not been "an intervening change in controlling legal principles" nor were there "serious[] defect[s]" in the Northern District of California proceedings that would render application of the doctrine "inappropriate." *Canonsburg*, 807 F.3d at 306 (citations and internal quotation marks omitted). It is thus unsurprising that YMTC does not put forth an affirmative argument for this last element.

## B.    New Theories of Personal Jurisdiction

In any event, YMTC has failed to establish that the Court has personal jurisdiction over Strand Consult and Layton. As its lead argument, YMTC contends that Strand Consult and Layton consented to jurisdiction here because the Terms of Use on China Tech Threat's website designate the District of Columbia as the required forum for "[a]ny legal action, suit or proceeding arising out of or relating to these Terms of Use, or Your use of the Site or the Services." ECF 28 at 8–13 (quoting ECF 1-5 at 6). Although a forum-selection clause "is applicable if its scope encompasses the dispute," *Azima v. RAK Inv. Auth.*, 926 F.3d 870, 874 (D.C. Cir. 2019), that threshold requirement does not appear met here.

Citing the clause's coverage of any "proceeding arising out of or relating to these Terms of Use," ECF 1-5 at 6, YMTC argues that "the claim here relates to the Terms because it targets Content delivered through the Services the Terms define," ECF 28 at 10. But this suit, which alleges that Defendants engaged in false advertising in violation of the Lanham Act, does not relate to the Terms of Use because the Terms have no "connection" to or "bearing" on it. *In re Sealed Case*, 932 F.3d 915, 929 (D.C. Cir. 2019) (citations and internal quotation marks omitted). Nothing about the Terms affects whether or not Strand Consult and Layton are liable under the statute. It is not enough that the Terms reference the website hosting the publications that YMTC objects to because the relevant clause requires that the litigation must relate to the "Terms of Use" instead of to the "website." YMTC's contrary interpretation would reach so broadly as to render superfluous the other half of the clause covering the "use of the Site or the Services," ECF 1-5 at 6, a reading which is disfavored, *cf. Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) (noting that "courts should disfavor interpretations of statutes that render language superfluous").

As for the second half of the forum-selection clause, it applies only to "*Your* use of the site." ECF 1-5 at 6 (emphasis added). It accordingly does not cover YMTC's claim, which is based on others'—not *its* own—alleged use of the site to access reports and blogs with negative information about YMTC. *See* ECF 1 ¶ 67 ("This lawsuit . . . targets Defendants' false and misleading commercial statements that deliberately targeted Plaintiffs['] current and prospective customers."); *id.* ¶ 71 ("Defendants' statements deceived, or had the tendency to deceive, a substantial segment of the relevant purchasing public, or those making purchasing decisions, including YMTC's customers and prospective customers, OEMs, businesses, and consumer end-users."). The clause's reiteration that "[t]hese Terms of Use are personal to You" further confirms that it does not apply to this suit. ECF 1-5 at 6.

As for the D.C. long-arm statute's transacting-business provision, the Court may "exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . transacting any business in the District of Columbia." D.C. Code § 13-423(a)(1). "[A] single act may be sufficient to constitute transacting business so long as that contact is voluntary and deliberate, rather than fortuitous." *Media Matters for Am. v. Paxton*, 138 F.4th 563, 576 (D.C. Cir. 2025) (alteration adopted) (quoting *Jackson v. Loews Wash. Cinemas, Inc.*, 944 A.2d 1088, 1093 (D.C. 2008)). But there must be "a nexus between the plaintiff's claim and the defendant's business activities in the forum jurisdiction." *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 332 (D.C. 2000); *see also Forras v. Rauf*, 812 F.3d 1102, 1106 (D.C. Cir. 2016). YMTC relies exclusively on the Terms of Use to argue that Strand Consult and Layton transacted business here, contending that "a contractual relationship centered in the forum" is sufficient to establish personal jurisdiction. ECF 28 at 14 (alteration adopted) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021)). As already explained, however, those Terms are not the basis for YMTC's claim in this suit. Given that "subsection (a)(1) still 'contemplates a connection that is related to the claim in suit,'" *Forras*, 812 F.3d at 1106 (alterations adopted) (quoting *Crane v. Carr*, 814 F.2d 758, 763 (D.C. Cir. 1987)), the lack of a nexus between the Terms and YMTC's allegations of false advertising prevents the exercise of personal jurisdiction under that provision of the D.C. long-arm statute.

The statute's tortious-injury provision separately permits the Court to "exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in

11

the District of Columbia." D.C. Code § 13-423(a)(4). YMTC makes a passing suggestion that there is personal jurisdiction under this provision, *see* ECF 28 at 14 (stating that "the same logic also applies to D.C. Code § 13-423(a)(4)" without providing further explanation of how), but this argument is similarly unpersuasive. "[P]ersonal jurisdiction . . . cannot be based solely on the ability of District residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000). And although YMTC contends that Strand Consult and Layton's activity went beyond merely making a website accessible in the District because they chose to make it the forum for legal disputes related to the Terms of Use or use of the China Tech Threat site, it offers no response to Strand Consult and Layton's argument that the complaint lacks specific allegations that they actually did or solicited business in the District or that they directed the false statements at the District. *See* ECF 22 at 26–27. YMTC has therefore not met its "burden of establishing a factual basis for the exercise of personal jurisdiction over [Strand Consult and Layton]." *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).

### III.    Type of Dismissal

YMTC requests that the Court grant leave to amend if it finds a deficiency in the complaint. ECF 28 at 44. Strand Consult and Layton assert in passing that the Court should dismiss the complaint "without leave to amend" and "with prejudice." ECF 22 at 45; ECF 30 at 25. Because "dismissals for lack of personal jurisdiction are without prejudice," *Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016, 1038 (D.C. Cir. 2020) (citing *Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1091 (D.C. Cir. 1998)); *see also* Fed. R. Civ. P. 41(b), the Court dismisses the complaint without prejudice. The Court, however, does not grant YMTC leave to amend at this time because "a bare request in an opposition to a motion to dismiss—without any

12

indication of the particular grounds on which amendment is sought—does not constitute a motion [to amend] within the contemplation of Rule 15(a)." *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993) (citation omitted).

## IV.    Sanctions

Strand Consult and Layton also move for sanctions. ECF 23. They contend that YMTC's filing of the complaint in this Court after the dismissal in the Northern District of California is sanctionable because it is precluded by the prior order, is judicially estopped by YMTC's prior Rule 4(k)(2) arguments, and is being pursued for the improper purpose of harassment. YMTC responds that sanctions are not merited because its legal contentions are supported by established law and it did not have an improper purpose in filing this suit. ECF 29.

Federal Rule of Civil Procedure 11 requires attorneys to certify that every "pleading, written motion, or other paper" that they file "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," and that "the claims, defenses, and other legal contentions [contained therein] are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." *Id.* R. 11(c)(1). Courts also possess "inherent power to punish litigation misconduct . . . to protect their institutional integrity and to guard against abuses of the judicial process." *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995).

The Court declines to sanction YMTC under Rule 11 or its inherent authority. As to the preclusive effect of the judgment in the Northern District of California, YMTC raises

13

"nonfrivolous argument[s] for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). Although Strand Consult and Layton are correct, for the reasons explained above, that YMTC cannot pursue its claim here, YMTC's contentions are not "wholly without merit." *Reliance Ins. v. Sweeney Corp.*, 792 F.2d 1137, 1138 (D.C. Cir. 1986) (citation and internal quotation marks omitted). No binding decision has squarely decided the particular issue of whether raising additional theories of personal jurisdiction constitutes new arguments or new issues for collateral estoppel purposes, and YMTC presents a nonfrivolous argument that the earlier case had not "actually and necessarily determined" the issue of personal jurisdiction in the District because forum non conveniens, rather than transfer, considerations prompted the dismissal, *Otherson*, 711 F.2d at 273 (citation and internal quotation marks omitted). "Being on the losing side," after all, "does not [necessarily] mean that sanctions are appropriate." *Messina v. Fontana*, 260 F. Supp. 2d 173, 181 (D.D.C. 2003), *aff'd sub nom.*, *Messina v. Krakower*, 439 F.3d 755 (D.C. Cir. 2006).

YMTC's contentions regarding judicial estoppel also have a sufficient basis to foreclose sanctions. "There are at least three questions that a court should answer in deciding whether to apply judicial estoppel: (1) Is a party's later position clearly inconsistent with its earlier position? (2) Has the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled? (3) Will the party seeking to assert an inconsistent position derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped?" *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 798 (D.C. Cir. 2010). Without deciding the merits, the Court concludes that YMTC's arguments why judicial estoppel does not apply here are not frivolous. For example, it is—at worst—debatable that YMTC

14

"succeeded in persuading a court to accept [its] earlier position," *id.*, given that the Northern District of California rejected YMTC's effort to transfer on the ground that it did not establish that there would be personal jurisdiction here, *Yangtze*, 2025 WL 2637501, at \*3–5.

Finally, Strand Consult and Layton have not established that this suit is motivated by an improper purpose. They question YMTC's intentions given the timing of various litigation decisions, including failing to raise its argument about the Terms of Use earlier, abandoning its original state-law claims to avoid an anti-SLAPP motion, filing this suit the day after entry of judgment in the Northern District of California action, and not mentioning in the complaint that the court there had denied its motion to transfer. But YMTC's filings do not necessarily appear to be "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). The record does not support a finding that YMTC crossed the line from zealous advocacy to bad-faith manipulation of the legal system. Although YMTC certainly could have included more details about the Northern District of California action in its complaint, that it explicitly flagged the dismissal in that case counsels against an inference of bad faith. *See* ECF 1 ¶ 29. And the other evidence that Strand Consult and Layton cite could plausibly be strategic, rather than malicious, behavior.

### V.    Conclusion

For the foregoing reasons, the Court grants Strand Consult and Layton's motion to dismiss, ECF 22, but denies their motion for sanctions, ECF 23. The Court will issue an Order contemporaneously with this Memorandum Opinion.

DATE: August 13, 2026

CARL J. NICHOLS
United States District Judge